Exhibit A

## Summary of OCIJ Procedure for Handling
## Complaints Against Immigration Judges

The Office of the Chief Immigration Judge (OCIJ) regularly monitors immigration judge (IJ) performance and conduct through EOIR's performance management program, and through its daily supervision of the courts.  In instances where concerns regarding an immigration judge's conduct arise, the OCIJ is committed to ensuring that any allegations are investigated and resolved in a fair and expeditious manner.

### Intake/Docketing

Complaints against IJs may be initiated in one of two ways.  *First*, an individual or group may file a formal complaint with either the Assistant Chief Immigration Judge for Conduct and Professionalism (ACIJ C/P) or the appropriate supervisory Assistant Chief Immigration Judge (ACIJ).[1]  The complaint may be communicated either in writing or orally, and it may be anonymous.  A written or oral complaint must contain at least a brief statement describing the IJ's alleged conduct that gave rise to concern.

*Second*, OCIJ may itself become aware of information that suggests an IJ may have engaged in inappropriate conduct.  Such information may come to the attention of OCIJ in a variety of circumstances including, but not limited to, news reports, referrals from other components or agencies, such as the Board of Immigration Appeals or Office of Immigration Litigation, or routine reviews of agency and court decisions.

Upon the receipt or identification of a complaint, OCIJ will assign a number to the complaint and create an entry for it in OCIJ's complaint tracking database.  When the complaint came from an identifiable complainant who has provided contact information, OCIJ will acknowledge its receipt of the complaint.

### Office of Professional Responsibility (OPR)/Office of the Inspector General (OIG)

If the allegations appear to fall under the jurisdiction of either OPR or OIG[2], the complaint will be referred to those components for further investigation.  Before such referral, an ACIJ or the ACIJ C/P may undertake some initial investigation of the complaint and the ACIJ C/P may informally consult with OPR and/or OIG in order to determine whether a referral should be made.  Once a matter is referred to OPR and/or OIG, any further OCIJ investigation may be deferred pending the conclusion of the OPR and/or OIG investigation, at which point OPR and/or OIG will report back to EOIR concerning their findings and conclusions.

---

[1] Please refer to the ACIJ assignment web page for a directory of each immigration court's supervisory ACIJ.
[2] OPR has jurisdiction over complaints where there is an appearance or allegation of professional misconduct.  OIG has jurisdiction over allegations of criminal conduct or serious waste, fraud or abuse.

**Agency Investigation**

For matters that fall outside of OPR or OIG jurisdiction, an ACIJ will investigate the complaint. OCIJ may also investigate after receipt of a report from OPR and/or OIG.  If the complaint involves in-court conduct, the investigation will usually begin with a review of the hearing record, including the audio recordings.  For complaints that involve in-court or out-of-court conduct, the ACIJ may also solicit statements from the complainant, the IJ, and any witnesses.  If the investigating ACIJ concludes that the conduct implicates an issue that may be appropriate for general training of the entire IJ corps, he or she will consult with the ACIJ for Training and Education (ACIJ T/E).  Any such general training will be developed separate and apart from the ongoing complaint process.  Throughout the process, all complaints will be monitored by the ACIJ C/P to ensure proper and expeditious handling and resolution.

**Action**

The ACIJ and/or ACIJ C/P may consult with the Employee and Labor Relations Unit (E/LR) in EOIR's Office of the General Counsel (OGC), and/or the ACIJ T/E regarding the appropriate action. Appropriate action may include non-disciplinary corrective action or formal discipline.

If the ACIJ determines that non-disciplinary corrective action is appropriate, the ACIJ may, for example, counsel the IJ orally or in writing, consult with the ACIJ T/E to arrange for individualized training, and/or initiate a performance-based action, as appropriate.

Generally disciplinary actions are progressive.  Supervisory judges take the least severe action necessary to correct a problem, followed by increasingly severe measures when an IJ fails to correct a problem after a reasonable opportunity to do so. Where the conduct warrants it, serious disciplinary action may be imposed in the first instance.  When imposing discipline, the deciding official, who, as noted below is usually the Deputy Chief Immigration Judge (DCIJ), will consider factors  noted in *Douglas v. Veteran's Administration*, 5 M.S.P.B. 313 (MSPB 1981), such as, but not limited to, the nature and seriousness of the conduct, the immigration judge's length of service and past disciplinary record, mitigating circumstances, the likelihood of repeat occurrence absent action by the Agency, the impact of the offense on the reputation of the agency, and the consistency of the penalty with similar instances of misconduct.

Disciplinary actions that can be taken by ACIJs include a reprimand, or proposed suspensions without pay of up to 14 days, which are usually reviewed by the DCIJ who then imposes the appropriate discipline.  Suspensions of more than 14 days or an IJ's removal from federal service are proposed by the Director, the CIJ or the CIJ's designee, and decided by other Department officials.  If an IJ wishes to challenge a disciplinary action, the IJ may either file a grievance under the negotiated grievance procedure or pursue applicable statutory remedies such as filing a written notice of appeal.[3]

---

[3] See Articles 8 & 9 of the Labor Agreement between the National Association of Immigration Judges (NAIJ) and USDOJ, EOIR; 5 U.S.C. §7121 (d).

When there is an identifiable complainant, he or she will be notified in writing once action is taken and/or the matter is closed.  Such notification will not disclose information that would violate the privacy rights of an IJ.

Consistent with the Privacy Act, OCIJ will publish statistics periodically on its website to advise the public on the types of actions taken and to increase the transparency of the conduct and discipline process.

**<u>Dismissal and Conclusion</u>**

An ACIJ may dismiss or conclude a complaint, with or without disciplinary action.  A complaint may be dismissed for one or more reasons, including the following: the complaint is frivolous; the complaint relates directly to the merits of an IJ's decision; after investigation, the facts alleged were disproven or cannot be substantiated; or the facts alleged, even if true, do not constitute inappropriate conduct (i.e., "failure to state a claim").  A complaint will be concluded if, for example, it is determined that appropriate corrective action has already been taken or that action is unwarranted due to intervening events, such as an IJ's retirement or resignation.  If a complaint is dismissed or concluded, the complainant and the IJ will be notified of the disposition, consistent with the Privacy Act.

Exhibit B



# Complaints received between Oct 1, 2011 and Sep 30, 2012

Complaints received:    123

*Number of Judges involved:   69*

Complaints closed:  116



# Complaints received
# Oct 1, 2011 thru Sep 30, 2012





# Resolution of complaints received between Oct 1, 2011 and Sep 30, 2012

| Resolved as | Complaints | % |
|---|---|---|
| Dismissed | 45 | 40% |
| *Not Substantiated* | *21* | |
| *Disproven* | *11* | |
| *Failure to State a Claim* | *1* | |
| *Frivolous* | *3* | |
| *Merits related* | *9* | |
| Concluded *(e.g. retirement, resignation)* | 14 | 12% |
| Formal Actions | 4 | 1% |
| Informal Actions | 53 | 47% |

| Total Number Resolved | 116 |
|---|---|
| Total Number Pending | 7 |

\* For reporting purposes defined here as reprimand, suspension or removal



# Basis of complaints received between Oct 1, 2011 and Sep 30, 2012*



*Some complaints may have more than one basis.



# Sources of complaints received between Oct 1, 2011 and Sep 30, 2012*



- Other 2%
- Circuit Ct 1%
- 3rd Party 8%
- Respondent 8%
- BIA 32%
- Respondent's Atty 26%
- DHS/EOIR/OIL 23%

*Some complaints may involve more than one source.

Exhibit C



**AILA National Office**
Suite 300
1331 G Street, NW
Washington, DC
20005-3142

Tel: 202.507.7600
Fax: 202.783.7853

www.aila.org

Crystal Williams
*Executive Director*

Susan D. Quarles
*Deputy Executive Director*

November 13, 2012

VIA ELECTRONIC MAIL TO EOIR.FOIARequests@usdoj.gov

Office of the General Counsel
Attn: FOIA Service Center
Executive Office for Immigration Review
5107 Leesburg Pike, Suite 1903
Falls Church, VA 22041

**RE:   Freedom of Information Act Request**

Dear Freedom of Information Officer:

On behalf of the American Immigration Lawyers Association (AILA), we request the following pursuant to the Freedom of Information Act, 5 U.S.C. § 552:

## I.      Request for Disclosure of Complaints, Final Decisions, and Other Material

Under 5 U.S.C. § 552(a)(3), AILA requests the following records:

(1)    All complaints filed against immigration judges;

(2)    All records that reflect the resolution of complaints filed against immigration judges, including the type of informal action taken, if any, or formal discipline imposed, if any;

(3)    All records that reflect the reasons for resolving complaints against immigration judges and/or findings relied on to resolve complaints against immigration judges, including any reports or memoranda from the Department of Justice Office of Professional Responsibility (OPR) or Office of the Inspector General (OIG);

(4)    All records incorporated by reference in documents that reflect the resolution of complaints filed against immigration judges; and

(5)    An index of the records described in paragraphs (2), (3), and (4) to the extent that those records constitute final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases, pursuant to 5 U.S.C. § 552(a)(2)(A).  *See* 5 U.S.C. § 552(a)(2) (requiring agencies to "maintain and make available for public inspection . . . indexes providing identifying information for the public as to any matter . . . required by this paragraph to be made available or published").

For the purpose of this request, complaints "filed" against immigration judges include complaints from an individual or group *and* complaints identified by the Executive Office for Immigration Review (EOIR) through, for example, news reports, referrals from other agencies or components such as the Board of Immigration Appeals or Office of Immigration Litigation, and review of agency and court decisions.  *See* EOIR, Summary of OCIJ Procedure for Handling Complaints Against Immigration Judges 1, *available at* http://www.justice.gov/eoir/sibpages/IJConduct/IJ ComplaintProcess.pdf (describing various ways in which complaints against immigration judges are initiated) (Attachment A).

This request covers complaints that EOIR resolved on or after January 1, 2007.  For the purpose of this request, resolved complaints are those complaints that have been concluded or dismissed or that resulted in informal action or formal discipline against immigration judges. *See, e.g.*, EOIR, Immigration Judge Complaint Statistics, Oct. 1, 2010-Sept. 1, 2011, at 3, *available at* http://www.justice.gov/eoir/sibpages/IJConduct/OCIJComplaintStatsOct012010to Sep302011.pdf (describing forms of complaint resolution by EOIR) (Attachment B).

If it is your position that records exist that are responsive to this request, but that those records (or portions of those records) are exempt from disclosure, please identify the records that are being withheld and state the basis for the denial for each record being withheld.  In addition, please provide the nonexempt portions of the records.

## II.     Request for Electronic Posting of Final Opinions and Orders

As indicated above, records covered by this request include, but are not limited to, all final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases that resolve complaints against immigration judges.  FOIA requires EOIR to proactively make available to the public all "final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases."  5 U.S.C. § 552(a)(2)(A).  Moreover, since the Electronic Freedom of Information Act Amendments of 1996 (EFOIA), Pub. L. No. 104-231, 110 Stat. 3048, the agency must make these records available by "computer telecommunications" or, if the agency has not established computer telecommunications, "other electronic means."  5 U.S.C. § 552(a)(2).

Accordingly, pursuant to 5 U.S.C. § 552(a)(2), AILA requests that EOIR post on its website all final opinions, including concurring and dissenting opinions, and orders made in the adjudication of complaints against immigration judges.

## III.    Request for a Public Interest Fee Waiver

AILA requests that EOIR waive all fees in connection with this FOIA request in accordance with 5 U.S.C. § 552(a)(4)(A)(iii).  Disclosure "is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government," and AILA does not seek the records for a commercial purpose.

In the sections that follow, AILA addresses each factor identified by the Department of Justice as relevant to the public interest fee waiver inquiry.  *See* 28 C.F.R. § 16.11(k)(2), (k)(3)

(setting forth six factors).  AILA emphasizes, however, that it should be presumed to satisfy those factors relating to the public interest for any requested records that FOIA requires EOIR to proactively make available to the public under 5 U.S.C. § 552(a)(2), that is, those records that constitute final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases and an index of those opinions and orders.  By requiring proactive disclosure, Congress has already determined that disclosure would be in the public interest.

**A.    Disclosure is in the public interest because it is likely to contribute significantly to public understanding of government operations and activities.**

**1.    The subject of the requested records concerns the "operations or activities of the government."**

The requested records clearly concern the operations and activities of the government.  EOIR, through its Office of the Chief Immigration Judge (OCIJ), is responsible for monitoring the performance of immigration judges.  As part of that responsibility, EOIR receives and identifies complaints against immigration judges for potential misconduct and investigates those complaints.  *See* Attachment A at 1.  In some cases, EOIR refers complaints to DOJ's OPR or the OIG, which "report back to EOIR concerning their findings and conclusions."  *Id.*  EOIR can dismiss or conclude a claim for a variety of reasons or take disciplinary action or other informal actions.  Attachment B at 3.

The requested records reflect how EOIR resolves complaints, the findings and conclusions on which EOIR relies, and the substance of the initial complaints by which the public can assess the sufficiency of EOIR's investigations and conclusions.

**2.    Disclosure is "likely to contribute" to an understanding of government operations or activities.**

The records that AILA seeks are not already in the public domain.  To AILA's knowledge, EOIR has released—in response to a previous FOIA request by another requester—only a few specific reports and memoranda from OPR regarding allegations of immigration judge misconduct.  *See* http://www.governmentillegals.org/FOIADocuments.html.  Those documents, in addition to making up only a small subset of the records sought by AILA, are heavily redacted in a manner inconsistent with FOIA and the proper application of its exemptions.  AILA seeks the unredacted versions of these documents in addition to the many other records described above, which are not publicly available.

Disclosure of the requested records will permit the public to assess whether EOIR appropriately disposes of complaints against immigration judges and takes disciplinary action where warranted.  Moreover, by examining the complaints received by EOIR in conjunction with the other records requested, the public will be able to verify whether EOIR conducts sufficiently thorough investigations of all complaints.

### 3. Disclosure of the records will contribute to "public understanding."

As discussed in Part IV, AILA qualifies as a representative of the news media. Therefore, under 28 C.F.R. § 16.11(k)(2)(iii), it should "be presumed that [AILA] will satisfy" the requirement that disclosure of the requested information must contribute to public understanding.

In any event, AILA is well-positioned to ensure that the requested records reach a broad audience and contribute to public understanding of how EOIR responds to complaints against immigration judges. Founded in 1946, AILA is a national association of more than 11,000 attorneys and law professors who practice and teach immigration law. In furtherance of our mission to promote justice and advocate for fair and reasonable immigration law and policy, we seek to provide members and the general public with up-to-date information, news, and commentary on all aspects of immigration law and policy.

AILA publishes in-depth reports on topics of critical interest.[1] It also publishes newsletters, e-magazines, and other print and electronic publications. Moreover, AILA serves as a resource for the media and testifies before Congress, including on issues relating to immigration courts.[2]

AILA maintains a public website, www.aila.org, with immigration-related information and news. Our website is visited an average of 9,000 times each day. Visitors to our website include immigration attorneys, media representatives, U.S. businesses, foreign nationals, and other interested members of the public. Moreover, information posted to AILA's website is often linked to the websites of other organizations and immigration attorneys. AILA also has a blog, available at http://ailaleadershipblog.org, and is active on Facebook and Twitter.

AILA plans to widely disseminate the requested information to the public through its website and other means discussed above as appropriate. Consequently, our dissemination of the requested information will reach a broad segment of the public interested in immigration issues

---

[1] *See, e.g.*, AILA and American Immigration Council, Holding DHS Accountable on Prosecutorial Discretion (2011), *available at* http://www.aila.org/content/default.aspx?docid =37615; AILA, Immigration Enforcement Off Target: Minor Offenses with Major Consequences (2011), *available at* http://www.aila.org/content/fileviewer.aspx?docid=36646&linkid=236762.

[2] *See, e.g.*, Press Release, AILA, AILA Shares Concern About Representation of Immigrants (Dec. 19, 2011), *available at* http://www.aila.org/content/default.aspx?docid=37974; *Improving Efficiency and Ensuring Justice in the Immigration Court System*; *Hearing Before Sen. Comm. on the Judiciary* (2011) (testimony of AILA), *available at* http://www.aila.org/content/ default.aspx?docid=38020; *see also* Julia Preston, *Immigration Judges Found Under Strain*, N.Y. Times, July 10, 2009 (quoting president of AILA), *available at* http://www.nytimes.com/ 2009/07/11/us/11immig.html; Charlie Savage, *Vetted Judges More Likely to Reject Asylum Bids*, N.Y. Times, Aug. 24, 2008 (quoting president of AILA), *available at* http://www.nytimes.com/ 2008/08/24/washington/24judges.html?pagewanted=print.

and contribute to public understanding of EOIR's response to complaints against immigration judges.

**4. Disclosure is likely to contribute "significantly" to public understanding of the government's operations and activities.**

Disclosure of the requested information will contribute significantly to the public's understanding of EOIR's handling of complaints against immigration judges.  As described above, EOIR does not proactively release complaints against immigration judges or documents reflecting the resolution of specific complaints.  Instead, EOIR provides only aggregate statistics on complaint resolutions, and does so only for complaints filed since October 1, 2009.  *See* EOIR, Immigration Conduct and Professionalism, http://www.justice.gov/eoir/sibpages/ IJConduct/IJConduct.htm (last visited Nov. 5, 2012).

EOIR's aggregate statistics do not allow the public to assess whether EOIR is sufficiently carrying out its supervisory responsibilities.  They describe the basis of complaints only in general terms (e.g., in-court conduct, bias, due process) and do not identify the immigration judges at issue in the complaints.  Moreover, the statistics provide little information about the actions that EOIR has taken to respond to complaints, indicating, for example, that EOIR resolved more than half of the complaints in Fiscal Year 2011 through "[i]nformal [a]ctions," without further information.  Attachment B at 3.

Accordingly, release of the requested records would enable the public for the first time to assess for itself whether EOIR is responding appropriately to complaints against immigration judges.  Moreover, by identifying immigration judges at issue in the complaints, the requested records will enable the public to discern whether EOIR is imposing appropriate levels of discipline for judges who repeatedly engage in misconduct.

**B. Disclosure of the information is not in AILA's commercial interest.**

**1. AILA does not have a commercial interest that would be furthered by the disclosure.**

AILA is a non-partisan, 501(c)(6) not-for-profit organization that provides its members and the public with continuing legal education and information, primarily through its website, www.aila.org, which is updated daily with the latest immigration news and information, including agency guidance, interpretations, and policy memoranda.  AILA seeks the requested information for the purpose of disseminating it to its members and the general public, free of charge.  As a non-profit organization, AILA clearly lacks any commercial interest in obtaining the requested records.

**2. Because AILA has no commercial interest in the disclosure, the release cannot "primarily" be in AILA's commercial interest.**

Under 28 C.F.R. § 16.11(k)(3)(ii), a public interest "fee waiver or reduction is justified where the public interest standard is satisfied and that public interest is greater in magnitude than

that of any identified commercial interest in disclosure." As explained in Part III.B.1, however, AILA has no commercial interest that would be furthered by the requested disclosure, while the public interest served by disclosure (as described in Part III.A above) is substantial. AILA thus meets this final criterion for a public interest fee waiver.

**IV.     Request for Recognition as a Representative of the News Media.**

AILA is also entitled to recognition as a representative of the news media under 5 U.S.C. § 552(a)(4)(A)(ii). Thus, any fees associated with the processing of this request should be "limited to reasonable standard charges for document duplication." *Id.* § 552(a)(4)(A)(ii)(II).

As noted above, AILA does not seek the requested records for a commercial purpose. It also regularly publishes reports and disseminates its reports and other materials via publications, its website, and newsletters. It also contributes to and maintains a blog. As these facts demonstrate, AILA qualifies as a representative of the news media because it "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." *Id.* § 552(a)(4)(A)(ii).

*     *     *

Thank you for your attention to this matter. If you have any questions, you may reach me at 202-507-7612 or by e-mail at rdeasy@aila.org.

Sincerely,

Robert P. Deasy, Esq.
Director of Liaison and Information

6

Exhibit D



**U.S. Department of Justice**

Executive Office for Immigration Review

*Office of the General Counsel*

_____

*5107 Leesburg Pike, Suite 2600*
*Falls Church, Virginia 22041*

December 6, 2012

Robert P. Deasy
American Immigration Lawyers Assoc.
1331 G St., N.W., Suite 300
Washington, DC 20005

RE: Freedom of Information Act Request
    Complaints

Dear Robert Deasy:

   The Executive Office for Immigration Review has received your letter in which you seek a fee waiver of your Freedom of Information Act (FOIA) request.

   Upon review of your request, it has been determined that your request did not meet the threshold.  Therefore, your request for fee waiver has been denied.

   If you are not satisfied with this decision, you may file an appeal with the Office of Information Policy (OIP), U.S. Department of Justice, 1425 New York Ave., N.W., Suite 11050, Washington, D.C. 20530.  OIP must receive your appeal within 60 days of the date of this letter.  The procedures for appeal are stated at 28 C.F.R. Section 16.9.

                                        Sincerely,

                                        Crystal Souza

EOIR# 2013-2789

Exhibit E



AILA National Office
Suite 300
1331 G Street, NW
Washington, DC
20005-3142

Tel: 202.507.7600
Fax: 202.783.7853

www.aila.org

Crystal Williams
*Executive Director*

Susan D. Quarles
*Deputy Executive Director*

December 28, 2012

*Via fax to (202) 514-1009 (without Appendices 3-7) and by certified mail*

Office of Information Policy
U.S. Department of Justice
1425 New York Avenue, NW
Suite 11050
Washington, DC 20530

### RE:    Freedom of Information Act Appeal, EOIR #2013-2789

Dear Freedom of Information Appeal Officer:

On behalf of the American Immigration Lawyers Association (AILA), I appeal the denial of the fee waiver request contained in AILA's November 13, 2012, FOIA request to the Executive Office for Immigration Review (EOIR).  EOIR's denial of the request was issued on December 6, 2012, and received by AILA by December 11, 2012.

In its FOIA request, AILA sought:

(1)    All complaints filed against immigration judges;

(2)    All records that reflect the resolution of complaints filed against immigration judges, including the type of informal action taken, if any, or formal discipline imposed, if any;

(3)    All records that reflect the reasons for resolving complaints against immigration judges and/or findings relied on to resolve complaints against immigration judges, including any reports or memoranda from the Department of Justice (DOJ) Office of Professional Responsibility (OPR) or Office of the Inspector General (OIG);

(4)    All records incorporated by reference in documents that reflect the resolution of complaints filed against immigration judges; and

(5)    An index of the records described in paragraphs (2), (3), and (4) to the extent that those records constitute final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases, pursuant to 5 U.S.C. § 552(a)(2)(A).

In addition, pursuant to 5 U.S.C. § 552(A)(2), AILA asked EOIR to post on its website all final opinions, including concurring and dissenting opinions, and orders made in the adjudication of complaints against immigration judges.  AILA limited its request to complaints resolved on or

after January 1, 2007.  AILA sought a public interest fee waiver for all fees in connection with the request.  *See* 5 U.S.C. § 552(a)(4)(A)(iii).  It also sought recognition as a representative of the news media.  *See id.* § 552(a)(4)(A)(ii)(II).

In its letter denying AILA's fee waiver request, EOIR stated that "it ha[d] been determined that [AILA's] request did not meet the threshold" and that AILA's "request for a fee waiver ha[d] been denied."  EOIR provided no rationale for the denial, nor did it address AILA's request for recognition as a representative of the news media.  A copy of AILA's FOIA request is enclosed as Appendix 1.  EOIR's denial letter is enclosed as Appendix 2.

As described in AILA's original request and in greater detail below, AILA is entitled to a public interest fee waiver.  Disclosure "is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government," and AILA does not seek the records for a commercial purpose.  5 U.S.C. § 552(a)(4)(A)(iii).  EOIR's conclusion to the contrary, unsupported by any reasoned basis, is erroneous.

In the sections that follow, AILA addresses each factor identified by DOJ as relevant to the public interest fee waiver inquiry.  *See* 28 C.F.R. § 16.11(k)(2), (k)(3) (setting forth six factors).  However, AILA emphasizes at the outset that it seeks—at least in part—records that FOIA requires EOIR to proactively make available to the public under 5 U.S.C. § 552(a)(2)— that is, records that constitute final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases and an index of those opinions and orders. Since the Electronic Freedom of Information Act Amendments of 1996 (EFOIA), Pub. L. No. 104-231, 110 Stat. 3048, the agency must make these records available by "computer telecommunications" or, if the agency has not established computer telecommunications, "other electronic means."  5 U.S.C. § 552(a)(2).  Any attempt to assess fees for documents covered by 5 U.S.C. § 552(a)(2) is at odds with FOIA's affirmative disclosure requirement; EOIR cannot burden AILA with the cost of producing documents that the agency has an independent obligation to disclose without request.  At a minimum, for any requested records covered by 5 U.S.C. § 552(a)(2), AILA should be presumed to satisfy those factors under 28 C.F.R. § 16.11(k)(2) and (k)(3) that relate to the public interest.  By requiring proactive disclosure, Congress has already determined that disclosure would be in the public interest.

I.  **Disclosure Is in the Public Interest Because It Is Likely to Contribute Significantly to Public Understanding of Government Operations and Activities.**

A.  **The subject of the requested records concerns the "operations or activities of the government."**

The requested records concern the operations and activities of the government.  EOIR, through its Office of the Chief Immigration Judge (OCIJ), is responsible for monitoring the performance of immigration judges.  As part of that responsibility, EOIR receives and identifies complaints against immigration judges for potential misconduct and investigates those complaints.  *See* Appendix 1, Attach. A at 1.  In some cases, EOIR refers complaints to DOJ's OPR or the OIG, which "report back to EOIR concerning their findings and conclusions."  *Id.*

2

EOIR can dismiss or conclude a claim for a variety of reasons or take disciplinary action or other informal actions. *Id.*, Attach. B at 3.

The integrity and quality of immigration judges is a matter of critical importance to the public. Complaints against those judges, alongside documents demonstrating how complaints were resolved, will shed light on how, and to what extent, the government works to ensure judges' integrity and quality. In FY 2011 alone, immigration judges completed work on 303,000 immigration proceedings. EOIR, FY 2011 – Statistical Year Book (2012), Tab C4, *available at* http://www.justice.gov/eoir/statspub/fy11syb.pdf. In that same year, only eight percent of individuals appealed decisions of the immigration judges to the Board of Immigration Appeals (BIA). *Id.*, Tab X1. Thus, in the vast majority of cases, immigration judges have the last word on the fate of individuals seeking to remain in the United States, including individuals who fear that return to their native countries will result in persecution or torture. *See id.*, Tabs I2, M1 (indicating that in FY 2011 immigration courts resolved more than 40,000 asylum cases and 27,000 Convention Against Torture applications). Immigration judges make such weighty determinations in an environment where nearly half of the aliens whose proceedings are completed are *pro se*; many of these individuals "are indigent and cannot afford a private attorney." *Id.*, Tab G1. As EOIR recognizes, immigration judges thus play a special role in "ensur[ing] that *pro se* individuals understand the nature of the proceedings, as well as their rights and responsibilities." *Id.*

In sum, the requested records reflect how EOIR resolves complaints, the findings and conclusions on which EOIR relies, and the substance of the initial complaints by which the public can assess the sufficiency of EOIR's investigations and conclusions. These records thus have a "direct and clear, not remote or attenuated," connection to the activities and operations of the government. 28 C.F.R. § 16.11(k)(2)(i). Accordingly, AILA meets the first prong of DOJ's six-factor public interest fee waiver test.

### B. Disclosure is "likely to contribute" to an understanding of government operations or activities.

The records that AILA seeks are not already in the public domain. To AILA's knowledge, EOIR has released—in response to a previous FOIA request by another requester— only a few specific reports and memoranda from OPR regarding allegations of immigration judge misconduct. *See* http://www.governmentillegals.org/FOIADocuments.html. Those documents, in addition to making up only a small subset of the records sought by AILA, are heavily redacted in a manner inconsistent with FOIA and the proper application of its exemptions. AILA seeks the unredacted versions of these documents in addition to the many other records described above, which are not publicly available.

Disclosure of the requested records will permit the public to assess whether EOIR appropriately disposes of complaints against immigration judges and takes disciplinary action where warranted. Moreover, by examining the complaints received by EOIR in conjunction with the other records requested, the public will be able to verify whether EOIR conducts sufficiently thorough investigations of all complaints.

3

### C.      Disclosure of the records will contribute to "public understanding."

As discussed in its original FOIA request, AILA qualifies as a representative of the news media.  Therefore, under 28 C.F.R. § 16.11(k)(2)(iii), it should "be presumed that [AILA] will satisfy" the requirement that disclosure of the requested information must contribute to public understanding.

In any event, AILA's "expertise in the subject area and ability and intention to effectively convey information to the public," considerations that DOJ has identified as relevant to determine whether disclosure of records will contribute to "public understanding," are beyond question.  28 C.F.R. § 16.11(k)(2)(iii).  Founded in 1946, AILA is a national association of more than 11,000 attorneys and law professors who practice and teach immigration law.  AILA was established to promote justice, advocate for fair and reasonable immigration law and policy, advance the quality of immigration and nationality law and practice, and enhance the professional development of its members.  In furtherance of AILA's mission, we seek to provide members and the general public with up-to-date information, news, and commentary on all aspects of immigration law and policy.

AILA has three communications staff members.  AILA maintains a public website, www.aila.org, with immigration-related information and news.  Our website is visited an average of 9,000 times each day.  In the past year, our online "Press Room" was visited at least 400 times each month. Visitors to our website include immigration attorneys, media representatives, U.S. businesses, foreign nationals, and other interested members of the public.  Moreover, information posted to AILA's website is often linked from the websites of other organizations and immigration attorneys.  AILA also has a blog, available at http://ailaleadershipblog.org, that it uses to address, among other issues, topics relating to the immigration courts.[1]  In addition, AILA is active on Facebook and Twitter.

AILA publishes in-depth reports on topics of critical interest.[2]  It also publishes newsletters, e-magazines, and other print and electronic publications.  Moreover, AILA serves as a resource for the media[3] and testifies before Congress, including on issues relating to immigration courts.[4]

---

[1] Charles H. Kuck, *Due Process for Immigrants, Is Due Process for All Americans*, June 10, 2009,   http://ailaleadershipblog.org/2009/06/10/due-process-for-immigrants-is-due-process-for-all-americans; Amy Peck, *The New Immigration Judges–Wherefrom Art Thou?*, Apr. 29, 2009, http://ailaleadershipblog.org/2009/04/29/the-new-immigration-judges-wherefrom-art-thou. Copies of these blog posts are attached as Appendix 3.

[2] *See, e.g.*, AILA and American Immigration Council, Holding DHS Accountable on Prosecutorial Discretion (2011), *available at* http://www.aila.org/content/default.aspx?docid =37615; AILA, Immigration Enforcement Off Target: Minor Offenses with Major Consequences (2011), *available at* http://www.aila.org/content/fileviewer.aspx?docid=36646&linkid=236762. Copies of these reports are included as Appendix 4.

[3] *See, e.g.*, Press Release, AILA, AILA Shares Concern About Representation of Immigrants (Dec. 19, 2011), *available at* http://www.aila.org/content/default.aspx?docid=37974; Press Release, AILA, EOIR Shows Lack of Balance, Lack of Diversity of Experience with New BIA

AILA plans to disseminate the requested information and its corresponding analysis to the public through AILA's website and other means, such as press releases, reports, and blog posts, as appropriate. Such an intention, coupled with a history of dissemination, is sufficient to meet the "public understanding" prong of the fee waiver analysis. *See, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 185 F. Supp. 2d 54, 62 (D.D.C. 2002) (concluding that plaintiff had shown its FOIA request was likely to contribute to public understanding where "[p]laintiff state[d] that it ha[d] several mechanisms for disseminating information, including allowing reporters to inspect its documents, 'blast faxing' press releases, maintaining a website and appearing on radio and television programs" and that "it intend[ed] to use these mechanisms to make the information obtained through the FOIA request available to the public"); *see also Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1314 (D.C. Cir. 2003) (concluding that plaintiff satisfied this prong of the fee waiver analysis by stating only that its mission was to obtain information under FOIA and describing several ways in which it customarily disseminated information).

Moreover, AILA will disseminate the information and its corresponding analysis widely, consistent with 28 C.F.R. § 16.11(k)(2)(iii)'s focus on reaching a "reasonably broad audience of persons interested in the subject." The public's interest in immigration judge misconduct and the integrity of the immigration courts is high. In recent years, media outlets have reported on

---

Appointees (Dec. 17, 2008), *available at* http://www.aila.org/content/default.aspx?docid=27463; Press Release, AILA, Politicized Hiring of Immigration Judges and BIA: Not the End of the Story (July 30, 2008), *available at* http://www.aila.org/content/default.aspx?docid=26091; Press Release, AILA, AILA Renews Call for an Independent Immigration Court (May 27, 2003), *available at* http://www.aila.org/content/default.aspx?docid=8760; Press Release, AILA, Bush Administration Proposed Changes to BIA Threaten Due Process (Feb. 20, 2002), *available at* http://www.aila.org/content/default.aspx?docid=2063; Press Release, AILA, Text of Roy Berg's June 26 Speech to Immigration Judges (June 26, 2000), *available at* http://www.aila.org/content/default.aspx?docid=5403; *see also, e.g.*, Julia Preston, *Immigration Judges Found Under Strain*, N.Y. Times, July 10, 2009 (quoting president of AILA), *available at* http://www.nytimes.com/2009/07/11/us/11immig.html; Charlie Savage, *Vetted Judges More Likely to Reject Asylum Bids*, N.Y. Times, Aug. 24, 2008 (quoting president of AILA), *available at* http://www.nytimes.com/2008/08/24/washington/24judges.html?pagewanted=print. Copies of these materials are included as Appendix 5.

[4] *See Improving Efficiency and Ensuring Justice in the Immigration Court System*; *Hearing Before Sen. Comm. on the Judiciary* (2011) (testimony of AILA), *available at* http://www.aila.org/content/default.aspx?docid=38020; *The Executive Office for Immigration Review*, *Hearing Before House Comm. on the Judiciary, Subcomm. on Immigration, Citizenship, Refugees, Border Security, and International Law* (2010) (testimony of AILA), *available at* http://www.aila.org/content/default.aspx?docid=32247; *The Operations of the Executive Office for Immigration Review (EOIR)*, *Hearing Before the House Comm. on the Judiciary, Subcomm. on Immigration and Claims* (2002) (testimony of Stephen Yale-Loehr, AILA member, on BIA reform), *available at* http://www.aila.org/content/default.aspx?docid=2039. Copies of these statements to Congress are included as Appendix 6.

alleged immigration judge misconduct or bias,[5] as have numerous scholars.[6]  The federal courts have also repeatedly expressed concern about these topics.[7]  Accordingly, our dissemination of the requested information will reach a broad segment of the public interested in immigration issues.

### D.   Disclosure is likely to contribute "significantly" to public understanding of the government's operations and activities.

Disclosure of the requested information will contribute significantly to the public's understanding of EOIR's handling of complaints against immigration judges.  As described

---

[5] *See, e.g.*, Bennett L. Gershman, *How Immigration Courts Contaminate American Justice*, Huffington Post, Jan. 6, 2012, http://www.huffingtonpost.com/bennett-l-gershman/how-immigration-courts-co_b_1187353.html; Jacqueline Stevens, *Lawless Courts*, The Nation, Nov. 8, 2010, *available at* http://www.thenation.com/print/article/155497/lawless-courts; Interview Transcript with Jacqueline Stevens and Emily Guzman, *"Lawless Courts": Lack of Accountability Allows Immigration Judges to Violate Laws, Deport US Citizens*, Oct. 22, 2010 *available at* http://www.democracynow.org/2010/10/22/lawless_courts_lack_of_accountability_ allows; Gaiutra Bahadur, *'Bullying' Immigration Judge Absent, Replaced*, Phila. Inquirer, June 2, 2006, *available at* http://articles.philly.com/2006-06-02/news/25402880_1_immigration-courts-office-for-immigration-review-asylum-petitions; Ann M. Simmons, *Some Immigrants Meet Harsh Face of Justice; Complaints of Insensitive—Even Abusive—Conduct by Some U.S. Immigration Judges Have Prompted a Broad Federal Review*, L.A. Times, Feb. 12, 2006, *available at* http://articles.latimes.com/print/2006/feb/12/nation/na-judges12; Adam Liptak, *Courts Criticize Judges' Handling of Asylum Cases*, N.Y. Times, Dec. 26, 2005, *available at* http://www.nytimes.com/2005/12/26/national/26immigration.html?pagewanted=all&_r=0. Copies of these articles are included as Appendix 7.

[6] *See, e.g.*, Michele Benedetto, *Crisis on the Immigration Bench: An Ethical Perspective*, 28 J. Nat'l Ass'n Admin. L. Judiciary 471, 473-74 (2008) (stating that "[m]any immigration judges appear to be determining cases in a haphazard manner, with decisions influenced more by personal preferences than by careful consideration of facts and law" and that, "[a]s a result, litigants in immigration court can no longer be assured of ethical and accurate decision-making when they present their case to an immigration judge"); Lindsey R. Vaala, *Bias on the Bench: Raising the Bar for U.S. Immigration Judges to Ensure Equality for Asylum Seekers*, 49 Wm. & Mary L. Rev. 1011, 1024-26, 1040 (2007) (discussing frequent criticism of immigration judges by courts of appeals and noting that "misconduct by [immigration judges], even one-time offenders, can be shockingly egregious").

[7] *See, e.g.*, *Zuh v. Mukasey*, 547 F.3d 504, 514 (4th Cir. 2008) (recognizing that "courts have grown increasingly skeptical of the high error rate within the immigration system" and citing cases of alleged immigration judge bias or misconduct); *Benslimane v. Gonzales*, 430 F.3d 828, 829-30 (7th Cir. 2005) (stating that the "adjudication of [immigration] cases at the administrative level has fallen below the minimum standards of legal justice" and cataloguing criticism by the courts of appeals of immigration judge misconduct and incompetence); *see also Gor v. Holder*, 607 F.3d 180, 198 (6th Cir. 2010) (Cole, J., concurring in part and concurring in judgment) (citing "errors of disturbing magnitude and frequency" by the BIA as well).

above, EOIR does not proactively release complaints against immigration judges or documents reflecting the resolution of specific complaints. Instead, EOIR provides only aggregate statistics on complaint resolutions, and does so only for complaints filed since October 1, 2009. *See* EOIR, Immigration Conduct and Professionalism, http://www.justice.gov/eoir/sibpages/ IJConduct/IJConduct.htm (last visited Nov. 5, 2012).

EOIR's aggregate statistics do not allow the public to assess whether EOIR sufficiently carries out its supervisory responsibilities. They describe the basis of complaints only in general terms (e.g., in-court conduct, bias, due process) and do not identify the immigration judges at issue in the complaints. Moreover, the statistics provide little information about the actions that EOIR has taken to respond to complaints, indicating, for example, that EOIR resolved more than half of the complaints in Fiscal Year 2011 through "[i]nformal [a]ctions," without further information. Appendix 1, Attach. B at 3.

AILA intends to analyze in detail the records sought in this FOIA request. To the extent that such an analysis requires technical legal skills, AILA will apply its legal expertise and knowledge of immigration court processes. AILA intends to provide its findings to the public in an accessible way, which may include analytical reports, public statements, and blogs. Such findings—based on information not currently available to the public—will far exceed in value any commentary currently available to the public about the prevalence of immigration judge misconduct and the extent to which EOIR takes seriously complaints of such misconduct. *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Health & Human Servs.*, 481 F. Supp. 2d 99, 117-18 (D.D.C. 2006) (holding that plaintiff satisfied this criterion by "demonstrat[ing] that there ha[d] been past public interest in [a] topic but that media accounts only 'touched on'" a specific part of the topic and that plaintiff would contribute to public understanding by giving the issue "detailed treatment"). AILA—and by extension, the public— will be able for the first time to assess whether EOIR is responding appropriately to complaints against immigration judges. Moreover, AILA will be able to discern whether EOIR is imposing appropriate levels of discipline for judges who repeatedly engage in misconduct and inform the public of such findings. Accordingly, AILA has demonstrated that disclosure is likely to contribute "significantly" to public understanding of the government's operations and activities.

## II.     Disclosure of the Information Is Not in AILA's Commercial Interest.

AILA does not have a commercial interest that would be furthered by the disclosure. *See* 28 C.F.R. § 16.11(k)(3)(i). AILA is a non-partisan, 501(c)(6) not-for-profit organization that provides its members and the public with continuing legal education and information, primarily through its website, www.aila.org, which is updated daily with the latest immigration news and information, including agency guidance, interpretations, and policy memoranda. AILA seeks the requested information for the purpose of disseminating the information and AILA's corresponding analysis to AILA's members and the general public, free of charge. AILA's dissemination of this material will further its goals of educating the public about immigration and immigration law. As a non-profit organization, AILA clearly lacks any commercial interest in obtaining the requested records.

Under 28 C.F.R. § 16.11(k)(3)(ii), a public interest "fee waiver or reduction is justified where the public interest standard is satisfied and that public interest is greater in magnitude than that of any identified commercial interest in disclosure." As explained in Part II.A, however, AILA has no commercial interest that would be furthered by the requested disclosure, while the public interest served by disclosure (as described in Part I above) is substantial. AILA thus meets this final criterion for a public interest fee waiver.

\*     \*     \*

Thank you for your attention to this matter. If you have any questions, you may reach me at the telephone number above or by e-mail at rdeasy@aila.org.

Sincerely,

Robert P. Deasy, Esq.
Director of Liaison and Information

8