**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

AMERICAN IMMIGRATION LAWYERS
ASSOCIATION,

               Plaintiff,

               v.

EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW <u>et al.</u>,

               Defendants.

Case No. 1:13-cv-00840 (CRC)

**<u>MEMORANDUM OPINION</u>**

The conduct of the nation's immigration judges has been the focus of considerable public

concern in recent years.[1]  Seeking to shed additional light on this important issue, the American

Immigration Lawyers Association ("AILA") filed a Freedom of Information Act ("FOIA") request

with the Executive Office for Immigration Review ("EOIR")—the component of the Department of

Justice that supervises immigration judges—for records related to complaints against individual

judges and EOIR's final written resolutions of those complaints.  After AILA filed this lawsuit,

EOIR produced some 16,000 pages of records associated with 767 complaints but redacted or

withheld the individual judges' personal information—including their names, genders, and work

locations.  Both parties now move for summary judgment.  AILA insists that EOIR must disclose

the identity of individual judges, as well as other material that EOIR redacted from the produced

records as non-responsive, and publish its complaint resolutions.  EOIR retorts that identifying the

immigration judges by name would unduly infringe their privacy interests and that its other

---

[1]  <u>See, e.g.</u>, Ann M. Simmons, <u>Some Immigrants Meet Harsh Face of Justice: Complaints of
Insensitive—Even Abusive—Conduct by Some U.S. Immigration Judges Have Prompted a Broad
Federal Review</u>, L.A. Times, Feb. 12, 2006, http://articles.latimes.com/2006/feb/12/nation/na-
judges12

redactions were proper.  It further argues that FOIA does not require release of the complaint

resolutions.[2]  While the public may have some interest in knowing the identities of individual

judges, AILA must be content with the voluminous complaint records it has already received.  As

non-supervisory, career civil servants, immigration judges retain privacy rights that outweigh the

incremental public interest in revealing their identities.  The Court therefore will grant EOIR's

summary judgment motion as it relates to the redaction of the judges' personal identifying

information.  The Court also will grant summary judgment for EOIR with respect to AILA's

request for the complaint resolutions because the resolutions are not the result of an adversarial

process and do not carry the force of law.  The Court will grant summary judgment for AILA,

however, with respect to EOIR's redaction of other information in the complaint files.

## I.      Background

AILA is a national association of more than 13,000 attorneys and law professors who

practice and teach immigration law.  Decl. of Robert P. Deasy, Deputy Director of AILA ("Deasy

Decl.") ¶ 3.  EOIR is an office in the Department of Justice that administers the nation's

immigration court system, which consists of 59 immigration courts and more than 246 immigration

judges ("IJs") nationwide.  Decl. of Mary Beth Keller, Assistant Chief Immigration Judge ("Keller

Decl.") ¶¶ 2–4.  IJs are non-supervisory career civil servants "selected through competitive vacancy

announcements open to all United States citizens" and are "organized as a collective bargaining

---

[2]  While the parties also contest whether AILA was entitled to a fee waiver, EOIR has produced the records at no cost without demanding fees or obtaining confirmation of AILA's willingness to pay fees before production.  See 28 C.F.R. § 16.11(e).  The parties' respective counsel also engaged in correspondence which suggested that this issue had been resolved without the need for litigation.  Supplemental Murray Decl. ¶ 9.  Because the issue may now be moot and the parties did not fully brief it in their cross motions for summary judgment, the Court does not reach it.

unit." Defs.' Mot. Summ. J. at 2; see also Keller Decl. ¶ 5 and 8 C.F.R. § 1001.1(l) (An IJ is "an

administrative judge within" EOIR).

In response to criticism of IJ conduct by several circuit courts and related news stories, the

Department of Justice launched a review of the immigration courts in 2006 and subsequently

implemented a new system for the intake, tracking, and resolution of complaints. Pl.'s Mot. Summ.

J. at 6–9. Under the new system, EOIR treats as a complaint, and investigates, any information it

receives related to inappropriate conduct by an IJ—whether or not the conduct occurred when the IJ

was in court or relates to his or her official duties. Defs.' Mot. Summ. J. at 3 n.2. On November

13, 2012, AILA submitted a FOIA request to EOIR seeking:

(1) All complaints filed against immigration judges;

(2) All records that reflect the resolution of complaints filed against immigration judges, including the type of informal action taken, if any, or formal discipline imposed, if any;

(3) All records that reflect the reasons for resolving complaints against immigration judges and/or findings relied on to resolve complaints against immigration judges, including any reports or memoranda from the Department of Justice Office of Professional Responsibility (OPR) or Office of the Inspector General (OIG);

(4) All records incorporated by reference in documents that reflect the resolution of complaints filed against immigration judges; and

(5) An index of the records described in paragraphs (2), (3), and (4) to the extent that those records constitute final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases, pursuant to 5 U.S.C. § 552(a)(2)(A).

Defs.' Mot. Summ. J. Ex. A. After this litigation commenced, EOIR released records in eight

interim productions concluding on April 17, 2014. Decl. of Paul A. Rodrigues, Associate General

Counsel for EOIR ("Rodrigues Decl.") ¶¶ 18–19, 25, 28, 31, 38, 42–43. The productions included

approximately 767 closed complaint files reflecting both substantiated and unsubstantiated

complaints and a wide range of resolutions. Defs.' Reply at 3 n.1. EOIR provided Vaughn indices

for the interim productions, listing by category the redactions that had been made under FOIA

Exemptions 5 and 6.  Rodrigues Decl. ¶¶ 18–19, 25, 28, 31, 38, 42–43.[3]  Exemption 6 permits

agencies to withhold information from "personnel and medical files and similar files the disclosure

of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. §

552(b)(6).  Pursuant to Exemption 6, EOIR redacted names and other identifying information

pertaining to immigration judges, aliens, and EOIR and Department of Homeland Security

employees.  Rodrigues Decl. ¶¶ 18–19, 25, 28, 31, 38, 42–43.  Additionally, EOIR assigned a

random three letter code to each IJ to enable AILA to group complaints about the same individual IJ

without revealing the IJ's specific identity.  Id. ¶ 16.  In total, EOIR released approximately 16,000

pages of records.  Id. ¶ 44.

EOIR moved for summary judgment, arguing that its declarations and Vaughn indices show

that it adequately searched for and produced all non-exempt responsive documents, and that the

proactive release provision of FOIA, 5 U.S.C. § 552(a)(2)(A), does not require publication of IJ

complaint resolutions.  Defs.' Mot. Summ. J. at 1.  AILA cross-moved for summary judgment,

seeking disclosure of the personal identifying information that EOIR redacted pursuant to

Exemption 6.[4]  Pl.'s Mot. Summ. J. at 1.  Specifically, AILA seeks "all locational information

beyond street addresses; immigration judge names and signatures, pronouns used for immigration

judges; judges' entry on duty, termination, retirement dates, or years of service; circuit court cases,

quotations, and citations; and media articles."  Pl.'s Mot. Summ. J. at 15.  AILA also seeks

---

[3]  This opinion focuses on the information that EOIR redacted pursuant to FOIA Exemption 6.
EOIR also redacted information pursuant to FOIA Exemption 5, which covers "inter-agency or
intra-agency memorandums or letters which would not be available by law to a party other than an
agency in litigation with the agency," 5 U.S.C. § 552(b)(5), but AILA "does not pursue those
records . . . in this motion for summary judgment."  Pl.'s Mot. Summ. J. at 15.

[4]  AILA's motion does not challenge the adequacy of EOIR's search.

disclosure of material that EOIR redacted from complaint files as non-responsive to AILA's

request.  Finally, AILA contends that FOIA's proactive publication provision reaches EOIR's

complaint resolutions.

## II.      Standard of Review

The Court should grant summary judgment where the pleadings, stipulations, affidavits, and

admissions in a case show "that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; accord Celotex Corp. v. Catrett, 477

U.S. 317, 322 (1986).  "It is typically appropriate to resolve FOIA cases on summary judgment."

Shapiro v. Dep't of Justice, 969 F. Supp. 2d 18, 26 (D.D.C. 2013), appeal dismissed, 13-5345, 2014

WL 1378748 (D.C. Cir. Feb. 26, 2014) (citing Brayton v. Office of the U.S. Trade Rep., 641 F.3d

521, 527 (D.C. Cir. 2011)).  "In the FOIA context, the government must demonstrate the absence of

a genuine dispute regarding the adequacy of its search for or production of responsive records."

Judicial Watch, Inc. v. Dep't of the Navy, 971 F. Supp. 2d 1 (D.D.C. 2013) (citing Nat'l

Whistleblower Ctr. v. Dep't of Health & Human Servs., 849 F. Supp. 2d 13, 21–22 (D.D.C. 2012)).

"FOIA mandates a 'strong presumption in favor of disclosure.'"  Nat'l Ass'n of Home Builders v.

Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173,

(1991)).  But, "[a]n agency that has withheld responsive documents pursuant to a FOIA exemption

can carry its burden to prove the applicability of the claimed exemption by affidavit[.]"  Larson v.

Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citing Miller v. Casey, 730 F.2d 773, 776

(D.C.Cir.1984)).  "Summary judgment is warranted . . . when the affidavits describe the

justifications for nondisclosure with reasonably specific detail, demonstrate that the information

withheld logically falls within the claimed exemption, and are not controverted by either contrary

evidence in the record nor by evidence of agency bad faith."  Id.  "Ultimately, an agency's

justification for invoking a FOIA exemption is sufficient if it appears logical or plausible."  Wade v.

IRS, 771 F. Supp. 2d 20, 24 (D.D.C. 2011) (citing Wolf v. CIA, 473 F.3d 370, 374–75 (D.C. Cir.

2007) (internal quotation marks and citations omitted)).

    **III.**    **Analysis**

        A.  Redactions of Personal Identifying Information Pursuant to Exemption 6

        Determining whether an agency properly withheld information under FOIA Exemption 6

entails a two-step inquiry.  Jurewicz v. Dep't of Agric., 741 F.3d 1326, 1332 (D.C. Cir. 2014);

Multi Ag Media LLC v. Dep't of Agric., 515 F.3d 1224, 1228 (D.C. Cir. 2008).  The court first

must determine if the withheld records were contained in a personnel, medical, or "similar file."  Id.

Neither party in this case disputes that the requested records fall within this category.  See Pl.'s

Mot. Summ. J. at 16.  The court next must determine whether disclosure "would constitute a clearly

unwarranted invasion of personal privacy."  Multi Ag Media, 515 F.3d at 1228 (citing 5 U.S.C. §

552(b)).  This second step involves balancing "the privacy interest that would be compromised by

disclosure against any public interest in the requested information."  Id.  Disclosure is required

absent a "substantial privacy interest," which is anything greater than a *de minimis* privacy interest.

Id. at 1229–30 (quoting Nat'l Ass'n of Retired Fed. Emps. v. Horner, 879 F.2d 873, 874 (D.C. Cir.

1989)).   If such a privacy interest exists, the court then analyzes "whether the public interest in

disclosure outweighs the individual privacy concerns."  Nat'l Ass'n of Home Builders, 309 F.3d at

35.  In this context, "the only relevant 'public interest in disclosure' . . . is the extent to which

disclosure would . . . 'contribut[e] significantly to public understanding of the operations or

activities of the government."  Dep't of Def. v. Fed. Labor Relations Auth., 510 U.S. 487, 495

(1994) (quoting Dep't of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 775

(1989) (internal quotation marks omitted)); see also Nat'l Ass'n of Home Builders, 309 F.3d at 35

(quoting Bibles v. Or. Natural Desert Ass'n, 519 U.S. 355, 356 (1997)) (Exemption 6 balancing

inquiry "limited to the question [of] whether disclosure will shed light on the 'agency's performance of its statutory duties'").

EOIR claims that its release of redacted records provided AILA with all of the substantive information it sought about the operations of the government, including a means to identify patterns of complaints and/or the progression of discipline taken by EOIR against specific IJs, while still protecting the personal information of the federal employees at issue.  Thus, EOIR contends it has disclosed the information which would "'contribut[e] significantly to public understanding of the operations or activities of the government,'" Dep't of Def., 510 U.S. at 495 (quoting Reporters Comm., 489 U.S. at 775), while redacting the information that "would constitute a clearly unwarranted invasion of personal privacy," Multi Ag Media, 515 F.3d at 1228 (citing 5 U.S.C. §552(b)).  AILA counters that the public interest demands additional disclosure for a number of reasons.  It contends that publicly identifying the IJs named in the complaints would deter repeated poor conduct in the future; encourage more reporting of complaints, thereby better informing EOIR and the public about IJ conduct; and facilitate deeper analysis of the complaint process by making it easier for "researchers to find other public biographical information about the judges . . . that could then be considered in assessing how EOIR resolves immigration judge complaints."  Pl.'s Mot. Summ. J. at 23.  AILA also contends that the public interest in disclosure outweighs the IJs' privacy interests because IJs "make weighty, life-or-death decisions" and "are expected to exercise independent judgment," thus making them high-level officials with a lower expectation of privacy. Id. at 24.

The Court agrees that the public has at least some marginal interest in the additional records AILA seeks.  Based on its review of relevant D.C. Circuit caselaw, however, the Court also concludes that EOIR has struck an appropriate balance between that public interest and the privacy

interests of the individual IJs.[5]   In <u>Beck v. Department of Justice</u>, for example, the Circuit upheld

the redaction of the names of individual Drug Enforcement Agency agents from the agents'

disciplinary records produced in response to a FOIA request.  997 F.2d 1489, 1493 (D.C. Cir.

1993).  <u>Beck</u> instructs that "[a] government employee has at least some privacy interest in his own

employment records, an interest that extends to 'not having it known whether those records contain

or do not contain' information on wrongdoing, *whether that information is favorable or not*."  <u>Id.</u> at

1494 (quoting <u>Dunkelberger v. Dep't of Justice</u>, 906 F.2d 779, 782 (D.C. Cir. 1990)) (emphasis

added).  The D.C. Circuit acknowledged the public interest in the disclosure of records related to an

agency's procedures or overall performance, but "[found] no public interest to be balanced against

the two agents' obvious interest in the continued confidentiality of their personnel records."  <u>Id.</u> at

1492.  The Supreme Court has also held that agencies may properly redact personnel information

from disciplinary files requested under FOIA.  In <u>Department of Air Force v. Rose</u>, the Court

concluded that the content of Air Force disciplinary-hearing summaries "obviously contained

information that would explain how the disciplinary procedures actually functioned and therefore

were an appropriate subject of a FOIA request" but "the files should be redacted by deleting

information that would identify the particular cadets to whom the summaries related."  <u>Reporters</u>

<u>Comm.</u>, 489 U.S. at 773–74 (citing <u>Dep't of Air Force v. Rose</u>, 425 U.S. 352, (1976)).  The Court

noted that FOIA clearly protects "the kind of confidential personal data usually included in a

personnel file" but does not insulate "nonconfidential matter . . . from disclosure merely because it

---

[5]   AILA argues that, even if the Court determines that IJs' names were appropriately redacted, the
Court should order EOIR to provide records that reveal the IJs' gender pronouns and court
locations.  Pl.'s Mot. Summ. J. at 27–28.  The Court will treat all of this information as personal
identifying information, as releasing the gender pronouns and court locations "would allow the
public to connect a specific IJ to a specific complaint" due to the number of immigration courts
throughout the country and their gender composition, making the withholding of the IJs' names
futile.  Defs.' Mot. Summ. J. at 20.

was stored by an agency in its 'personnel' files." Rose, 425 U.S. at 372.  This is precisely the

balance that EOIR has struck here: producing the nonconfidential portions of the complaint records

but redacting the confidential personal data contained within them.

    AILA makes several arguments in response.  First, it contends that IJs have minimal or

nonexistent privacy interests in the withheld information because circuit court opinions criticizing

IJs and subsequent news coverage have already identified them by name.  See, e.g., Islam v.

Gonzales, 469 F.3d 53, 56–57 (2d Cir. 2006) (noting that the case marked "the seventh time that

[the court] ha[d] criticized" a particular IJ's conduct during hearings); Adam Liptak, *Courts*

*Criticize Judges' Handling of Asylum Cases*, N.Y. Times, Dec. 26, 2005,

http://www.nytimes.com/2005/12/26/national/26immigration.html?pagewanted=all &_r=0

(summarizing criticisms of several individual IJs contained in opinions by courts of appeals).  Yet,

as in Kimberlin v. Department of Justice—where an Assistant U.S. Attorney confirmed to the press

both that he was the subject of an investigation and had received some degree of punishment—

"disclosure of additional details could reasonably be expected to constitute an unwarranted invasion

of [the government official's] personal privacy."  139 F.3d 944, 948–49 (D.C. Cir. 1998).[6]

Moreover, the circuit court opinions and associated news reports involve just a small sample of IJs

and complaints against them.  The public availability of a smattering of complaints and the names

of the limited number of individual IJs associated with them does not eliminate the privacy interests

of all of the remaining IJs.  Their privacy interests may be even more substantial in light of the fact

that the records already produced to AILA include both substantiated and unsubstantiated

---

[6]  While Kimberlin involved Exemption 7(C)'s "*could reasonably be expected to* constitute an unwarranted invasion of personal privacy" standard as opposed to Exemption 6's "*would* constitute a clearly unwarranted invasion of personal privacy" standard, 5 U.S.C. § 552(b)(6) & (7)(C) (emphasis added), its reasoning is still persuasive in the Exemption 6 context.  See Judicial Watch, Inc. v. Dep't of Justice, 365 F.3d 1108, 1125 (D.C. Cir. 2004) (The D.C. Circuit "has deemed the privacy inquiry of Exemptions 6 and 7(c) to be essentially the same" even though Exemption 6 is broader) (citations omitted).

complaints, as well as "sensitive and potentially embarrassing information unrelated to the performance of their official duties." Defs.' Mot. Summ. J. at 22 n.17.

AILA also argues that IJs do not enjoy the privacy protections of other federal employees because of the "weighty, life-or-death decisions" entrusted to them. Pl.'s Mot. Summ. J. at 24. The D.C. Circuit has recognized that "the level of responsibility held by a federal employee, as well as the activity for which such an employee has been censured, are appropriate considerations for determining the extent of the public's interest in knowing the identity of that censured employee." Stern v. FBI, 737 F.2d 84, 92 (D.C. Cir. 1984). But IJs do not possess appreciably more responsibility than, say, Assistant U.S. Attorneys, as in Kimberlin, or Drug Enforcement Agency agents, as in Beck. The Court sees no good reason why the substantial privacy interests that IJs have in their personal information should be given any less weight than was given to the interests of the federal employees in those prior cases. The fact that IJs are unionized, non-supervisory career civil servants selected through competitive vacancy announcements, as opposed to political appointees or senior managers, further bolsters this conclusion.

In sum, while the Court recognizes that AILA has raised important public policy concerns regarding the operation of the nation's immigration courts, AILA can pursue these objectives through the records EOIR has already released. Further disclosure of the names, genders, and locations of the IJ mentioned in the complaints would encroach upon the IJs' privacy interests without appreciably illuminating the agency's performance of its duties. The Court cannot sacrifice the privacy interests of civil servant administrative judges, which FOIA guarantees, even in service to AILA's laudable public policy aims.

B.  Redactions as Non-Responsive

In addition to redacting portions of the released documents pursuant to Exemption 6, EOIR redacted portions of the complaint files as nonresponsive to AILA's FOIA request. AILA contends

that much of this material must be released because it falls squarely within the scope of its FOIA

request and EOIR has not claimed a FOIA exemption.  Pl.'s Mot. Summ. J. at 28–29.  EOIR

responds that it "withheld information as non-responsive in an individual complaint file" if "it

concerned other complaints against the immigration judge or other immigration judges" because it

released these other complaints separately.  Rodrigues Supp. Decl. ¶ 7.  It argues that "withholding

non-responsive information about other complaints made it easier to understand the subject

complaint file."  Id.  Information that "concerned other complaints against the immigration judge or

other immigration judges" plainly falls within the scope of AILA's request for "[a]ll complaints

filed against immigration judges" and "[a]ll records that reflect the resolution of complaints filed

against immigration judges."  Defs.' Mot. Summ. J. Ex. A.  As a result, the Court concludes that

this information is responsive to AILA's request and EOIR must release any material withheld from

the complaint records on that basis.

### C.  Proactive Release of Complaint Resolutions

Section 552(a)(2)(A) of FOIA requires federal agencies to "make available for public

inspection and copying" several categories of records, including "final opinions" or "orders, made

in the adjudication of cases."  5 U.S.C. § 552(a)(2)(A).  AILA contends that EOIR's complaint

resolutions meet this definition and therefore must be released.  EOIR responds that FOIA does not

require publication of the complaint resolutions because they merely deal with internal employee

disciplinary matters and are not adversarial adjudications with precedential effect or the force of

law.  The Court agrees with EOIR.

"The affirmative portion of [FOIA] . . . require[s] disclosure of [agency] documents which

have the force and effect of law."  NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 153 (1975)

(internal quotation marks and citations omitted).  It does not, however, reach records that "set[]

forth the conclusions of a voluntarily undertaken internal agency investigation" as opposed to "an

adversarial dispute with another party." Rockwell Int'l Corp. v. Dep't of Justice, 235 F.3d 598, 603

(D.C. Cir. 2001); accord Common Cause v. IRS, 646 F.2d 656, 659–60 (D.C. Cir.1981).  As EOIR

notes, it voluntarily implemented the IJ complaint procedure and its resolutions therefore "are not

the product of a statutorily mandated process."  Defs.' Mot. Summ. J. at 2.  They also do not

involve typical features of an adversarial proceeding like a "hearing, examination of witnesses or

taking of evidence."  Id. at 26.  Nor do they have "'the force and effect of law,'" Sears, 421 U.S. at

153, as individual resolutions apply only to disciplinary proceedings for the affected federal

employee.  While prior substantiated complaints against an IJ may lead to progressively harsher

discipline in response to subsequent complaints about him or her, they have no binding effect on the

public at large or even other EOIR officials.   For these reasons, the Court concludes that IJ

complaint resolutions do not constitute final opinions or orders under Section 552(a)(2)(A) and,

consequently, EOIR need not proactively disclose them.

## IV.    Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Defendants' Motion

for Summary Judgment and grant in part and deny in part Plaintiff's Cross-Motion for Summary

Judgment.  The Court will issue an order consistent with this opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date:    December 24, 2014