**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

)
AMERICAN IMMIGRATION                    )
LAWYERS ASSOCIATION,                    )
                                        )
              Plaintiff,                )
                                        )
       v.                               )       Civil Action No. 13-cv-00840
                                        )       Judge Christopher R. Cooper
EXECUTIVE OFFICE FOR                    )
IMMIGRATION REVIEW,                     )
U.S. DEPARTMENT OF JUSTICE,             )
*et al.*,                               )
                                        )
              Defendants.               )
_____)

**PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, plaintiff American Immigration Lawyers Association (AILA) hereby renews its motion for summary judgment in this case brought to remedy violations of the Freedom of Information Act (FOIA), 5 U.S.C. § 552, on the ground that there is no genuine issue of disputed material fact and plaintiff is entitled to judgment as a matter of law. Defendants have not demonstrated that information remaining at issue that has been redacted is exempt from disclosure under 5 U.S.C. § 552(b)(6). Accordingly, judgment should be entered for plaintiff.

In support of this motion, plaintiff submits the accompanying Memorandum in Support of Plaintiff's Renewed Motion for Summary Judgment; Plaintiff's Response to Defendants' Statement of Material Facts as to Which There Is No Genuine Issue; Plaintiff's Supplemental Statement of Material Facts as to Which There Is No Genuine Issue; the Fourth Declaration of Julie Murray and accompanying exhibits; and a proposed order. Plaintiff also incorporates by

reference the Statement of Material Facts, declarations, and exhibits that plaintiff submitted in support of its first motion for summary judgment. *See* Docs. 20, 20-1, 20-2, 20-3, 28-1.

Respectfully submitted,

/s/ Julie A. Murray
Julie A. Murray
D.C. Bar No. 1003807
Allison M. Zieve
D.C. Bar No. 424786
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
jmurray@citizen.org

Melissa Crow
D.C. Bar No. 453487
AMERICAN IMMIGRATION COUNCIL
1331 G Street NW
Washington, DC 20005
(202) 507-7523

Dated: June 1, 2017                              *Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| AMERICAN IMMIGRATION LAWYERS ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 13-cv-00840 |
| EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, U.S. DEPARTMENT OF JUSTICE, *et al.*, | ) ) ) ) ) | Judge Christopher R. Cooper |
| Defendants. | ) ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT AND
IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Melissa Crow
D.C. Bar No. 453487
AMERICAN IMMIGRATION COUNCIL
1331 G Street NW
Washington, DC 20005
(202) 507-7523

Julie A. Murray
D.C. Bar No. 1003807
Allison M. Zieve
D.C. Bar No. 424786
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
jmurray@citizen.org

*Counsel for Plaintiff*

June 1, 2017

## TABLE OF CONTENTS

Table of Authorities .................................................................................................... iii

Introduction and Summary of Argument ....................................................................1

Background ...................................................................................................................2

I.       The Role of Immigration Judges.........................................................................2

II.      Public Concern Regarding Immigration Judges' Conduct ..................................3

III.     EOIR's Complaint Process ..................................................................................7

IV.      AILA's FOIA Request and This Litigation .......................................................9

         A.       The Administrative and Initial District Court Proceedings .....................9

         B.       The D.C. Circuit's Opinion ...................................................................12

         C.       Developments on Remand .....................................................................14

Standard of Review.....................................................................................................17

Argument ....................................................................................................................17

I.       The Public Interest in Disclosure of the Withheld Information Is Strong and Goes
         Beyond the Interest Recognized by EOIR. .......................................................18

         A.       Disclosure will shed light on immigration judges' conduct and help hold
                  judges and EOIR accountable. ..............................................................19

         B.       Disclosure will encourage complaint reporting and more fully inform EOIR
                  and the public..........................................................................................20

         C.       Identifying immigration judges will facilitate effective evaluation of EOIR's
                  complaint process...................................................................................21

II.      EOIR Overstates the Broad Privacy Interests That It Asserts. .........................22

         A.       The declaration from Judge Slavin suffers from numerous evidentiary flaws. .....23

         B.       EOIR's concerns about harassment of immigration judges are overstated...........25

III.    EOIR's Individualized Justification for Withholding Immigration Judges' Identities Is Based on Additional Erroneous Assumptions and Unreliable Evidence.................................................................................................................27

IV.     The Public Interest in Disclosure of Judges' Names and Identifying Information Outweighs the Privacy Interests at Stake.........................................................................33

Conclusion ........................................................................................................................34

# TABLE OF AUTHORITIES

## CASES

*American Immigration Lawyers Ass'n v. EOIR,
    830 F.3d 667 (2016).................................................................................... passim

Abdulrahman v. Ashcroft,
    330 F.3d 587 (3d Cir. 2003)..............................................................................3

Abulashvili v. Attorney General,
    663 F.3d 197 (3d Cir. 2011)..........................................................................6, 30

*American Civil Liberties Union v. DOJ,
    655 F.3d 1 (D.C. Cir. 2011).............................................................................22

Baez v. DOJ,
    647 F.2d 1328 (D.C. Cir. 1980)........................................................................28

Bast v. DOJ,
    665 F.2d 1251 (D.C. Cir. 1981)........................................................................20

Buruca v. District of Columbia,
    902 F. Supp. 2d 75 (D.D.C. 2012).....................................................................23

Cham v. Attorney General,
    445 F.3d 683 (3d Cir. 2006)..............................................................................4

Chang v. Department of Navy,
    314 F. Supp. 2d 35 (D.D.C. 2004).....................................................................20

Cowdery, Ecker & Murphy, LLC v. U.S. Department of Interior,
    511 F. Supp. 2d 215 (D. Conn. 2007).................................................................20

Cruz Rendon v. Holder,
    603 F.3d 1104 (9th Cir. 2010) ...........................................................................6

Farah v. Esquire Magazine,
    736 F.3d 528 (D.C. Cir. 2013).........................................................................25

Floroiu v. Gonzales,
    481 F.3d 970 (7th Cir. 2007) .............................................................................7

*Authorities on which we chiefly rely are marked with asterisks.*

iii

*Goldberg v. Department of State,*
    818 F.2d 71 (D.C. Cir. 1987) ....................................................................................17

*Hudson v. Department of Army,*
    No. CIV.A. 86-1114, 1987 WL 46755 (D.D.C. Jan. 29, 1987) ........................................26

*Islam v. Gonzales,*
    469 F.3d 53 (2d Cir. 2006).........................................................................................7

*Judicial Watch, Inc. v. Food & Drug Administration,*
    407 F. Supp. 2d 70 (D.D.C. 2005) .................................................................................25

*Jurewicz v. USDA,*
    741 F.3d 1326 (D.C. Cir. 2014) .................................................................................17

*\*National Ass'n of Home Builders v. Norton,*
    309 F.3d 26 (D.C. Cir. 2002) ..............................................................................18, 25

*Prison Legal News v. Samuels,*
    787 F.3d 1142 (D.C. Cir. 2015) ..........................................................................19, 20

*Robinson v. Duncan,*
    775 F. Supp. 2d 143 (D.D.C. 2011) ............................................................................23

*Singh v. Holder,*
    720 F.3d 635 (7th Cir. 2013) ......................................................................................7

*Smolniakova v. Gonzales,*
    422 F.3d 1037 (9th Cir. 2005) ...............................................................................6, 30

*Stern v. FBI,*
    737 F.2d 84 (D.C. Cir. 1984) ....................................................................................20

*Voinche v. FBI,*
    412 F. Supp. 2d 60 (D.D.C. 2006) ..............................................................................26

*\*Washington Post Co. v. HHS,*
    690 F.2d 252 (D.C. Cir. 1982) ..................................................................................26

*Yung Ying Shi v. Holder,*
    337 F. App'x 666 (9th Cir. 2009) .................................................................................6

*Matter of Y-S-L-C-,*
    26 I. & N. Dec. 688 (BIA 2015) ...................................................................................4

## FEDERAL STATUTES, REGULATIONS, AND RULES

5 C.F.R. § 2635.101 ............................................................................................3

8 C.F.R. § 1003.1(d)(3) .......................................................................................3

8 C.F.R. § 1003.2(a) ..........................................................................................30

8 C.F.R. § 1003.39 ..............................................................................................3

5 U.S.C. § 552(a)(2) ..........................................................................................10

5 U.S.C. § 552(b)(6) .......................................................................................1, 17

8 U.S.C. § 1101(a)(47)(b) ...................................................................................3

8 U.S.C. § 1101(b)(4) ..........................................................................................2

8 U.S.C. § 1252(b)(4) ..........................................................................................3

Fed. R. Civ. P. 56 ..........................................................................................17, 23

Fed. R. Evid. 602 ..............................................................................................24

Fed. R. Evid. 702 ..............................................................................................24

Fed. R. Evid. 901(a) ..........................................................................................24

Fed. R. Evid. 1002 ............................................................................................24

## MISCELLANEOUS

American Bar Ass'n, Reforming the Immigration System 2-23, 2-24 (2010),
    http://goo.gl/eGHp9a ..........................................................................................8

Ann M. Simmons, *Some Immigrants Meet Harsh Face of Justice: Complaints of
    Insensitive—Even Abusive—Conduct by Some U.S. Immigration Judges Have
    Prompted a Broad Federal Review*, L.A. Times (Feb. 12, 2006),
    http://goo.gl/6gCGoZ ..........................................................................................5

Elise Foley, *Here's Why Atlanta Is One of the Worst Places to Be an Undocumented
    Immigrant*, HuffPost (May 25, 2016), http://www.huffingtonpost.com/entry/
    deportation-raids-immigration-courts_us_574378d9e4b0613b512b0f37 .........................4

v

Executive Office for Immigration Review, Complaint Statistics for Oct 1, 2013, to Sep 30, 2014, https://www.justice.gov/sites/default/files/pages/attachments/2015/05/13/ocij-complaint-stats-oct-1-2013-to-sep-30-2014.pdf......................................................21

Executive Office for Immigration Review, Immigration Court Listing, http://www.justice.gov/eoir/eoir-immigration-court-listing (updated May 2017)...............6

Executive Office for Immigration Review, Immigration Court Practice Manual (2008), Ch. 4, http://www.justice.gov/eoir/office-chief-immigration-judge-0 ...............................3

Executive Office for Immigration Review 2016 Statistical Year Book (2017), goo.gl/5teJ9a ...............................................................................................................3

Gaiutra Bahadur, *'Bullying' Immigration Judge Absent, Replaced*, Phila. Inquire (June 2, 2006) .........................................................................................................................5

Interview Transcript with Jacqueline Stevens and Emily Guzman, *"Lawless Courts": Lack of Accountability Allows Immigration Judges to Violate Laws, Deport US Citizens* (Oct. 22, 2010), http://goo.gl/OBC7 .......................................................4

Jacqueline Stevens, *U.S. Government Unlawfully Detaining and Deporting U.S. Citizens as Aliens*, 18 Va. J. Soc. Pol'y & L. 606 (2011)....................................................8

Lindsey R. Vaala, Note, *Bias on the Bench: Raising the Bar for U.S. Immigration Judges to Ensure Equality for Asylum Seekers,* 49 Wm. & Mary L. Rev. 1011 (2007).................5

Marcia Coyle, *Bad Behavior by Judge Reverses Asylum Ruling*, Nat'l Law J. (Jan. 25, 2010) .........................................................................................................................8

Michele Benedetto, *Crisis on the Immigration Bench*, 73 Brook. L. Rev. 467 (2008) ...............5, 8

Nina Bernstein, *Judge Who Chastised Weeping Asylum Seeker Is Taken Off Case*, N.Y. Times (Sept. 20, 2007), http://goo.gl/iEh7WC ..................................................5

Press Release, Southern Poverty Law Center: Atlanta Immigration Court Judges Fail to Uphold Ethical Standards, Mar. 2, 2017, *available at* https://www.splcenter.org/news/2017/03/02/splc-atlanta-immigration-court-judges-fail-uphold-ethical-standards ...................................................................................................................5

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff American Immigration Lawyers Association (AILA) filed a Freedom of Information Act (FOIA) request for complaints against federal immigration judges and related records with the Executive Office for Immigration Review (EOIR), a component of the Department of Justice (DOJ) responsible for overseeing the immigration courts. After AILA filed suit to compel the documents' disclosure, defendants (collectively, EOIR) produced the complaint files. However, EOIR redacted immigration judges' names and all information that it believes would identify those judges. To justify the redactions, EOIR invoked FOIA Exemption 6, which permits withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

As relevant here, this Court granted summary judgment to the government with respect to the Exemption 6 redactions, but the D.C. Circuit reversed on that ground and remanded, concluding that the government could not "justify its withholding of immigration judges' names in purely categorical, across-the-board terms." *AILA v. EOIR*, 830 F.3d 667, 676 (2016). In an attempt to expedite the litigation, AILA has now agreed to forgo seeking the names and identifying information of all but 34 of 201 immigration judges whose information had been at issue in the litigation.

The sole question before this Court on remand is whether the remaining judges' names and identifying information must be released. The answer is "yes." As documented in this memorandum and an accompanying declaration and exhibit addressing each of the judges who remain at issue, Exemption 6 does not apply because, with respect to each judge, the public interest in disclosure of the withheld information outweighs the judge's privacy interest. The

government's justification to the contrary suffers from numerous shortcomings, including erroneous factual assumptions about the public and private interests related to disclosure. Moreover, the government's declaration from Denise Slavin, an immigration judge and the Executive Vice President of the National Association of Immigration Judges, deserves no weight. Immigration Judge Slavin's key attestations are speculative, lack foundation, and are not made with reference to the declarant's personal knowledge.

## BACKGROUND[1]

### I.    The Role of Immigration Judges

EOIR, an office within defendant-appellee DOJ, oversees immigration courts and immigration judges. Immigration judges conduct formal court proceedings to determine whether noncitizens are subject to removal from the United States. The judges also determine whether removable individuals are entitled to relief from removal, such as asylum.

Immigration judges routinely make decisions that deeply affect the lives of litigants. They may order asylum seekers to return to countries in which they fear persecution, including death. They may order the deportation of immigrant parents who will leave behind U.S.-born children. They may decide the fates of unaccompanied teenagers who are detained in shelters or institutions for extended periods. And they may adjudicate the rights of individuals who claim U.S. citizenship and are thus not subject to deportation.

In rendering these critical decisions, immigration judges, who are appointed by the Attorney General and are DOJ employees, *see* 8 U.S.C. § 1101(b)(4), are required to "exercise independent judgment," Doc. 20-1, 1st Murray Decl., Attach. G at 70. They must do so with a

---

[1] Although this Court's earlier summary judgment opinion and the D.C. Circuit's decision discuss the factual background, AILA includes an updated description here for the Court's ease of reference.

markedly vulnerable population: Thirty-nine percent of noncitizens appearing in immigration court are pro se, and many are unable to afford an attorney. EOIR, 2016 Statistical Year Book (2017), Tab F1, goo.gl/5teJ9a. Immigration judges must ensure that pro se individuals understand their rights and obligations, and the judges "generally participate[] in questioning" pro se litigants and their witnesses. EOIR, Immigration Court Practice Manual (2008), Ch. 4, at 73, 86, http://www.justice.gov/eoir/office-chief-immigration-judge-0.

Despite the significant consequences of errors, immigration judges usually provide the last word on the fate of individuals seeking to remain in the United States. Decisions ordering a person removed are final unless appealed or certified to the Board of Immigration Appeals (BIA), which is also a part of EOIR. *See* 8 U.S.C. § 1101(a)(47)(B); 8 C.F.R. § 1003.39. Only 9 percent of the more than 138,000 decisions by immigration judges in Fiscal Year 2016 were appealed at the administrative level, *see* EOIR, 2016 Statistical Year Book, Tab V1, goo.gl/5teJ9a, and the Board limits its review of factual findings to clear error, 8 C.F.R. § 1003.1(d)(3). Immigration judges' determinations are also "subjected to particularly narrow appellate scrutiny" in the federal courts of appeals on petitions for review. *Abdulrahman v. Ashcroft*, 330 F.3d 587, 599 (3d Cir. 2003); *see also* 8 U.S.C. § 1252(b)(4).

## II.   Public Concern Regarding Immigration Judges' Conduct

Immigration judges, like other federal employees, are subject to numerous ethics and other legal restrictions on their conduct. For instance, federal ethics regulations require government employees to avoid the appearance of impropriety and to act impartially. *See* 5 C.F.R. § 2635.101(b)(8), (b)(14). EOIR also maintains a "binding" Ethics and Professionalism Guide for Immigration Judges, which provides that EOIR may take "disciplinary or other employment action" for violations of the guide's standards. Ethics and Professionalism Guide for

Immigration Judges 1, 16 (2011), http://www.justice.gov/sites/default/files/eoir/legacy/2013/05/23/EthicsandProfessionalismGuideforIJs.pdf (attached as Exh. B to the Fourth Declaration of Julie Murray submitted with this motion). That guide makes clear that abusive statements to litigants and certain legal or procedural errors may constitute misconduct. *See id.* at 3 (providing that an immigration judge "should not, in the performance of official duties, by words or conduct, manifest improper bias or prejudice"); *id.* at 2 (requiring that immigration judges maintain professional competence, act impartially, and avoid the appearance that they are "violating the law or applicable ethical standards"). The guide identifies "negative stereotyping," "threatening, intimidating, or hostile acts," and "irrelevant reference to personal characteristics" as examples of judicial behavior that manifest improper bias or prejudice. *Id.* at 3.

The Board of Immigration Appeals, which is part of EOIR, has likewise recognized that an immigration judge's "bullying or hostile" conduct creates the appearance that the judge "has abandoned his or her role as a neutral fact-finder and raises a question whether the respondent was given a full and fair hearing of his claims." *Matter of Y-S-L-C-*, 26 I. & N. Dec. 688, 690-91 (BIA 2015) (internal quotation marks omitted); *see also*, *e.g.*, *Cham v. Att'y Gen.*, 445 F.3d 683, 691 (3d Cir. 2006).

Despite these restrictions on immigration judges' conduct, news reports recount worrisome incidents involving immigration judges' biased or abusive treatment of litigants and document weaknesses in the integrity of the immigration courts.[2] Scholars have discussed such problems as well.[3]

---

[2] *See*, *e.g.*, Elise Foley, *Here's Why Atlanta Is One of the Worst Places to Be an Undocumented Immigrant*, HuffPost (May 25, 2016), http://www.huffingtonpost.com/entry/deportation-raids-immigration-courts_us_574378d9e4b0613b512b0f37 (describing mistreatment of noncitizen respondents, including children and individuals who have suffered trauma, by immigration judges); Interview Transcript with Jacqueline Stevens and Emily Guzman,

Earlier this year, the Southern Poverty Law Center (SPLC) released grim findings from a series of court-monitoring efforts in the Atlanta Immigration Court, a court that has raised concerns among immigrant rights' advocates based on the harsh outcomes for many noncitizens in proceedings there. For example, the court denies asylum in 98 percent of all cases, compared to 57 percent nationally, and sets bonds 41 percent higher than the national average. *See* Press Release, SPLC: Atlanta Immigration Court Judges Fail to Uphold Ethical Standards, Mar. 2, 2017, https://www.splcenter.org/news/2017/03/02/splc-atlanta-immigration-court-judges-fail-uphold-ethical-standards. In a public letter filed with EOIR, SPLC and Emory Law identified findings indicating that some immigration judges in Atlanta "do not respect rule of law principles and maintain practices that undermine the fair administration of justice." *See* 4th Murray Decl., Exh. C, at 2, https://www.splcenter.org/sites/default/files/2017-atl_complaint_letter_final.pdf. The letter observed that judges "made prejudicial statements and expressed significant disinterest or even hostility towards respondents," "set bonds at a prohibitively high amount that indicate[d] a lack of consideration to required factors," and "prohibited observers" despite the presumptive openness of immigration proceedings. *Id.*

---

*"Lawless Courts": Lack of Accountability Allows Immigration Judges to Violate Laws, Deport US Citizens* (Oct. 22, 2010), http://goo.gl/OBC7; Nina Bernstein, *Judge Who Chastised Weeping Asylum Seeker Is Taken Off Case*, N.Y. Times (Sept. 20, 2007), http://goo.gl/iEh7WC; Gaiutra Bahadur, *'Bullying' Immigration Judge Absent, Replaced*, Phila. Inquirer (June 2, 2006); Ann M. Simmons, *Some Immigrants Meet Harsh Face of Justice: Complaints of Insensitive—Even Abusive—Conduct by Some U.S. Immigration Judges Have Prompted a Broad Federal Review*, L.A. Times (Feb. 12, 2006), http://goo.gl/6gCGoZ.

[3] *See, e.g.*, Michele Benedetto, *Crisis on the Immigration Bench*, 73 Brook. L. Rev. 467, 469-70 (2008) (stating that "[m]any immigration judges appear to be determining cases in a haphazard manner, with decisions influenced more by personal preferences than by careful consideration of facts and law" and that, "[a]s a result, litigants in immigration court can no longer be assured of ethical and accurate decision-making when they present their case to an immigration judge"); Lindsey R. Vaala, Note, *Bias on the Bench: Raising the Bar for U.S. Immigration Judges to Ensure Equality for Asylum Seekers*, 49 Wm. & Mary L. Rev. 1011, 1040 (2007) (noting that "misconduct by [immigration judges], even one-time offenders, can be shockingly egregious").

Moreover, federal courts of appeals routinely complain that some immigration judges are intemperate, treat litigants unfairly, and are incompetent. They have taken to criticizing immigration judges by name in published opinions. For example, the Ninth Circuit identified Immigration Judge Anna Ho in an opinion noting that she had "exhibit[ed] a fundamental disregard for the rights of individuals who look to her for fairness." *Cruz Rendon v. Holder*, 603 F.3d 1104, 1111 n.3 (9th Cir. 2010); *see also*, *e.g.*, *Yung Ying Shi v. Holder*, 337 F. App'x 666, 668 (9th Cir. 2009) (concluding that Judge Ho "badgered [the petitioner] with loaded, pejorative questions and effectively abandoned her role as a neutral fact finder"). In a different opinion, that court surveyed cases in which it had reversed Judge Ho's credibility findings and stated that it could not "help but question whether this [immigration judge] has, at least in some instances, improper hostility towards asylum applicants who appear before her." *Smolniakova v. Gonzales*, 422 F.3d 1037, 1047 & n.2 (9th Cir. 2005).

Similarly, the Third Circuit has criticized Immigration Judge Annie Garcy for becoming "the functional equivalent of counsel for one of the parties" during a hearing. *Abulashvili v. Attorney Gen.*, 663 F.3d 197, 207-08 (3d Cir. 2011). It remarked that the case was "not the first time that Judge Garcy's conduct in a hearing ha[d] come to [the Court's] attention," and it described two previous cases, including one in which the "tone, the tenor, the disparagement, and the sarcasm of the [immigration judge] seem[ed] more appropriate to a court television show than a federal court proceeding." *Id.* at 208 n.11 (internal quotation marks omitted).

Unfortunately, the steady stream of public exposés and judicial criticism has been insufficient to address concerns. Judges Ho and Garcy, for example, remain on the bench. *See* EOIR, Immigration Court Listing, http://www.justice.gov/eoir/eoir-immigration-court-listing (updated May 2017). Likewise, Judge Craig Zerbe remained a sitting immigration judge years

after the Seventh Circuit directed a court clerk to send the appellate court's opinion to the Attorney General to determine whether disciplinary action against the judge was warranted. *Floroiu v. Gonzales*, 481 F.3d 970, 976 (7th Cir. 2007). In 2013, that court again felt "compelled to note" in a published opinion that Judge Zerbe's conduct during a hearing was "inappropriate," and that the judge "seemed only interested in answers that parroted back the exact language of [a] Wikipedia entry" on which he relied to gather information about the petitioner's religion. *Singh v. Holder*, 720 F.3d 635, 643-44 (7th Cir. 2013); *see also*, *e.g.*, *Islam v. Gonzales*, 469 F.3d 53, 56-57 (2d Cir. 2006) (noting that the case marked "the seventh time that [the court] ha[d] criticized" Immigration Judge Chase's on-the-bench conduct and remanding for further proceedings before a different immigration judge).

## III.   EOIR's Complaint Process

In 2006, the Attorney General directed EOIR to take steps to improve the immigration courts. In response, EOIR adopted what it described to Congress as "new, rigorous procedures for reporting and investigating allegations of judicial misconduct." 1st Murray Decl., Attach. L. In addition, EOIR created the position of Assistant Chief Immigration Judge (ACIJ) for Conduct and Professionalism to be "responsible for reviewing and monitoring all complaints against immigration judges." 1st Murray Decl., Attach. L. Over the next several years, EOIR created an electronic database to track complaints, and it released some additional information about the complaint process. 1st Keller Decl. ¶¶ 17, 19 & Exh. A, B.

Under the current process, EOIR receives complaints from various sources, including noncitizens appearing in immigration court, their attorneys, the BIA, federal courts of appeals, the media, and government employees. *Id.* ¶ 25. EOIR can resolve complaints by imposing discipline (termination, suspension, or reprimand); taking corrective action, such as training or

oral counseling; dismissing the complaint, for example, where a complainant fails to state a claim; or concluding a complaint where an intervening development—such as a judge's retirement—renders the complaint moot. *Id.*, Exh. A, at 2-3, & B.

EOIR's complaint process has been the subject of significant criticism. Some observers are concerned about EOIR's willingness to discipline judges and its ability to be a neutral arbiter. For example, the American Bar Association received comments that the "discipline of immigration judges is almost wholly contained within EOIR and DOJ, without external review in most instances." American Bar Ass'n, Reforming the Immigration System 2-23, 2-24 (2010), http://goo.gl/eGHp9a. The organization concluded that this fact, "[w]hen coupled with a lack of transparency," contributed to the risk of "misuse and abuse of disciplinary procedures." *Id.* at 2-24. Based on the perception that EOIR has failed to act, others have questioned whether the complaint process should be removed from current decisionmakers or whether EOIR staff should themselves be investigated for their alleged mishandling of misconduct allegations. *See* Jacqueline Stevens, *U.S. Government Unlawfully Detaining and Deporting U.S. Citizens as Aliens*, 18 Va. J. Soc. Pol'y & L. 606, 715 (2011); Benedetto, *Crisis on the Immigration Bench*, 73 Brook. L. Rev. at 520.

Others have documented the lack of transparency in EOIR's complaint process. The American Bar Association concluded in 2010 that aside from some basic statistics from 2006, "information about the complaint process and resulting disciplinary actions [was] generally not available." Reforming the Immigration System 2-23. A news report that same year cited immigration lawyers who believed that "complaints against immigration judges to [EOIR] seem[ed] to go into a 'black hole.'" Marcia Coyle, *Bad Behavior by Judge Reverses Asylum Ruling*, Nat'l Law J., Jan. 25, 2010. Two years later, a report indicated that despite improvement,

EOIR still did not provide specific information on the disciplinary actions taken against immigration judges. *See* Doc. 20-1, Attach. O, at 36. That report also revealed that EOIR urged some immigration judges "to retire or resign without any formal disciplinary proceeding." *Id.* at 35. Although EOIR released annual aggregate data describing the complaints it received and its resolutions of those complaints from 2010 to 2014, EOIR has not provided this information online for any year since that time. 4th Murray Decl. ¶ 77 & Exh. D.

## IV.   AILA's FOIA Request and This Litigation

### A.   The administrative and initial district court proceedings

Plaintiff AILA is a national association of more than 13,000 attorneys and law professors who practice and teach immigration law. Doc. 20-2, Deasy Decl. ¶ 3. Disturbed by the scarcity of publicly available information about how EOIR investigates and resolves complaints against immigration judges, AILA submitted a FOIA request to EOIR in November 2012 seeking:

> (1)    All complaints filed against immigration judges;
>
> (2)    All records that reflect the resolution of complaints filed against immigration judges, including the type of informal action taken, if any, or formal discipline imposed, if any;
>
> (3)    All records that reflect the reasons for resolving complaints against immigration judges and/or findings relied on to resolve complaints against immigration judges, including any reports or memoranda from [DOJ's OPR or the OIG];
>
> (4)    All records incorporated by reference in documents that reflect the resolution of complaints filed against immigration judges; and
>
> (5)    An index of the records described in paragraphs (2), (3), and (4) to the extent that those records constitute final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases, pursuant to 5 U.S.C. § 552(a)(2)(A).

Doc. 16-1, Rodrigues Decl., Ex. A (FOIA Request), at 1. The request initially covered complaints resolved on or after January 1, 2007, *id.* at 2, but AILA subsequently narrowed the

covered time period to complaints resolved after September 30, 2009, 1st Murray Decl. ¶¶ 3-4. Pursuant to 5 U.S.C. § 552(a)(2), which provides that an agency must disclose certain information even absent a FOIA request, AILA also requested that EOIR "post on its website all final opinions . . . and orders made in the adjudication of complaints against immigration judges." Rodrigues Decl., Ex. A (FOIA Request), at 2. AILA sought a public interest fee waiver. *Id.* In December 2012, EOIR denied AILA's public interest fee waiver, and AILA filed an administrative appeal. *Id.* ¶¶ 8-9.

AILA filed this lawsuit after receiving no substantive response from EOIR more than five months after filing its FOIA request. *See id.* ¶ 10. Its complaint sought disclosure of the withheld records and a waiver or reduction in processing fees. *See* Doc. 1, Compl. ¶¶ 31-40. AILA also asserted that defendants violated FOIA's affirmative disclosure provision, 5 U.S.C. § 552(a)(2), by failing to make electronically available final opinions and orders resolving complaints. *Id.* ¶¶ 41-45.

EOIR began producing complaint files to AILA without charge. Those files "contained information about the date, nature, and resolution of each complaint, copies of relevant documents (e.g., the immigration judge's written decisions and hearing transcripts), emails, and documentation of the disposition and any other action taken in response to the complaint." *AILA*, 830 F.3d at 672. AILA posted the releases on its public website. *See* 4th Murray Decl. ¶ 10. The documents sparked significant public interest: By August 2014, AILA's web page where the documents had been posted had been viewed more than 4,800 times. Deasy Decl. ¶ 5.

The records disclosed to AILA contained many redactions. EOIR relied on FOIA Exemption 6, which protects from disclosure certain personal, private information, to redact information that it determined would identify immigration judges, including the judges' names

and pronouns, the cities where judges are based, and media articles and cases identifying judges.[4] EOIR provided AILA with a key that assigned a unique identifier to each judge about whom at least one complaint was filed; that key matched the identifier with all corresponding complaints. 1st Murray Decl. ¶ 7. EOIR also redacted information by relying on Exemption 5, which protects certain deliberative process materials, and by contending that certain information within responsive records was "non-responsive" to AILA's request and thus not subject to disclosure.

The parties filed cross-motions for summary judgment. AILA sought the names and identifying information of immigration judges, with certain enumerated exceptions, such as judges' medical or financial information, personal telephone numbers, home addresses, personal e-mail addresses, and dates of birth.[5] It also challenged EOIR's withholding of information in responsive records as "non-responsive" and EOIR's failure to proactively publish online its final decisions to resolve immigration judge complaints. AILA did not challenge the Exemption 5 redactions or certain other types of Exemption 6 redactions, such as complainant names and the names of Department of Homeland Security employees mentioned in the complaint files.

This Court granted summary judgment to EOIR with respect to the Exemption 6 redactions and proactive disclosure claim. It granted summary judgment to AILA with respect to the redaction of purportedly "non-responsive" information where EOIR had justified such redactions "on the basis that withholding non-responsive information about other complaints made it easier to understand the subject complaint file." Doc. 31, December 24, 2014, Order.

---

[4] The government initially relied on Exemption 7(C) as an additional basis for withholding information purportedly subject to Exemption 6, but it abandoned any reliance on Exemption 7(C) by failing to justify it in any filings with this Court or the court of appeals.

[5] *See* Pl.'s 1st Mot. for Summ. J. Memo. 14-15; *see also* Docs. 16-3, 16-4 (*Vaughn* indices identifying these categories of information among those withheld).

This Court later held that EOIR had, however, permissibly redacted other information it deemed "non-responsive." Doc. 40, June 23, 2015, Opinion and Order 2.

B.      The D.C. Circuit's opinion

The D.C. Circuit reversed in part and remanded. With respect to the Exemption 6 redactions, the court of appeals noted that there was no dispute that the requested records were among the "personnel, medical, or similar files" to which Exemption 6 might apply, *AILA*, 830 F.3d at 673 (internal quotation marks omitted), or that more than a de minimis privacy interest was at stake, *id.* at 674. However, the court determined that EOIR had failed to show that a judge's personal privacy interest outweighed "the incremental value served by disclosing an immigration judge's name," *id.* (internal quotation marks omitted), as required for Exemption 6 to apply. The D.C. Circuit emphasized the variation of circumstances among immigration judges:

> The records at issue encompass all complaints [the Office of the Chief Immigration Judge] received during the relevant time period: whether substantiated or unsubstantiated, whether related to serious issues or comparatively trivial ones, and whether about immigration judges' conduct on the bench or their conduct outside the workplace. Moreover, the privacy interests at stake encompass those of each immigration judge subjected to any of the wide variety of types of complaints: whether a sitting immigration judge or someone no longer on the bench, whether a judge who has faced only one complaint or a judge who has repeatedly been the target of complaints, and whether the judge has been subjected to some type of discipline or has avoided disciplinary action (and the reasons why). Given the variety in types of complaints and circumstances of individual immigration judges, not every judge has the same privacy interests at stake and not every complaint would equally enlighten the public about "what their government is up to."

*Id.* at 675. The court of appeals faulted EOIR for relying on a categorical justification for withholding instead of "address[ing] the privacy interests of individual immigration judges, or any potential public interest in learning individual immigration judges' names in particular circumstances." *Id.* at 674.

Although the D.C. Circuit did not determine which constellation of circumstances would support disclosure with respect to a particular judge's identity, it provided significant guidance in this regard:

> A retired immigration judge—who, after all, is a private citizen—presumably would have a greater privacy interest in avoiding disclosure of her name than would an immigration judge who sits on the bench today. Similarly, the public interest likely would be more pronounced in the case of a sitting immigration judge, who continues to make decisions as an employee of the Department of Justice, than in the case of a former judge. Additionally, disclosing the name of an immigration judge subject to numerous and/or serious substantiated complaints might shed considerable light on matters of public interest, whereas disclosing the name of an immigration judge subject to a single, unsubstantiated complaint might not. For instance, in the case of a sitting judge with a substantial number of serious and substantiated complaints, knowledge of her identity would enable the public to examine her official actions (including decisions), both past and future, and to assess any possible implications of those complaints for the conduct of her official responsibilities.

*Id.* at 676. The Court thus remanded for EOIR to "make a more particularized showing for defined subgroups of judges or for individual judges," and for this Court to balance "the competing interests at stake for each subgroup of immigration judges or for each judge." *Id.* (internal quotation marks omitted).

The court of appeals also reversed with respect to EOIR's withholding of any purportedly "non-responsive" information. It concluded that EOIR's practice of redacting "non-responsive" information from responsive records could not "be squared with" FOIA, which requires "disclosure of a responsive record, not disclosure of responsive information within a record." *Id.* at 677. The court of appeals remanded to this Court "for assessment of whether any of the information impermissibly redacted as non-responsive might be permissibly redacted as statutorily exempt." *Id.* at 679.

13

The court of appeals affirmed this Court's holding that EOIR had no obligation to affirmatively publish online final decisions resolving immigration judge complaints. *Id.* at 679-80.

### C.    Developments on remand

Since the D.C. Circuit's decision, AILA has undertaken significant efforts to narrow the scope of (and consequently expedite) the litigation. In contrast, EOIR has continued to adhere to its position that all immigration judges' names are exempt from disclosure.

Specifically, in December 2016, AILA informed EOIR that it no longer intended to pursue on remand the names and identifying information of 49 immigration judges that had been at issue in the case, whom it identified by using the three-letter codes assigned to the judges by EOIR. The immigration judges at issue were subject only to one or two complaints, all of which were dismissed by EOIR during the period covered by AILA's request. 4th Murray Decl. ¶ 4. In March 2017, after reviewing a draft *Vaughn* index prepared and shared by EOIR, AILA agreed to narrow further the scope of the litigation by foregoing an additional 28 judges' names and identifying information. *Id.* ¶ 5. It has since determined to exclude from the litigation an additional 89 judges' names and identifying information as well. *Id.* ¶ 7.[6] All told, AILA has eliminated from the litigation the names and identifying information of all but 34 judges of the 201 judges originally at issue in this case.

While these efforts were underway, EOIR reprocessed records to disclose to AILA information previously withheld as nonresponsive. 4th Murray Decl. ¶ 10. AILA is now satisfied with the substantive sufficiency of those productions, except to the extent EOIR has continued to

---

[6] In each instance, AILA does not concede that EOIR properly withheld the information. *See* Doc. 54-6, December Letter from AILA to EOIR 1; Doc. 54-7, March Letter from AILA to EOIR 1; 4th Murray Decl. ¶ 7.

withhold from newly released portions of documents immigration judges' names and identifying information under Exemption 6, in the same manner it has withheld such information in all other records.

Since the D.C. Circuit's decision, the parties have also dealt with a series of developments related to EOIR's application of electronic redactions vulnerable to removal in records released to AILA. In January 2017, a private attorney unrelated to this case viewed the released records on AILA's website and discovered that the government's redactions to some records were not secure, that is, the text under some of the black rectangles signifying redactions could be viewed by the public in certain circumstances. This third party informed both AILA and EOIR of his discovery and identified some specific releases in which he had uncovered the vulnerabilities. 4th Murray Dec. ¶ 12.

The third party also informed the parties that he had blogged about the vulnerable redactions on his firm's website. *Id.* That article indicated that the third party, by using the information underlying the vulnerable redactions, had identified 60 immigration judges subject to 474 complaints in the sample. *Id.*¶ 14. The third party included on his blog a link to a "modified key," similar to the one EOIR provided AILA in this litigation, that replaced the three-letter unique identifiers linking judges to each complaint with the judge's alleged name, where the third party believed the name discernible. *Id.* ¶ 15.

Until the third party's discovery, AILA was not aware that information underlying the black boxes EOIR used to make redactions was not, in fact, effectively redacted. *Id.* ¶ 13. Before receiving any request from the government, AILA began the process for removing the documents specifically identified as having ineffective redactions by the third party from AILA's website, where those documents had been posted for more than one year. *Id.* ¶ 16. Although

AILA has not been able to determine how many times these specific documents were viewed and/or downloaded, the web page where the documents had been posted had been viewed 7,518 times as of January 17, 2017, when AILA removed the documents. *Id.* ¶ 17. AILA subsequently agreed with EOIR that it would not repost the documents on its website until EOIR had reprocessed them. *Id.* ¶ 16.

The inadvertent disclosures attracted at least two media articles that directly linked to the third party's original blog post, and EOIR issued a press statement to address the disclosures. *See id.* ¶¶ 18-20. In subsequent blog posts, the third party provided further detail on how he had attempted to verify judges' names, and he posted screenshots of or links to pages of records released to AILA but with redactions to immigration judges' names removed. *Id.* ¶¶ 20-21. The third party's blog posts and related links remain available online today. *Id.* ¶¶ 15, 20-21.

In February 2017, counsel for AILA realized that some of the records identified by the third party with ineffective redactions had been submitted as exhibits to this Court and the D.C. Circuit. *Id.* ¶ 23. She also determined that some pages with ineffective redactions in one court filing had come from a complaint file that had not been identified by the third party as among the spring 2015 releases that were vulnerable. *Id.* AILA advised EOIR, and again, before waiting for a request from EOIR, it removed the newly discovered vulnerable complaint file from its website. *Id.* ¶ 24.[7] The same day, AILA's counsel initiated a joint motion to substitute all filings in this Court that included records with vulnerable redactions. *Id.* With EOIR's agreement, AILA also remedied the vulnerabilities in the appellate filings. *Id.*

---

[7] In light of AILA's notice to EOIR in this regard, and subsequent notice to EOIR of other faulty redactions in documents produced to AILA in the winter of 2017, *see* 4th Murray Decl. ¶¶ 26-27, EOIR's statement that it is unaware "of any faulty redactions in any of the other supplemental or initial releases" beyond the releases made to AILA in spring 2015, *see* Doc. 54-2, Defs.' Renewed Mot. for Summ. J. Memo. 6, is incorrect.

Even after the third party's disclosures, EOIR has continued to release documents to AILA with insecure redactions or (in some cases) information previously withheld under Exemption 6 without any redaction whatsoever. AILA notified counsel for EOIR of these problems. *Id.* ¶¶ 26-30.

## STANDARD OF REVIEW

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. EOIR "bears the burden to establish the applicability of a claimed exemption to any records or portions of records it seeks to withhold." *AILA*, 830 F.3d at 673. If the government cannot carry its burden, the records must be released. *Goldberg v. Dep't of State*, 818 F.2d 71, 76 (D.C. Cir. 1987).

## ARGUMENT

## THE REQUESTED RECORDS ARE NOT EXEMPT FROM DISCLOSURE UNDER EXEMPTION 6.

FOIA Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). AILA does not dispute that the requested records constitute "personnel and medical and similar files." Nor does it dispute that the judges' privacy interests in the withheld information are more than *de minimis*. Accordingly, the only question with respect to Exemption 6's application is whether the public interest in disclosure of the names and identifying information of judges who remain at issue in this litigation outweighs the privacy interest at stake. *See Jurewicz v. USDA*, 741 F.3d 1326, 1332 (D.C. Cir. 2014). In conducting the analysis, the Court must be mindful that "FOIA's strong presumption in favor of disclosure is at its zenith" under Exemption 6. *Id.* (internal quotation marks and citation omitted).

The D.C. Circuit, in its decision in this case, recognized that at least in some circumstances knowledge of an immigration judge's identity would shed light on what the government is up to by "enabl[ing] the public to examine her official actions (including decisions), both past and future, and to assess any possible implications of those complaints for the conduct of her official responsibilities." *AILA*, 830 F.3d at 675; *see also* Doc. 20, Pl.'s 1st Mot. for Summ. J. Memo. 19-22. In its renewed motion for summary judgment and *Vaughn* index, EOIR acknowledges this public interest in disclosure but ignores others asserted by AILA and not addressed by the D.C. Circuit. *See* Doc. 20, Pl.'s 1st Mot. for Summ. J. Memo. 22-24. Its justification for withholding under Exemption 6 thus understates the strength of the public interest in disclosure of immigration judges' identities. Moreover, even on its own terms, EOIR's justification for withholding rests on erroneous factual assumptions and a third-party declaration that deserves no weight.

As AILA demonstrates below, in paragraphs 36 to 74 of the accompanying Fourth Murray Declaration, and in the judge-by-judge chart attached as Exhibit A to that declaration, the remaining judges' names and identifying information should be released.

## I.   The Public Interest in Disclosure of the Withheld Information Is Strong and Goes Beyond the Interest Recognized by EOIR.

Under Exemption 6, the public interest measures "the extent to which disclosure would serve" FOIA's central purposes "by contributing significantly to public understanding of the operations or activities of the government." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002) (internal quotation marks and alteration omitted). Disclosure of immigration judges' names would (1) help hold individual judges and EOIR accountable for their conduct; (2) encourage additional reporting of complaints, which would in turn further

inform EOIR and the public about immigration judges' actions; and (3) help AILA and the public effectively evaluate EOIR's processing and resolution of complaints.

> ### A. Disclosure will shed light on immigration judges' conduct and help hold judges and EOIR accountable.

As the D.C. Circuit recognized, and as EOIR now concedes, disclosure of immigration judges' names will reveal important information necessary to hold individual judges and EOIR accountable. *AILA*, 830 F.3d at 675. Significant information in the record supports this view as well. As one declarant with expertise regarding the immigration courts and EOIR's complaint process stated, "[g]reater public scrutiny is likely to encourage greater voluntary compliance with ethics standards, standards of judicial conduct, and DOJ policies than the current system." Deasy Decl. ¶ 11; *see also* Realmuto Decl. ¶ 12 (similar observation from another declarant). As one declarant explained, there are efforts in at least four cities by immigration attorneys and other members of the public to monitor certain judges' dockets; these monitoring groups are based on a "shared view that [EOIR's] complaint process is completely ineffectual." Realmuto Decl. ¶ 9. Release of immigration judges' names in relation to complaints would allow these groups to direct their attention to courtrooms where complaints "suggest or confirm a pattern of misconduct or abusive behavior by particular judges." *Id.* ¶ 13; *see also* Fourth Murray Decl., Exh. C, Letter from SPLC and Emory Law to EOIR (providing another example of court monitoring efforts that have focused on an immigration court with perceived problems in the administration of justice).

Recognizing that the release of judges' identities will help hold these judges accountable is consistent with case law in this Circuit and around the country. For example, in *Prison Legal News v. Samuels*, 787 F.3d 1142 (D.C. Cir. 2015), the D.C. Circuit recognized a public interest

in identifying federal employees alleged to have engaged in wrongdoing for which the agency

paid money in connection with lawsuits or claims brought against it. The Court stated:

> Identifying employees who repeatedly engage in tortious or discriminatory conduct will shed light on an agency's performance of its statutory duties. This, in turn, will further the public interest in ensuring that disciplinary measures imposed are adequate, and that those who are accountable are dealt with in an appropriate manner.

*Id*. at 1151 (internal quotation marks, citations, and alteration omitted); *see also Stern v. FBI*, 737

F.2d 84, 92 (D.C. Cir. 1984) (ordering the government to release the identity of a high-level

official who engaged in a cover-up regarding illegal agency activity and recognizing a public

interest in "knowing *who* the public servants are that were involved in the governmental

wrongdoing, in order to hold the governors accountable to the governed"); *Bast v. DOJ*, 665 F.2d

1251, 1255 (D.C. Cir. 1981) (holding that Exemption 7(C) did not permit withholding of records

in which an investigating agent "attribute[d] to [a federal judge] remarks which could be

interpreted to indicate that the judge was biased in favor of the government"); *Cowdery, Ecker &

Murphy, LLC v. U.S. Dep't of Interior*, 511 F. Supp. 2d 215, 219 (D. Conn. 2007) (compelling

the release of a federal employee's performance reviews where the review served as "an internal

marker of his activity as a government official and a public discussion of the work he does and

has done in his official capacity for the Department"); *Chang v. Dep't of Navy*, 314 F. Supp. 2d

35, 44 (D.D.C. 2004) (holding that release of information about disciplinary action taken against

a commander of a ship after a publicized collision would be permissible under FOIA Exemption

6).

    **B.**    **Disclosure will encourage complaint reporting and more fully inform EOIR and the public.**

Although ignored by EOIR in its renewed motion for summary judgment, release of

immigration judges' identities will encourage further reporting, thus strengthening EOIR's

complaint process. As one declarant who works with immigration attorneys observed, "[w]ithout any knowledge of which immigration judges have been subject to complaints, private attorneys have legitimate concerns that filing a complaint might subject them or their clients to retaliation by certain immigration judges." Deasy Decl. ¶ 12; Realmuto Decl. ¶ 8 (another declarant describing an instance in which a private immigration attorney was subject to a retaliatory complaint for filing a motion to reopen removal proceedings in which he alleged immigration judge misconduct). The declarant indicated that private attorneys will feel more comfortable reporting a complaint if they know that the conduct about which they are filing a report has been experienced by others. Deasy Decl. ¶ 12; Realmuto Decl. ¶ 14 (another declarant noting that there would be "strength in numbers" if the public knew which judges had been subject to complaints). Because private attorneys composed roughly one-third of all complainants in the last aggregate data published by EOIR, an increase in their reporting is likely to generate more information helpful to EOIR and the public. *See* EOIR, Executive Office for Immigration Review, Complaint Statistics for Oct 1, 2013, to Sep 30, 2014, https://www.justice.gov/sites/ default/files/pages/attachments/2015/05/13/ocij-complaint-stats-oct-1-2013-to-sep-30-2014.pdf; *see also* Doc. 16-2, Rodrigues Decl., Exh. A (FOIA Request), Attach. B (providing data for an earlier year). This interest in encouraging complaints is not adequately served by EOIR's existing practice of permitting anonymous or group complaints. Anonymity may not be practicable in many cases, such as when few people are present at the time of misconduct.

**C.      Identifying immigration judges will facilitate effective evaluation of EOIR's complaint process.**

In addition to the interests in disclosure identified above, identifying immigration judges would ensure that the public can use records already released in conjunction with records related to future complaints, and thus assess how EOIR imposes progressive discipline going forward.

*See Am. Civil Liberties Union v. DOJ*, 655 F.3d 1, 15 (D.C. Cir. 2011) ("The fact that the public already has some information does not mean that more will not advance the public interest."). FOIA does not require the creation of records, and EOIR is not bound to use the unique identifier key that it developed for this litigation or to create similar keys for future releases in response to FOIA requests. Although EOIR has stated in briefing that it will provide such keys going forward, *see* Doc. 24, Defs.' Opp'n 8, it is not legally bound to do so. Accordingly, immigration judge names are necessary to ensure that the public can match existing information with information released in the future.

Moreover, the public could engage in a more effective analysis of EOIR's complaint resolution process if immigration judges' names were available. For example, in a different context, the Government Accountability Office has used immigration judges' names to find public biographical data helpful in assessing which individual characteristics predict a judge's willingness to grant asylum. *See* 1st Murray Decl., Attach. P 65-67. Using a similar approach, researchers could use the information sought here to assess whether the characteristics of judges—such as gender or experience—affect the likelihood of a complaint being filed against a judge or the agency's resolution of complaints. *See Am. Civil Liberties Union*, 655 F.3d at 15-16 (recognizing that Exemption 6's public interest includes derivative uses of information in requested records).

## II.    EOIR Overstates the Broad Privacy Interests That It Asserts.

As it did in its initial motion for summary judgment, EOIR continues to point to some asserted privacy interests that it believes apply generally to all immigration judges. It vastly overstates the extent of these interests, and in some instances, these interests are not cognizable under Exemption 6. Moreover, the only new evidence it submits is not deserving of any weight.

## A.     The declaration from Judge Slavin suffers from numerous evidentiary flaws.

In support of its renewed motion for summary judgment, EOIR submitted a declaration, Doc. 54-5, from Immigration Judge Denise Slavin, the Executive Vice President of the National Association for Immigration Judges (NAIJ), a union for immigration judges. Immigration Judge Slavin identifies numerous purported privacy interests that justify withholding immigration judges' identities. Although EOIR disclaimed in its *Vaughn* index any use of the Slavin declaration to conduct Exemption 6 balancing, EOIR's memorandum relies on the declaration and urges this Court to do so as well. This Court should decline the request for several reasons.

A declaration in support of a motion for summary judgment "must be made on personal knowledge" and "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4); *see also*, *e.g.*, *Buruca v. Dist. of Columbia*, 902 F. Supp. 2d 75, 82 (D.D.C. 2012) (holding that affidavit's description of video footage was inadmissible at summary judgment where the video footage was the best evidence of its content and had not been introduced); *Robinson v. Duncan*, 775 F. Supp. 2d 143, 154 (D.D.C. 2011) (granting summary judgment to defendant where plaintiff's evidence relied in part on statements for which she had no personal knowledge). Numerous statements in Immigration Judge Slavin's declaration do not meet this standard and must, therefore, be disregarded on this ground alone.

For example, Immigration Judge Slavin asserts that release of immigration judges' names would pose a "security threat," but the only two examples she gives that could even tangentially relate to the complaint system involve (1) an unidentified website that she claims targets immigration judges who have been subject to complaints, and (2) a letter that was purportedly received by another judge consisting of the cover page of the complaint in this case with a note that the judge "better hope the Feds win." Slavin Decl. ¶ 6. Immigration Judge Slavin fails to

offer the best evidence of the website's content, or even a web address that would enable AILA or the Court to view it. *See* Fed. R. Evid. 1002. She also fails to lay the foundation for the letter directed to another immigration judge or to offer facts demonstrating that she is competent to authenticate it. *See* Fed. R. Evid. 602, 901(a). More generally, it is unclear on what basis Immigration Judge Slavin even knows of any of the threats directed to other immigration judges. She states only that, in her capacity as an NAIJ official, she has been involved in disciplinary proceedings against immigration judges. Slavin Decl. ¶ 1.

In addition, Judge Slavin speculates that "complainants may be more hesitant to file complaints" if the names of immigration judges were released. *Id.* ¶ 5. She does not suggest, however, any personal knowledge, such as a history of working with attorneys who frequently file complaints or others likely to be complainants, to qualify her in offering this opinion about the potential reaction of complainants. *See* Fed. R. Evid. 602, 702. Moreover, Judge Slavin defends keeping judges' identities secret on the ground that the complaint system "gave confidentiality to . . . the Judges against whom complaints were filed to assure complete disclosure." Slavin Decl. ¶ 5. But she offers no basis for that purported assurance of confidentiality. *See* Fed. R. Evid. 602.

Other statements offered by Immigration Judge Slavin are contradicted by the very evidence on which she relies for them. She states, for example, that release of some immigration judges' names in this case would be defamatory. Slavin Decl. ¶ 4. However, she points to only one complaint (Complaint 397), which corresponds to a judge whose name AILA agreed to forgo last year. *See* Doc. 54-6, December 2016 Letter from AILA to EOIR 2 (excluding Judge KXI from the litigation). Even if that judge's name were still at issue, Immigration Judge Slavin does not identify anything in the complaint that makes or implies a false statement of fact, as

would be required for the document to be defamatory. *See Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013). Instead, she merely quibbles with EOIR's failure to include more supporting documentation for its determination that the allegation in the complaint was disproven. Slavin Decl. ¶ 4.

      **B.     EOIR's concerns about harassment of immigration judges are overstated.**

      In its initial motion for summary judgment, EOIR contended that disclosure of immigration judges' names would result in harassment or threats. As AILA demonstrated, Doc. 20, Pl.'s 1st Mot. for Summ. J. Memo. 17-18; Doc. 28, Pl.'s Reply 3-4, EOIR's evidence in support of that motion did not show this outcome to be likely. *See Nat'l Ass'n of Home Builders*, 309 F.3d at 35.

      The only additional evidence that EOIR submits in support of its renewed motion is Immigration Judge Slavin's declaration, which—as described above—should be given no weight in light of evidentiary deficiencies. But even if the declaration offered competent evidence, it would not demonstrate a likelihood that threats, harassment, or retaliatory acts will occur, as required to establish this privacy interest under Exemption 6. *See id.* (rejecting privacy interest based on possibility that landowners would be subject to unlawful trespass where the agency failed to demonstrate a "likelihood" of such activities). The fact that an anonymous member of the public told a judge that she should "hope the Feds win" in this litigation, for example, is a far cry from the types of harassment and serious threats of bodily harm found sufficient to justify withholding individuals' identities in other Exemption 6 litigation. *See, e.g., Judicial Watch, Inc. v. Food & Drug Admin.*, 407 F. Supp. 2d 70, 77 (D.D.C. 2005), *aff'd in part, remanded in part*, 449 F.3d 141 (D.C. Cir. 2006) (approving the withholding of names of FDA employees under Exemption 6 where those employees were involved in the agency's approval of mifepristone, an

abortion-inducing drug, and the FDA provided "evidence of abortion clinic bombings" and described "websites that encourage readers to look for mifepristone's manufacturing locations and then kill or kidnap employees once found"); *Hudson v. Dep't of Army*, No. CIV.A. 86-1114, 1987 WL 46755, at *2, *3 (D.D.C. Jan. 29, 1987), *aff'd,* 926 F.2d 1215 (D.C. Cir. 1991) (permitting the government to withhold under Exemption 6 the "name, rank, and unit of overseas military personnel" where the government documented "past as well as recent terrorist activity" targeting such personnel, "including increased intelligence gathering by terrorists of information similar to that requested here" and noting that the "information could be used by terrorists and their supporters in targeting servicemen and women, locating sensitive units, carbombing attacks, and general harassment of United States military personnel"). EOIR's reliance on *Voinche v. FBI*, 412 F. Supp. 2d 60 (D.D.C. 2006), is similarly unavailing. In that case, the pro se plaintiff had "not suggested" that disclosure of the withheld information "would shed any light on the FBI's performance of its statutory duties"; the court noted that "even a modest privacy interest outweighs nothing every time." *Id.* at 67 (internal quotation marks omitted).

Nor would Immigration Judge Slavin's declaration justify withholding judges' identities on the ground that "persons accused of wrongdoing and other potential witnesses may be loath to disclose information if they know it will be released," or because disclosure could threaten the "integrity of the system." Slavin Decl. ¶ 5. An immigration judge's or third party's willingness to cooperate with EOIR in investigations is irrelevant to assessing the judge's privacy interest for purposes of Exemption 6. *See Wash. Post Co. v. HHS*, 690 F.2d 252, 259 (D.C. Cir. 1982) (stating that whether "disclosure might impair the government's ability to acquire similar information in the future" is a "factor [that] carries no weight under Exemption 6").

**III.    EOIR's Individualized Justification for Withholding Immigration Judges' Identities Is Based on Additional Erroneous Assumptions and Unreliable Evidence.**

Even if EOIR had not ignored relevant public interests in disclosure of immigration judge names and overstated the general privacy interests at issue, this Court should reject the agency's Exemption 6 balancing conclusions. EOIR contends that it considered a series of factors in balancing the public and private interests of disclosing each judge's name. Doc. 54-3, 2d Curry Decl. ¶¶ 28-36. AILA agrees that some of those factors are relevant to the balancing process. However, EOIR's declaration demonstrates that its balancing analysis rested on numerous erroneous or illogical assumptions about those factors, and other factors that it considered are completely irrelevant.

**1.    *Number of complaints.*** The D.C. Circuit recognized that the number of complaints against an immigration judge bears on the public interest in disclosure of that judge's identity. *AILA*, 830 F.3d at 676. AILA thus agrees with EOIR that this factor should be considered under Exemption 6 balancing. However, AILA disagrees that the ratio of complaints to total number of hearings—a data point relied on by EOIR—has any special significance. As an initial matter, not all complaints are related to particular hearings. And even if they were, the public interest in knowing about a large number of complaints against a judge remains regardless whether the judge was subject to those complaints because she frequently engaged in conduct that provoked complaints *or* because she presided over an unusually large number of proceedings. Either way, the judge's conduct has a significant impact on the public. That EOIR's reliance on the complaint-to-hearing ratio is a red herring is underscored by the fact that EOIR provided this information only with respect to those judges subject to four or more complaints, *see* 2d Curry Decl. ¶ 30 n.10, even though judges with small numbers of complaints against them

may have had higher complaint-to-hearing ratios than those with larger number of complaints covered by the time period of AILA's request.

    **2.**    ***Substantiation of complaints.*** As the D.C. Circuit recognized, a complaint that has been substantiated is more likely than one that has not been substantiated to provide useful information to the public. *See AILA*, 830 F.3d at 676. However, in evaluating this factor, EOIR contends that if a complaint is not substantiated, there is *no* incremental public interest served by disclosing the judge's name; in its view, "the only public interest" in disclosure is "in learning how the agency investigated the complaint, which has already been fully disclosed in EOIR's production." 2d Curry Decl. ¶ 31. EOIR is incorrect.

    The public's interest in identifying immigration judges extends beyond complaints that have been substantiated. *See*, *e.g.*, *Baez v. DOJ*, 647 F.2d 1328, 1339 (D.C. Cir. 1980) (noting that "the public interest might be served by the release of the names of particular FBI agents" in instances "in which the performance of a particular agent . . . is called into question"). As discussed above (at pp. 7-9), the integrity of the complaint process itself is in doubt. *See*, *e.g.*, Realmuto Decl. ¶ 6 (declarant expressing concern that EOIR's process "is entirely an 'in-house' operation" and that National Immigration Project members perceive the process as "not effective at holding judges accountable"). Thus, although it is undoubtedly powerful to know when EOIR has found that a judge's conduct warrants formal discipline or corrective action, such as oral counseling or training, there is no sound reason to conclude that such findings are sufficient to identify the full universe of immigration judge misconduct.

    Drawing the line for a demonstrated public interest at substantiated complaints *resulting in formal discipline* is even less defensible. The records released to AILA demonstrate that EOIR rarely takes disciplinary action against judges, even those against whom many complaints have

been lodged and substantiated. For example, seven judges were the subject of 20 or more complaints resolved after late 2009, and were responsible for 186, or nearly a quarter, of all complaints in the release. 1st Murray Decl. ¶ 13. Of those seven judges, five were never subjected to disciplinary action. *Id.* For example, Judge OPU was the subject of 29 complaints in the sample, 24 of which were substantiated and resolved by "oral counseling" and another by "training." *Id.* ¶ 16. This judge was the subject of numerous complaints regarding his or her intemperate comments and demeanor at hearings, including one complaint related to the judge's "overwhelming hostility, sarcasm[, and] intimidation" in juvenile immigration proceedings. *Id.*

**3.    *In-court versus out-of-court conduct.*** EOIR contends that "[c]onduct that occurred in court during the course of the judge's performance of his duties as it relates to case adjudications would be more relevant to and impact the public interest," while "conduct that occurred out of court, for example, among agency personnel, would be of less public interest." 2d Curry Decl. ¶ 33. EOIR's portrayal of this factor, as explained in Ms. Curry's declaration, should be rejected.

In reality, a judge may engage in conduct outside the courtroom that nevertheless pertains to the performance of his duties or that impacts his adjudication of cases. EOIR's own complaint database recognizes as much. In classifying the bases for complaints, EOIR created separate categories for complaints involving "in-court conduct" and, for example, complaints alleging "bias," "due process" violations," or other "legal" violations committed by judges. *See* 4th Murray Decl., Exh. A (relying on EOIR's classification of complaint bases). All of these categories are separate from "out-of-court conduct" in EOIR's database, and complaints alleging such "out-of-court conduct" are exceedingly rare and may still relate to the judge's official duties. *See generally id.*

EOIR's consideration of "in-court" versus "out-of-court" conduct is flawed for the additional reason that EOIR appears to have its considered only on the public interest side of Exemption 6 balancing. To the extent that a judge engages in wrongdoing on the bench, in a written decision or in a public proceeding and with full knowledge that she is on the record, she has a significantly weakened interest in keeping that misconduct private under FOIA.

     **4.**     ***Judge's employment status.*** The D.C. Circuit observed that an immigration judge who has retired has a greater privacy interest in preventing disclosure of her identity than does a currently sitting immigration judge, and the corresponding public interest in disclosure may be reduced. *AILA*, 830 F.3d at 676. EOIR's consideration of this factor in its balancing test, however, suffers from a number of flaws. First, when an immigration judge resigns from federal service, the propriety of decisions reached by that judge may continue to be litigated for years to come. *See*, *e.g.*, 8 C.F.R. § 1003.2(a) (providing that the Board of Immigration Appeals may "at any time reopen or reconsider any case in which it has rendered a decision"). Information regarding a judge's pattern or practice of engaging in repeated instances of misconduct, including bias on the bench, could provide powerful supporting evidence for noncitizens challenging immigration judges' decisions based on the same type of allegations. *Cf. Smolniakova*, 422 F.3d at 1047 & n.2 (remarking on an immigration judge's pattern of hostility toward respondents); *Abulashvili*, 663 F.3d at 207-08 & n.11 (same). Moreover, because EOIR urges some judges to retire or resign to avoid formal disciplinary proceedings, it is *more* likely that judges subject to many previous complaints during the time period covered by AILA's request will be retired. *See* 1st Murray Decl., Attach. O, at 35; *see also* 1st Keller Decl. ¶ 29 (EOIR declarant stating that complaints may be concluded without action because of an intervening event, such as a judge's retirement or resignation). For example, 30 complaints were

filed against Judge HKX in the sample released to AILA, and the judge was, at most, subject to "oral counseling" as a result of those complaints. 1st Murray Decl. ¶ 14. EOIR resolved 24 of the complaints by concluding that no further action was needed when the judge retired. *Id.*

Moreover, EOIR is incorrect in contending that if an "individual is no longer employed as an immigration judge, the public interest in knowing the identity of the judge is lessened because the judge is no longer taking actions that affect the public interest." 2d Curry Decl. ¶ 34. Judge GOE, whose identity AILA continues to pursue, has left the bench but remains employed at DOJ. 4th Murray Decl. ¶¶ 44, 46 & Exh. A. In this instance, public knowledge of allegations of wrongdoing, including allegations of bias, would continue to inform the public about what the government is up to.[8]

     **5.**     ***Protection of other individuals' privacy interests.*** EOIR contends that because it released a key matching judges with particular complaints," revealing the judge's identifying information will reveal all the complaints against the judge and by reference the identities of the complainants or other persons involved in the incidents at issue." 2d Curry Decl. ¶ 35. It states that, therefore, in balancing interests under Exemption 6, this Court must consider the privacy interests of individuals other than the judges. However, other than the names of individuals involved in the resolution of complaints, EOIR redacted the names of third parties—such as complainants, DHS employees, individuals appearing before the immigration judges, and those individuals' attorneys—that appeared in the complaint files, and AILA has not challenged those redactions. Pl.'s 1st Mot. for Summ. J. Memo. 14-15.

---

[8] Despite a request from AILA for EOIR to do so, EOIR has refused to provide any information about this former judge's current position within DOJ, including whether the person continues to have a public-facing role. *See* Doc. 54-7, March Letter from AILA to EOIR.

6.     *Complaint referrals to other government agencies.* EOIR contends that, in instances where complaints were referred to DOJ's Office of Professional Responsibility or Office of Inspector General and referred back to EOIR, "the public interest is satisfied by the portions of the records that EOIR already disclosed, which articulate the nature of the complaint, identify the entities that were involved in receiving and investigating the complaint, and the disposition of the complaint." 2d Curry Decl. ¶ 36. EOIR thus appears to take the position that there is *no* public interest in disclosure of these names. But as discussed above (at pp. 28-29), there remains a significant interest in the names of judges subject to complaints, even where those complaints were not ultimately substantiated or were referred to other agency components before a determination was made. If anything, the public interest in such complaints is even stronger in light of the roles that the Office of Professional Responsibility and Office of Inspector General play in policing federal employees' conduct.

7.     *Age of complaints.* Although not expressly discussed in the Second Curry Declaration, the age of complaints (and behavior discussed therein) plays a significant role in EOIR's judge-specific *Vaughn* index. *See generally* 2d Curry Decl., Exh. 1 (frequently describing how many "years ago" complaints were dismissed). However, there is no reason to believe that the age of the records, without more, has any appreciable impact on either side of the Exemption 6 scale here. The records at issue were requested in 2012 and related to complaints resolved after September 30, 2009. 1st Murray Decl. ¶¶ 3-4. They were thus all relatively fresh at the time of AILA's FOIA request and remain of significant interest today. Moreover, consideration of the age of the records here as reducing the public interest in disclosure would effectively reward agencies for delaying disclosure and for litigating as to information that would have been properly disclosed at the time of the request.

**IV.   The Public Interest in Disclosure of Judges' Names and Identifying Information Outweighs the Privacy Interests at Stake.**

When the public and privacy interests are properly balanced, the names and identifying information remaining at issue in this case should be disclosed. The Fourth Murray Declaration, attached as Exhibit A to this memorandum, describes individually the 34 immigration judges at issue in the litigation. *See* 4th Murray Decl. ¶¶ 36-74. Each of the judges remaining at issue in this litigation was subject to three or more complaints—in some cases dozens—during the time period covered by AILA's FOIA request. Based on EOIR's own database categorizing complaints, none of the judges was subject only to "out-of-court conduct" complaints, and such complaints were rare among the judges. Moreover, all but two judges had at least one complaint resolved by corrective action or discipline.[9] And although AILA continues to pursue the names of some judges who are no longer active on the bench, each of those judges was subject to at least five complaints in the period covered by AILA's request and which involved serious allegations of misconduct.

Moreover, to facilitate this Court's review of the Exemption 6 interests for each judge remaining at issue, AILA has also included as an exhibit to the Fourth Murray Declaration a chart that identifies (1) each judge remaining at issue in this litigation using the three-letter unique identifier assigned by EOIR; (2) the total number of complaints against that judge during the period covered by AILA's request; and (3) the judge's employment status, according to defendants' *Vaughn* index submitted in April 2017. *See id.* ¶ 32 & Exh. A. The chart groups

---

[9] Judge RCW, one of the two exceptions, had several complaints dismissed, not because they could not be substantiated, but because corrective action had already been taken, presumably in response to another complaint outside the time period covered by AILA's request. And the 18 complaints against Judge FRW, the other exception, were resolved without action when the judge was terminated. *See* 4th Murray Decl. ¶¶ 45, 61.

judges by the number of complaints filed against them (e.g., all judges subject to 20 or more complaints are grouped together in red). *Id.* ¶ 34 & Exh. A.

In addition, the chart incorporates information, as provided by EOIR's complaint database released to AILA, with respect to each complaint that corresponds to a judge. This information consists of: (1) the number assigned by EOIR to each complaint against a judge, (2) the final action taken on that complaint, as EOIR described it, (3) the nature of the misconduct complained of (e.g., in-court conduct, legal, bias, out-of-court conduct), and (4) the type of complainant (e.g., respondent, respondent's attorney, Board of Immigration Appeals). *Id.* ¶ 33 & Exh. A.

## CONCLUSION

For the reasons described herein, AILA's renewed motion for summary judgment should be granted and the defendants' renewed cross-motion for summary judgment denied.

Respectfully submitted,

/s/ Julie A. Murray
Julie A. Murray
D.C. Bar No. 1003807
Allison M. Zieve
D.C. Bar No. 424786
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
jmurray@citizen.org

Melissa Crow
D.C. Bar No. 453487
AMERICAN IMMIGRATION COUNCIL
1331 G Street NW
Washington, DC 20005
(202) 507-7523

Dated: June 1, 2017                                    *Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| AMERICAN IMMIGRATION ) | |
| LAWYERS ASSOCIATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 13-cv-00840 |
| ) | Judge Christopher R. Cooper |
| EXECUTIVE OFFICE FOR ) | |
| IMMIGRATION REVIEW, ) | |
| U.S. DEPARTMENT OF JUSTICE, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**PLAINTIFF'S SUPPLEMENTAL STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE**

Plaintiff submitted a statement of material facts with its initial motion for summary judgment. *See* Doc. 20, at 55, Pl.'s Statement of Material Facts. In its renewed motion for summary judgment, plaintiff has incorporated that statement by reference and continues to rely on it.

Plaintiff's supplemental statement of facts as to which there is no genuine dispute is as follows:

42.     Immigration judges are required, as federal employees, to avoid the appearance of impropriety and to act impartially. *See* 5 C.F.R. § 2635.101(b)(8), (b)(14).

43.     EOIR maintains a "binding" Ethics and Professionalism Guide for Immigration Judges, which provides that EOIR may take "disciplinary or other employment action" for violations of the guide's standards. 4th Murray Decl., Exh. B.

44.     That guide provides that an immigration judge "should not, in the performance of official duties, by words or conduct, manifest improper bias or prejudice" and requires that immigration judges maintain professional competence, act impartially, and avoid the appearance that they are "violating the law or applicable ethical standards." *Id.* at 2-3. "[N]egative stereotyping," "threatening, intimidating, or hostile acts," and "irrelevant reference to personal characteristics" are examples of judicial behavior that manifest improper bias or prejudice. *Id.* at 3.

45.     The Board of Immigration Appeals, which is part of EOIR, takes the position that an immigration judge's "bullying or hostile" conduct creates the appearance that the judge has not acted as "a neutral fact-finder." *Matter of Y-S-L-C-*, 26 I. & N. Dec. 688, 690-91 (BIA 2015) (internal quotation marks omitted).

46.     The Southern Poverty Law Center and Emory Law filed a letter complaint in 2017 with EOIR regarding the conduct of judges on the Atlanta Immigration Court. 4th Murray Decl., Exh. C. The complaint asserted that judges on that court had been observed making "prejudicial statements and expressed significant disinterest or even hostility towards respondents," "set bonds at a prohibitively high amount that indicate[d] a lack of consideration to required factors," and "prohibited observers" despite the presumptive openness of immigration proceedings. *Id.* at 2.

47.     The names of immigration judges, the courts where they work, and the addresses of the courts are publicly available on EOIR's website. *See* https://www.justice.gov/eoir/eoir-immigration-court-listing.

48.     EOIR has released annual aggregate data describing the complaints it received and its resolutions of those complaints from 2010 to 2014. 4th Murray Decl. ¶ 77 & Exh. D. EOIR has not provided this information online for any year since that time. *Id.*

49.     AILA has agreed to forgo in litigation the names and identifying information of all but 34 immigration judges. *Id.* ¶¶ 4-8 & Exh. A.

50.     EOIR treats complaints closed with disciplinary action or corrective action, including oral counseling, and complaints dismissed because a complaint cannot be substantiated as distinct. *See* Doc. 16-2, Keller Decl., Exh. A & B.

51.     Seven immigration judges were the subject of 20 or more closed complaints each during the time period covered by the records. These judges are GEP (21), HKX (30), IQV (25), KMJ (26), OPU (29), PBZ (32), and TXY (23). These seven judges were collectively responsible for 186 complaints—or nearly a quarter of all complaints—in the original release. Murray Decl. ¶ 36. All of these judges were subject to one or more complaints that resulted either in disciplinary action or corrective action, such as oral counseling or training. Three of the seven judges remain active. 4th Murray Decl. ¶ 36.

52.     Seven immigration judges remaining at issue were the subject of 10 to 19 closed complaints each during the time period covered by the records. These judges are FRW (18), GOE (13), KSI (13), PSI (13), QJC (11), WTW (13), and ZMO (10). Three of these judges remain on the bench, and a fourth (GOE) remains a DOJ employee. These seven judges were collectively responsible for 91 complaints—or roughly 11 percent of all complaints—in the release. Six of these seven judges were subject to at least one complaint that resulted in discipline or corrective action. All 18 complaints against the remaining judge (FRW) were closed without action because the judge was terminated before the complaints could be resolved. Of the

92 complaints made against these seven judges, only six of them involved "out-of-court conduct." 4th Murray Decl. ¶ 44.

53.     Fifteen immigration judges who remain at issue were the subject of between 6 and 9 closed complaints each during the time period covered by the records. These judges are ATQ (8), DPY (7), GNE (6), GUC (9), JIT (8), LLN (8), NHQ (7), QVI (8), RCW (8), SQX (8), VED (6), VJL (8), YEL (7), YKB (8), and YWK (7). These fifteen judges were collectively responsible for 113 complaints—or roughly 15 percent of all complaints—in the release. Ten of these judges remain on the bench. EOIR's database indicates that at least one complaint was substantiated against each of 14 of the 15 judges, and three complaints against the remaining judge (Judge RCW) were closed because "corrective action" had already been taken, indicating that some conduct had already been determined to warrant management action even if not so classified by EOIR in its database. Of the 113 complaints at issue among these judges, only 19 involved "out-of-court conduct," and each judge subject to an "out-of-court conduct" complaint was also subject to numerous others not involving "out-of-court conduct." Six of the judges were not subject to any complaints categorized by EOIR as pertaining to "out-of-court conduct." 4th Murray Decl. ¶ 52.

54.     Five immigration judges remain at issue who were the subject of 3 to 5 closed complaints each during the time period covered by the records. These judges are CGP (5), DWL (3), KSV (5), OPP (5), and TAD (5). All but Judge KSV remain active. None of the complaints against these judges were characterized as involving "out-of-court conduct" in EOIR's database. In each case, at least one complaint against a judge was resolved with formal discipline, such as a written reprimand or suspension, or all complaints against the judge ended with oral

counseling, that is, none of the complaints was dismissed as unsubstantiated. 4th Murray Decl.
¶ 68.

Respectfully submitted,

/s/ Julie A. Murray
Julie A. Murray
D.C. Bar No. 1003807
Allison M. Zieve
D.C. Bar No. 424786
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
jmurray@citizen.org

Melissa Crow
D.C. Bar No. 453487
AMERICAN IMMIGRATION COUNCIL
1331 G Street NW
Washington, DC 20005
(202) 507-7523

Dated: June 1, 2017                              *Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
AMERICAN IMMIGRATION                    )
LAWYERS ASSOCIATION,                    )
                                        )
            Plaintiff,                   )
                                        )
      v.                                )      Civil Action No. 13-cv-00840
                                        )      Judge Christopher R. Cooper
EXECUTIVE OFFICE FOR                    )
IMMIGRATION REVIEW,                     )
U.S. DEPARTMENT OF JUSTICE,             )
*et al.*,                               )
                                        )
            Defendants.                  )
_____)

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE**

Plaintiff does not believe that there exist genuine issues of material fact that are necessary to be litigated in this case. Plaintiff believes that the case can be decided based on the facts set forth in its own statement of material facts, filed June 1, 2017, and the cases and argument set forth in the Memorandum in Support of Plaintiff's Renewed Motion for Summary Judgment and Opposition to Defendants' Renewed Motion for Summary Judgment.

Plaintiff responds to the statement of material facts filed by defendants as follows:

1.       Undisputed.

2.       Disputed but dispute is not material. In a letter dated December 1, 2016, AILA notified EOIR that it no longer intended to pursue the "names and identifying information" of 49 immigration judges. *See* Doc. 54-6, Letter from AILA to EOIR (Dec. 1, 2016). It did not state that it no longer pursued the complaint files for those judges and, in fact, had already received those files. *Id.*

3.      First sentence: undisputed. Second sentence: Disputed that the list of judges included judges against whom complaints were closed without dismissal. 4th Murray Decl. ¶ 4.

4.      Undisputed.

5.      Undisputed.

6.      Undisputed.

7.      Undisputed.

8.      First sentence: disputed but dispute is not material. EOIR's initial releases in this case began in October 2013 and ended in June 2014. 4th Murray Decl. ¶ 3. Second sentence: Disputed but dispute is not material. The fifth supplemental release was made on January 24, not January 23, 2017. *Id.* ¶ 26.

9.      Undisputed.

10.     Disputed. The third party indicated that he had uncovered the vulnerabilities in documents released to AILA in March and May 2015, in addition to those released in April 2015. *See* 4th Murray Decl. ¶ 12. Moreover, in February 2017, AILA advised the government of at least one initial complaint file that appeared to suffer from ineffective redactions. *Id.* ¶ 23. AILA has also notified the government of additional ineffective redactions in subsequent releases that post-dated the third party's notice to the government of its earlier ineffective redactions in spring 2015 releases. *Id.* ¶¶ 27-28, 31.

11.     Undisputed that EOIR reprocessed the spring 2015 releases and that AILA agreed to remove the defective versions from its website pending reprocessing. 4th Murray Decl. ¶ 16. Disputed that EOIR properly applied redactions in that initial reprocessing. *Id.* ¶ 27. AILA subsequently flagged what appeared to be additional vulnerabilities in those reprocessed documents, and EOIR reprocessed them for a second time. *Id.* ¶¶ 27-29. Moreover, AILA has

now discovered what appear to be additional ineffective redactions in the reprocessed records and has advised the government. *Id.* ¶ 31.

12.     Undisputed that defendants have taken this legal position. Disputed that it is correct. *See* 4th Murray Decl. ¶¶ 32-74; Pl.'s Renewed Mot. for Summ. J. Memo. 17-34.

13.     First sentence: Undisputed that defendants made this statement. AILA further states that it has not attempted to use the insecure versions of documents it received from EOIR to verify the accuracy of the third party's findings with respect to which complaints correspond to which judges. 4th Murray Decl. ¶ 13. Second sentence: Objection. This statement is speculation and is not a statement of fact.

14.     Undisputed that defendants have taken this legal position. Disputed that it is correct. *See* 4th Murray Decl. ¶¶ 36-74; Pl.'s Renewed Mot. for Summ. J. Memo. 17-34.

15.     Undisputed.

16.     Undisputed that defendants have taken this legal position. Disputed that it is correct. *See* 4th Murray Decl. ¶¶ 36-74; Pl.'s Renewed Mot. for Summ. J. Memo. 17-34.

17.     Undisputed that defendants have taken this legal position. Disputed that it is correct. *See* 4th Murray Decl. ¶¶ 36-74; Pl.'s Renewed Mot. for Summ. J. Memo. 17-34. Undisputed that defendants described their Exemption 6 balancing determinations with reference to these factors. Disputed that the factors are legally relevant and based on accurate factual presumptions. *See* Pl.'s Renewed Mot. for Summ. J. Memo. 27-32.

18.     Undisputed that defendants described their Exemption 6 balancing determinations with reference to these factors. Disputed that the factors are legally relevant and based on accurate factual presumptions. *See* Pl.'s Renewed Mot. for Summ. J. Memo. 27-32.

19.     Main text: Undisputed. Footnote: Disputed but dispute is not material to resolution of the case. There were originally 767 complaints, not 771. *See* Doc. 16, Defs.' First Statement of Material Facts ¶ 14.

20.     Undisputed. AILA further states that the January 24, 2017, *Vaughn* index was missing information and was updated and re-released on February 23, 2017. 4th Murray Decl. ¶ 26 n.1.

21.     Disputed but dispute is not material. In a letter dated March 6, 2017, AILA notified EOIR that it no longer intended to pursue the "names and identifying information" of 28 immigration judges. *See* Doc. 54-7, Letter from AILA to EOIR (Mar. 6, 2017). It did not state that it no longer pursued the complaint files for those judges and, in fact, had already received those files. *Id.*

22.     First sentence: Objection. Statement is based on speculation and is not a statement of fact. Disputed. Ms. Curry's declaration does not purport to identify the "criteria that AILA appears to have applied." Rather, it states that the 28 judges "include the following," and then uses various descriptors of EOIR's own, such as "a judge with a single complaint who resigned prior to resolution of the complaint." 3d Curry Decl. ¶ 9. AILA did not determine to exclude categorically judges with the characteristics that EOIR identifies. 4th Murray Decl. ¶ 6. AILA further states that its March 2017 letter expressly disclaimed conceding that these judges' names or the names of any other judges with similar complaint profiles remaining at issue in the litigation were exempt from disclosure. *Id.* ¶ 5.

23.     Undisputed that AILA has agreed to forgo the names and identifying information for judges listed in its December 1, 2016, and March 6, 2017, letters to EOIR. In its renewed motion for summary judgment, AILA also indicates that it has agreed to forgo additional judges'

names and identifying information, such that only 34 judges remain at issue in the litigation. *See* 4th Murray Decl. ¶¶ 7-8 & Exh. A.

24.     Undisputed.

25.     Sentence one: Objection. Immigration Judge Slavin does not assert that she has personal knowledge of security incidents involving other judges and fails to lay the foundation for those incidents. *See* Fed. R. Evid. 602, 901(a); Pl.'s Renewed Mot. for Summ. J. Memo. 23-24. Her reference to a website targeting immigration judges is not accompanied by the best evidence of that website, *see* Fed. R. Evid. 1002, or even a web link to permit plaintiff to review the best evidence of the website for itself and to respond. Pl.'s Renewed Mot. for Summ. J. Memo. 23. Disputed that the incidents described by Judge Slavin are legally relevant. *See id.* 25-26. Sentence two: Objection. This statement is speculation rather than a statement of fact. Disputed that release would have the effects that Judge Slavin identifies. *See*, *e.g.*, Keller Decl. ¶ 25 (acknowledging that media reports and court of appeals decisions have described incidents of immigration judge misconduct for years); *see also* Pl.'s 1st Mot. for Summ. J. Memo. 16-18 (describing examples of information readily available to the public with respect to a judge's performance of his duties).

Respectfully submitted,

/s/ Julie A. Murray
Julie A. Murray
D.C. Bar No. 1003807
Allison M. Zieve
D.C. Bar No. 424786
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
jmurray@citizen.org

Melissa Crow
D.C. Bar No. 453487
AMERICAN IMMIGRATION COUNCIL
1331 G Street NW
Washington, DC 20005
(202) 507-7523

Dated: June 1, 2017                              *Counsel for Plaintiff*