**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                      )
AMERICAN IMMIGRATION                )
LAWYERS ASSOCIATION,               )
                                                      )
                    Plaintiff,                    )
                                                      )
          v.                                        )          Civil Action No. 13-cv-00840
                                                      )          Judge Christopher R. Cooper
EXECUTIVE OFFICE FOR                )
IMMIGRATION REVIEW,               )
U.S. DEPARTMENT OF JUSTICE,    )
*et al.*,                                           )
                                                      )
                    Defendants.                )
_____)


**REPLY IN SUPPORT OF
PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT**

Melissa Crow                                    Julie A. Murray
D.C. Bar No. 453487                         D.C. Bar No. 1003807
AMERICAN IMMIGRATION COUNCIL      Allison M. Zieve
1331 G Street NW                            D.C. Bar No. 424786
Washington, DC 20005                      PUBLIC CITIZEN LITIGATION GROUP
(202) 507-7523                                1600 20th Street NW
                                                      Washington, DC 20009
                                                      (202) 588-1000
                                                      jmurray@citizen.org


*Counsel for Plaintiff American Immigration Lawyers Association*

August 7, 2017

## TABLE OF CONTENTS

Table of Authorities ........................................................................................................ ii

Introduction and Summary of Argument ......................................................................1

Argument ........................................................................................................................2

I.      The Public Interest in Disclosure Is Strong and Requires Release of the Judges' Names. ...........................................................................................................................2

II.     EOIR Overstates the General Privacy Interests at Stake. ....................................7

III.    EOIR's Justification for Withholding Immigration Judges' Identities Is Based on Additional Erroneous Assumptions and Unreliable Evidence............................................12

       A.     AILA's decision to forgo some judges' names cannot be used to justify EOIR's balancing approach. ...................................................................................13

       B.     EOIR misapplies numerous factors relevant to Exemption 6 balancing and considers irrelevant factors. ..........................................................................13

              1.     Number of complaints involved................................................................13

              2.     Substantiation of complaints....................................................................14

              3.     In-court versus out-of-court conduct .......................................................15

              4.     Judge's employment status .......................................................................17

               5.     Protection of other individuals' privacy interests ...................................18

               6.     Complaint referrals to other government agencies ..................................19

               7.     Age of complaints .....................................................................................20

Conclusion ....................................................................................................................21

# TABLE OF AUTHORITIES

**CASES**                                                                                           **Page(s)**

*Akers v. Beal Bank*,
    845 F. Supp. 2d 238 (D.D.C. 2012), *aff'd sub nom. Akers v. Beal Bank &*
    *Countrywide Home Loans*, No. 12-7045, 2012 WL 4774676 (D.C. Cir. Oct. 2,
    2012) ............................................................................................................5

*American Civil Liberties Union v. DOJ*,
    655 F.3d 1 (D.C. Cir. 2011) ........................................................................3

*American Immigration Lawyers Ass'n v. Executive Office for Immigration Review*,
    830 F.3d 667 (D.C. Cir. 2016) ...............................................................4, 17

*Horowitz v. Peace Corps*,
    428 F.3d 271 (D.C. Cir. 2005) .....................................................................16

*Judicial Watch, Inc. v. Food & Drug Administration*,
    407 F. Supp. 2d 70 (D.D.C. 2005) ...............................................................11

*Londrigan v. FBI*,
    670 F.2d 1164 (D.C. Cir. 1981) ...................................................................10

*National Ass'n of Home Builders v. Norton*,
    309 F.3d 26 (D.C. Cir. 2002) ................................................................11, 18

*National Ass'n of Retired Federal Employees v. Horner*,
    879 F.2d 873 (D.C. Cir. 1989) .....................................................................18

*Oguaju v. U.S. Marshals Service*,
    541 U.S. 970 (D.C. Cir. 2002), *vacated*, 541 U.S. 970 (2004),
    *judgment reinstated sub nom.*, *Oguaju v. United States*, 378 F.3d 1115 (D.C. Cir.
    2004) ...........................................................................................................15

*SafeCard Services, Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) ...................................................................10

**RULES**

Advisory Committee Notes, 2010 Amendments, Fed. R. Civ. P. 56.............................9

Fed. R. Civ. P. 56(c) ...............................................................................................10

Fed. R. Evid. 602 .....................................................................................................9

Fed. R. Evid. 901(a) ..................................................................................................................9

Fed. R. Evid. 1002 ...................................................................................................................9

**OTHER AUTHORITIES**

EOIR, Immigration Court Listing, http://www.justice.gov/eoir/eoir-immigration-court-
   listing (updated May 2017) ...............................................................................................12

Transactional Records Access Clearinghouse, Judge-by-Judge Asylum Decisions in
   Immigration Courts, FY 2011-2016,
   http://trac.syr.edu/immigration/reports/447/include/denialrates.html ..............................12

Transactional Records Access Clearinghouse, Asylum Outcome Increasingly Depends on
   Judge Assigned (2016), http://trac.syr.edu/immigration/reports/447 ...............................12

## INTRODUCTION AND SUMMARY OF ARGUMENT

A proper balancing of private and public interests under Freedom of Information Act (FOIA) Exemption 6 requires the Executive Office for Immigration Review (EOIR) to disclose the identities of the 34 immigration judges who remain at issue in this litigation. Two general points bear emphasis at the outset.

First, the American Immigration Lawyers Association (AILA) has not, as EOIR suggests, urged this Court to adopt "a simple, bright line rule" that the identity of any judge subject to three or more complaints must be released. Defs.' Opp'n at 2-3, ECF No. 59. Rather, AILA submitted a declaration describing individually the 34 immigration judges whose names remain at issue in the litigation, including numerous details of the complaints against those judges. *See* 4th Murray Decl. ¶¶ 36-74, ECF No. 56-1. It also included as an exhibit to that declaration a chart identifying (1) each judge's three-letter unique identifier assigned by EOIR; (2) the total number of complaints against that judge during the period covered by AILA's request; and (3) the judge's employment status. *See id.* ¶ 32 & Exh. A. The chart also incorporated complaint-specific information for each of those judges, including the final action that EOIR took on each complaint and the nature of the misconduct complained of (e.g., in-court conduct, legal, bias, out-of-court conduct). *Id.* ¶ 33 & Exh. A. EOIR does not acknowledge the existence of this evidence, much less object to any aspect of it. Accordingly, in its Exemption 6 balancing determination, this Court should rely on the individualized showings in AILA's declaration and corresponding chart.

Second, AILA's remaining dispute with EOIR is not over whether EOIR has, like AILA, made an *individualized* showing with respect to each immigration judge. Rather, AILA takes issue with respect to whether EOIR's showing is *correct*. It is not. In conducting Exemption 6

balancing, EOIR has overstated the privacy interests at stake, wrongly disregarded key public interests in disclosure, and relied on irrelevant considerations. It has also urged this Court to consider inadmissible evidence that does not, in any event, support withholding. Accordingly, this Court should disregard EOIR's assertion that the judges' names still at issue should be withheld.

## ARGUMENT

## I.     The Public Interest in Disclosure Is Strong and Requires Release of the Judges' Names.

In its renewed motion for summary judgment, AILA explained why disclosure of immigration judges' names would (1) help hold individual judges and EOIR accountable for their conduct; (2) encourage additional reporting of complaints, which would in turn further inform EOIR and the public about immigration judges' actions; and (3) help AILA and the public effectively evaluate EOIR's processing and resolution of complaints. *See* Pl.'s Renewed Summ. J. Memo. 18-22, ECF No. 56. Although EOIR contests these public interests in disclosure, its arguments are meritless.

**A.**     EOIR argues that disclosure of judges' identities will not help hold individual judges and EOIR accountable because "there is no evidence that [EOIR] mishandled or responded inappropriately" to complaints at issue or that EOIR "would handle the complaints differently going forward if the judges' names were released." Defs.' Opp'n 10.

EOIR misses the point. AILA's argument does not require the Court to conclude that if judges' names were public, EOIR might "met[e] out more discipline" or otherwise change the way that it resolves complaints going forward. *Id.* Rather, AILA has demonstrated that disclosure of judges' names would lead to "'greater *public* scrutiny,'" including by permitting the public— for example, through court-monitoring efforts—to focus its attention on courts that draw the

2

most significant or frequent complaints. Pl.'s Renewed Summ. J. Memo. 19 (quoting Deasy Decl. ¶ 11 (emphasis added and internal alteration omitted)). This disclosure would, in turn, "'encourage greater voluntary compliance with ethics standards, standards of judicial conduct, and DOJ policies than the current system.'" *Id.* (quoting Deasy Decl. ¶ 11 (emphasis added)). In other words, disclosure of judges' names would supplement EOIR's complaint system, allowing for public and stakeholder participation, and help compensate for weaknesses in EOIR's complaint resolution process, even if those weaknesses remain after disclosure.

EOIR's opposition confirms that disclosure would have such an effect. EOIR acknowledges that immigration hearings "are generally open to the public," and that some outside groups monitor immigration courts and criticize the judicial conduct they observe. Defs.' Opp'n 10-11. It states that "[t]hese and other pressures and influences cannot be ignored" in terms of the impact they already have on immigration judges' compliance with ethical and other standards. *Id.* at 11. AILA agrees, and that is precisely why disclosure of immigration judges' names, which will make these monitoring efforts more effective, is in the public interest.

EOIR also faults AILA with respect to this public interest by contending that AILA "does not give sufficient weight to the information about the complaints already in the public domain." *Id.* But "[t]he fact that the public already has some information"—here, completely anonymized—"does not mean that more will not advance the public interest." *Am. Civil Liberties Union v. DOJ*, 655 F.3d 1, 15 (D.C. Cir. 2011). AILA correctly urges that the public interest in disclosure of judges' identities, beyond what has already been disclosed, remains strong and will help hold individual judges accountable in a way that the availability of existing public information cannot.

**B.**     EOIR also objects to the second public interest in disclosure on which AILA has focused: the interest in encouraging further reporting of complaints by private attorneys. As AILA has explained, *see* Pl.'s Renewed Summ. J. Memo. 20-21, robust reporting will strengthen EOIR's complaint process and necessarily help inform the public about "what the agency"— through its judges—"is up to." *AILA v. EOIR*, 830 F.3d 667, 674 (D.C. Cir. 2016) (internal quotation marks omitted).

EOIR wrongly contends (at 11) that AILA's argument in this regard is based only on a single declaration. In fact, AILA relied on numerous statements in the declarations of both Robert Deasy, the Deputy Director of Programs at the American Immigration Lawyers Association, and Trina Realmuto, a staff attorney at the National Immigration Project of the National Lawyers Guild. *See* Pl.'s Renewed Summ. J. Memo. 20-21 (repeatedly citing Realmuto Decl., ECF No. 20-3, and Deasy Decl., ECF No. 20-2). These declarants described at length the existing concerns of attorneys with whom they work regarding the complaint process and the way in which disclosure of judges' names would affect attorneys' willingness to file complaints. Ms. Realmuto stated, for example, that some NIP members had "indicated that they would be more willing to seek redress on behalf of themselves and their clients by filing complaints if the names of immigration judges were released." Realmuto Decl. ¶ 14.[1]

---

[1] EOIR raised no objection to these declarations on hearsay grounds when they were submitted in 2014, but it now states in passing (at 11) that a quote from a private attorney recounted in the Realmuto Declaration, i.e., that attorneys would find "strength in numbers" if the names of immigration judges' were disclosed, is hearsay. EOIR's fleeting reference to hearsay is insufficient to state an evidentiary objection at this late date, and, in any event, the statement in Ms. Realmuto's declaration may be considered on summary judgment. Ms. Realmuto (and Mr. Deasy, for that matter) specifically identify the basis for their personal knowledge of members' statements and views on EOIR's complaint process and indicate that they obtained this information in the course of their official duties. *See* Realmuto Decl. ¶¶ 1, 3, 11 (stating that her declaration was based on her experience at NIP, where she was responsible for responding "to members who post questions related to EOIR's complaint process to our

EOIR fares no better with its other arguments against considering the public interest in encouraging reporting of complaints. EOIR contends that even if "some private attorneys might feel more comfortable filing a complaint if the judges' names are released," not "all attorneys [necessarily] share that view" and, in any event, only approximately one-third of complainants are private attorneys. Defs.' Opp'n 11-12. AILA has never argued otherwise, nor does it need to for the Court to include in any balancing the public interest in encouraging complaint reporting. The fact that public disclosure of immigration judges' names would not encourage more reporting in *all* circumstances is no reason to ignore the real benefit that disclosure would have in *some* circumstances involving private attorneys.

EOIR's related prediction that disclosure of judges' names would instead "be 'destructive to the integrity of the system,'" hinges entirely on the woefully inadequate declaration of Immigration Judge Slavin. *Id.* at 12 (citing Slavin Decl. ¶ 5, ECF No. 54-5). Immigration Judge Slavin states in conclusory fashion that "complainants may be more hesitant to file complaints if the Judge's name may be released, fearing the Judge may be more upset with them." Slavin Decl. ¶ 5. However, unlike AILA's declarants, who—as described in their declarations— regularly work with immigration attorneys, including those navigating EOIR's complaint process, the declaration of Immigration Judge Slavin does not establish that she has any first-hand knowledge or special insight into the considerations and motives of complainants. *See* Pl.'s

---

listserv or who contact another member of our staff about that process" and had "also reached out to members to solicit their views about EOIR's complaint process"); Deasy Decl. ¶¶ 1-2, 4. This background is sufficient to demonstrate that the declarants have personal knowledge of the statements they relay. *Cf. Akers v. Beal Bank*, 845 F. Supp. 2d 238, 242 (D.D.C. 2012), *aff'd sub nom. Akers v. Beal Bank & Countrywide Home Loans*, No. 12-7045, 2012 WL 4774676 (D.C. Cir. Oct. 2, 2012) (holding that an affiant who reviews business records and "testifies on the basis of information acquired through the performance of his or her official duties[] may be deemed competent by the court to testify as to those records").

5

Renewed Summ. J. Memo. 24 (raising evidentiary objections to this portion of the Slavin Declaration).

Moreover, Judge Slavin's statement that anonymous complainants may file "multiple, unfounded complaints as a way of bolstering appeals," or could file "complaints in retaliation for bar complaints or complaints filed with EOIR against them" is both speculative and not a reason to withhold the names of immigration judges. Slavin Decl. ¶ 5. It is telling that Immigration Judge Slavin provides no specific evidence to support her speculation regarding complainants' abuse of the complaint process—with respect to the remaining complaints at issue in this litigation or any others—nor does the purported problem she identifies seem limited to a situation in which a judge's name is public. In any event, even without a complainant's name, EOIR can resolve complaints by determining that they are frivolous and, presumably, would note in a complaint file if a complaint appears to have been filed with an ulterior motive. Such indications would assuage Immigration Judge Slavin's concerns, assuming they have any merit.

**C.**     As AILA discussed in its renewed motion for summary judgment, identifying judges would also ensure that the public can assess more effectively EOIR's complaint process and the factors that affect the filing of complaints. Pl.'s Renewed Summ. J. Memo. 21-22. AILA contended, for example, that researchers could use the information sought here to assess whether the characteristics of judges such as gender or experience (in some cases gleaned from other public records) affect the likelihood of a complaint being filed against a judge or the manner in which the agency resolves a complaint. *Id.* at 22.

Although EOIR does not contest that this Court may consider derivative uses on the public interest side of the Exemption 6 scale, it contends that AILA already has access to the judges' "experience" because EOIR's *Vaughn* index "discusses the number of hearings over

which the judges presided." Defs.' Opp'n 13. The *Vaughn* index is not useful in this regard. As EOIR's declarant recognized, the index provides an approximate number of hearings only for those judges subject to four or more complaints, and only during the time period covered by complaints disclosed to AILA. *See* 2d Curry Decl. ¶ 30 n.10, ECF No. 54-3. Moreover, the index does not tell the public the number of years a judge has been on the bench.

AILA's renewed motion also described how the public could use the names of immigration judges in the existing complaint files and match them to future complaints involving those same judges, thus tracking EOIR's progressive discipline over time. Pl.'s Renewed Summ. J. Memo. 21-22. It pointed out that although EOIR had voluntarily committed to releasing a key with unique identifiers for any future requests, as it did in this case, EOIR was not legally bound to that commitment. *Id.* at 22. EOIR's response is nonsensical: EOIR wrongly suggests that AILA is contending that "release of the names of the 34 judges still at issue in this litigation would somehow impair the Agency from releasing similar information in response to a similar FOIA request in the future." Opp'n 13. To the contrary, an order directing EOIR to release these names *now* would be strong evidence that future complaints against these same judges should *also* be released with the names included, thus enabling the public to match a judge with both old and new complaints.

## II.     EOIR Overstates the General Privacy Interests at Stake.

The crux of EOIR's privacy argument is that (1) even without the Slavin Declaration, the individualized privacy interests outweigh the public interest in disclosure of immigration judges' names, as described in the *Vaughn* index, and (2) the Slavin Declaration provides additional evidence supporting withholding on privacy grounds. As discussed in greater detail above (at p. 1) and below in Part III, the government's balancing of Exemption 6 considerations, including its

identification of various privacy interests, is flawed and should be rejected in favor of the individualized showing that AILA provided to the Court. That leaves the government to hang its hat on the Slavin Declaration's assertion of various general privacy interests. As AILA has demonstrated, however, the Slavin Declaration suffers from numerous fatal evidentiary defects and rests on some privacy interests that are not even cognizable under Exemption 6. *See* Pl.'s Renewed Summ. J. Memo. 23-26. In its opposition, the government implicitly admits AILA's point in part, whittling down the generally applicable privacy interests on which it relies to protecting immigration judges from threats, violence, and harassment. *See* Defs.' Opp'n 8. EOIR also effectively concedes that unless the Court considers the Slavin Declaration, EOIR has provided no specific evidence on the likelihood of threats, violence, or harassment directed at immigration judges because of the complaint process. *See id.* at 4 ("Plaintiff argued in opposition to Defendants' initial motion for summary judgment that concerns about threats and harassment were not supported by evidence. Judge Slavin's declaration constitutes such evidence." (internal citation omitted)).

Immigration Judge Slavin's declaration refers to (1) an unidentified website that she claims targets immigration judges who have been subject to complaints, and (2) a letter that was purportedly received by another judge consisting of the cover page of the complaint in this case with a note that the judge "better hope the Feds win." Slavin Decl. ¶ 6. EOIR does not dispute AILA's contention that these references are the only examples that could even conceivably support the possibility of threats or harassment related to the complaint process. *See* Pl.'s Renewed Summ. J. Mot. 23; Defs.' Opp'n 6-7. Nor does it offer any response to AILA's specific evidentiary objections to these examples. As AILA has argued, *see* Pl.'s Renewed Summ. J. Mot. 23-24, Immigration Judge Slavin failed to offer the best evidence of the website's content, or

even a web address that would enable AILA or the Court to view it. *See* Fed. R. Evid. 1002; *see also* Advisory Committee Notes, 2010 Amendments, Fed. R. Civ. P. 56 (making clear that "materials referred to in an affidavit or declaration" at summary judgment "must be placed in the record"). She also failed to lay the foundation for the letter directed to another immigration judge or to offer any facts whatsoever with respect to how she obtained it. *See* Fed. R. Evid. 602, 901(a).

EOIR contends that Immigration Judge Slavin "has personal knowledge and is competent to testify on her belief that 'release of the names of Immigration Judges would be a security threat.'" Defs.' Opp'n 6. AILA does not object to Immigration Judge Slavin's ability to state, as she does, that she has "received verbal and written threats related to [her] role as an immigration judge." Slavin Decl. ¶ 6. But without any context, that statement falls far short of showing a likelihood that disclosure of immigration judges' names in the context of the complaint process would lead to threats sufficiently serious to justify withholding under Exemption 6.

Moreover, Immigration Judge Slavin cannot then bootstrap other judges' experiences onto her testimony. The government points (at 7) to paragraph 6 of her declaration to justify her personal knowledge of the matters she describes. That paragraph does not provide a shred of support. Judge Slavin simply states, for example, that she has "been told" of matters or "know[s] of many other instances," in some unstated capacity. Slavin Decl. ¶ 6. AILA and this Court have no way of knowing, for example, whether the source of Judge Slavin's information is an individual associated with this very litigation with an interest in her testimony, or perhaps a collection of other individuals who have also "been told" of such incidents second- or third-hand.

The government would have this Court assume that Judge Slavin made her declaration about threats and harassment on the basis of information she received in her capacity as the

Executive Vice President of the National Association of Immigration Judges (NAIJ). *See* Opp'n 6. That assumption is not supported by the evidence. Judge Slavin states that, in her capacity as an NAIJ official, she has knowledge of disciplinary proceedings against immigration judges. Slavin Decl. ¶ 1. However competent that background makes her to testify as to those proceedings, it does not imbue her with personal knowledge of threats and harassment against immigration judges. Nor does her experience as one immigration judge among many, *see* Defs.' Opp'n 6, give her personal knowledge of the experiences of all other immigration judges to whom she refers.

EOIR also argues that it should receive "[s]ome latitude" with respect to the hearsay on which Judge Slavin relies in her declaration because the other judges' whose experiences she describes "are not parties and it is not practical for the Agency to get declarations from each judge who received threats." *Id.* at 7. But the requirement at summary judgment that a declaration be based on personal knowledge "is unequivocal, and cannot be circumvented." *Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981) (Privacy Act case). A party is not at liberty to ignore Federal Rule of Civil Procedure 56(c) simply because necessary evidence to support its case rests in the hands of non-parties, particularly where those non-parties are employees of the agency and presumably quite easy to find.

Nothing in *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991), on which EOIR relies, supports giving the agency the "latitude" it seeks here. That case analyzed whether the "second-hand nature" of an affidavit was appropriate only in the context of considering whether an agency affidavit was sufficiently detailed and non-conclusory, as required in FOIA cases, to show that the agency acted reasonably in conducting its search. *See id.* at 1201. It did not clearly address an evidentiary objection based on hearsay. In any event, the Court deemed

the declaration sufficient on the ground that the affiant "was in charge of coordinating the [agency's] search and recovery efforts, and therefore she [was] the most appropriate person to provide a comprehensive affidavit." *Id.* It also noted that the affiant had, in her supervisory capacity, conducted interviews with individuals with first-hand knowledge of the facts ultimately recited in the declaration. *Id.* The circumstances here are not remotely comparable. There is no indication that Immigration Judge Slavin obtained the information she describes in the course of her official duties, either as an employee with supervisory authority or as an NAIJ official. Similarly, there is no indication in her declaration that she has first-hand knowledge of the information she relates.

Even if this Court considered the Slavin Declaration, EOIR has still failed to meet its burden of demonstrating, as required by Exemption 6, a "likelihood" that threats, harassment, or retaliatory acts will occur if EOIR discloses judges' names. *Nat'l Ass'n of Home Builders*, 309 F.3d at 35; *see also* Pl.'s Renewed Summ. J. Memo. 25-26. *Judicial Watch, Inc. v. Food & Drug Admin.*, 407 F. Supp. 2d 70 (D.D.C. 2005), *aff'd in part, remanded in part*, 449 F.3d 141 (D.C. Cir. 2006), on which EOIR relies, is not to the contrary. In *Judicial Watch*, this Court approved under Exemption 6 the withholding of names of FDA employees where those employees were involved in the agency's approval of mifepristone, an abortion-inducing drug. *Id.* at 77. The FDA provided "evidence of abortion clinic bombings" and described "websites that encourage readers to look for mifepristone's manufacturing locations and then kill or kidnap employees once found." *Id.*

EOIR contends that "[i]mmigration, like abortion, is a politically charged and highly contentious issue" and that the threats of violence here and in *Judicial Watch* are thus comparable. Defs.' Opp'n 8. The government cannot seriously believe its own argument, given

that it publishes on the internet the names of every immigration judge and immigration court administrator in the country and the work address where one can find them. *See* EOIR, Immigration Court Listing, http://www.justice.gov/eoir/eoir-immigration-court-listing (updated May 2017). Moreover, as AILA has pointed out, the public already has access to significant information about immigration judges' activities, not just in the form of their decisions, but judge-specific aggregate information, such as asylum denial rates. *See* Pl.'s Original Summ. J. Memo. 17, ECF No. 20; *see also*, *e.g.*, Transactional Records Access Clearinghouse (TRAC), Asylum Outcome Increasingly Depends on Judge Assigned (2016), http://trac.syr.edu/immigration/reports/447; TRAC, Judge-by-Judge Asylum Decisions in Immigration Courts, FY 2011-2016, http://trac.syr.edu/immigration/reports/447/include/denialrates.html. EOIR has never offered any evidence linking threats of violence or harassment to such information, despite the wide disparities among judges and the potential that this data could suggest that particular judges are too "hard" or "soft" on asylum seekers appearing before them.

## III.   EOIR's Justification for Withholding Immigration Judges' Identities Is Based on Additional Erroneous Assumptions and Unreliable Evidence.

Because Immigration Judge Slavin's declaration is fatally flawed from an evidentiary perspective and, in any event, insufficient to warrant withholding, EOIR must rest entirely on the Exemption 6 considerations described in its *Vaughn* index. EOIR's opposition attempts to justify each of those considerations and the way in which its declarant applied them, but for a discussion of the factors properly considered in Exemption 6 balancing, this Court should instead look to AILA's declaration describing each judge and his or her respective complaints and the chart attached to that declaration.

**A.     AILA's decision to forgo some judges' names cannot be used to justify EOIR's balancing approach.**

EOIR attempts to undercut AILA's objections to the agency's Exemption 6 balancing analysis by relying on the fact that AILA has now decided to forgo the identities of all but 34 judges at issue in the complaint records.  EOIR contends that this narrowing "suggests" that AILA "does not object to [EOIR's] balancing test as applied to most of the judges (i.e., those judges with fewer than three complaints over the period at issue)." Defs.' Opp'n 14.

It is unfortunate that EOIR misconstrues AILA's willingness to simplify this litigation—a willingness that this Court encouraged *both* parties to consider adopting during the status conference of November 16, 2016—in ways that AILA has expressly disclaimed. AILA has not conceded that the information it has decided to forgo is exempt from disclosure, much less for the same reasons that EOIR offers in support of withholding. *See* December Letter from AILA to EOIR 1, ECF No. 54-6; March Letter from AILA to EOIR 1, ECF No. 54-7; 4th Murray Decl. ¶ 7. AILA should not be penalized for demonstrating a practical approach to this litigation that has so far eluded the government.

**B.     EOIR misapplies numerous factors relevant to Exemption 6 balancing and considers irrelevant factors.**

**1.     *Number of complaints involved.*** In its renewed motion for summary judgment, AILA agreed that the number of complaints should be considered under Exemption 6 balancing but disagreed with EOIR that the ratio of complaints to total number of hearings—a data point relied on by EOIR—had any special significance. Pl.'s Renewed Summ. J. Mot. 27-28. EOIR contends, however, that it "cannot be disputed that, all else being equal, the likelihood of complaints increases with the number of hearings that a judge holds." Defs.' Opp'n 15.

EOIR's rebuttal suffers from significant flaws. First, not all else is equal because "not all complaints are related to particular hearings." Pl.'s Renewed Summ. J. Memo. 27. It, therefore, does *not* stand to reason that the likelihood of complaints must go up with the number of hearings that a judge holds. Second, EOIR's conclusory assertion (at 15-16) that the "number of hearings . . . is undoubtedly a relevant consideration" is belied by the fact that EOIR did not, in fact, consider the number of hearings for judges with three or fewer complaints. *See* 2d Curry Decl. ¶ 30 n.10. As AILA has pointed out, judges with three complaints against them may have higher complaint-to-hearing ratios than those with larger numbers of complaints during the time period covered by AILA's request. Pl.'s Renewed Summ. J. Memo. 27-28. EOIR offers no response to AILA's point in this regard. Third, the public interest in knowing about a large number of complaints against a judge remains regardless whether the judge was subject to those complaints because she frequently engaged in conduct that provoked complaints *or* because she presided over an unusually large number of proceedings. Either way, the judge's conduct has a significant impact on the public, a point that AILA made in its earlier papers and to which EOIR also failed to respond. *See id.* at 27.

2.    ***Substantiation of complaints.*** The public interest in identifying immigration judges extends beyond complaints that have been substantiated, particularly complaints that have been substantiated with formal discipline. *See id.* at 28-29. In its opposition, EOIR acknowledges that a complaint need not end in formal discipline for the public to have an interest in disclosure of the judge's identity, and it effectively concedes that the agency's declaration is equivocal as to whether EOIR accorded unsubstantiated complaints any weight on the public interest side of the scale. *See* Defs.' Opp'n 16. *Compare* 2d Curry Decl. ¶ 31 (stating that "the only public interest" in disclosure of unsubstantiated complaints is "in learning how the agency investigated the

complaint, which has already been fully disclosed in EOIR's production"), *with id.* (stating that there is "substantially less incremental public interest in learning the name" of a judge against whom an unsubstantiated complaint was filed).

EOIR attempts to overcome this equivocation by contending that "[w]hether one assigns 'little' or 'no' weight to a single, unsubstantiated complaint does not fundamentally alter the balancing assessment." Defs.' Opp'n 16-17. For support, EOIR relies on *Oguaju v. United States*, 288 F.3d 448, 450 (D.C. Cir. 2002), but that decision was vacated by the Supreme Court. *See Oguaju v. U.S. Marshals Serv.*, 541 U.S. 970 (2004). Although the D.C. Circuit later reinstated its judgment, its subsequent opinion does not contain the language on which EOIR relies. *See Oguaju v. United States*, 378 F.3d 1115 (D.C. Cir. 2004).

In any event, EOIR's argument is not responsive to the situation at hand. All of the remaining judges have been subject to at least three complaints, in most cases many more, and many have a trail of unsubstantiated as well as substantiated complaints against them. *See, e.g.*, 4th Murray Decl., Exh. A at 6 (indicating that 12 of 32 complaints against Judge PBZ were resolved by dismissal). In these circumstances, whether the public interest in disclosure of a judge's name is zero or something greater than zero with respect to an unsubstantiated complaint is significant. Moreover, EOIR does not wrestle with AILA's contention that the weight of unsubstantiated complaints in this context is greater than it might otherwise be because the integrity of the complaint process is in doubt. *See* Pl.'s Renewed Summ. J. Memo. 28.

3.    *In-court versus out-of-court conduct.* In its opposition, EOIR now confirms its view that all complaints other than those expressly labeled as "out-of-court conduct" in the chart of immigration judges that AILA introduced, *see* 4th Murray Decl., Exh. A, involved conduct "during the course of the judge's performance of his duties as it relates to case adjudications,"

15

which EOIR terms "in-court conduct." Defs.' Opp'n 17 (internal quotation marks omitted). It also confirms that for each of these categories of complaints involving what it deems in-court conduct, "judges have a comparatively weaker privacy interest" than for the relatively rare complaints involving conduct that occurred out of court. *Id.*

EOIR argues only that "the mere fact that the judges' in-court conduct is known to some members of the public does not negate the judge's privacy interest in preventing further dissemination to the public at large." *Id.* EOIR's assertion sweeps far too broadly. There are certainly circumstances in which personal information about an individual is not strictly confidential but is nevertheless exempt from disclosure under FOIA Exemption 6. *Horowitz v. Peace Corps*, 428 F.3d 271 (D.C. Cir. 2005), on which EOIR relies, provides such an example. *Horowitz* held that a private individual's name need not be disclosed under FOIA Exemption 6 in relation to "a disputed sexual incident" with a Peace Corps volunteer that the private individual "claim[ed] was not consensual," despite the fact that the private individual had revealed his allegation of the incident to two other Peace Corps workers. *Id.* at 280. *Horowitz*, however, is a far cry from the circumstances here, where the government does not dispute that the withheld names relate to actions taken by immigration judges in the course of their official duties as federal employees. In many if not most cases, those actions will have been taken in open court or in public documents.

EOIR emphasizes that some complaints contain "exceptionally sensitive and personal" allegations that would cause substantial embarrassment to a judge or his or her family and that "[t]hose types of allegations more likely refer to out-of-court conduct." Defs.' Opp'n 18 (internal quotation marks omitted). This point is irrelevant. Although EOIR's *Vaughn* index occasionally discusses the potential for significant embarrassment to a judge or his or her family due to the

16

sensitive nature of a complaint, *see*, *e.g.*, *Vaughn* Index, Doc. 54-3, at 69 (describing factors relevant to identifying Judge KMB), EOIR's declarant has not invoked this concern in its discussion of the 34 judges who remain at issue in the litigation, *see generally id.*

    **4.**     ***Judge's employment status.*** In its renewed motion for summary judgment, AILA acknowledged the D.C. Circuit's suggestion, in its opinion in this case, that an immigration judge who has retired has a greater privacy interest in preventing disclosure of her identity than does a currently sitting immigration judge, and the corresponding public interest in disclosure may be reduced. *See AILA*, 830 F.3d at 675 (stating that "the public interest likely would be more pronounced in the case of a sitting immigration judge, who continues to make decisions as an employee of the Department of Justice, than in the case of a former judge"). However, AILA emphasized three reasons that the public interest in disclosure of names of immigration judges who are no longer on the bench remains high: (1) when an immigration judge resigns from federal service, the propriety of decisions reached by that judge may continue to be litigated for years to come; (2) because EOIR urges some judges to retire or resign to avoid formal disciplinary proceedings, it is *more* likely that judges subject to many previous complaints during the time period covered by AILA's request will be retired; and (3) for Judge GOE, who left the bench but remains a DOJ employee, public knowledge of allegations of wrongdoing, including allegations of bias, would continue to inform the public about what the government is up to *today*. Pl.'s Renewed Summ. J. Memo. 30-31.

    EOIR's *Vaughn* index offers no indication that EOIR took these particular considerations into account when conducting its own Exemption 6 balancing inquiry, and EOIR does not specifically dispute—or even discuss—any of them in its opposition. Rather, EOIR asserts that AILA's reasoning with respect to a judge's employment status constitutes a "disagree[ment]"

with the D.C. Circuit's rationale. Defs.' Opp'n 18. To the contrary, it is perfectly consistent to recognize—as a relative matter—that the public interest in disclosure of immigration judges' names may be lessened for judges no longer on the bench, as both AILA and the D.C. Circuit did, while demonstrating that the public interest in disclosure nonetheless remains high.

     **5.**     ***Protection of other individuals' privacy interests.*** EOIR contends that it considered whether disclosure of a judge's name "would invade the privacy of not only the judge, but also court personnel or the community." *Id.* (citing 2d Curry Decl. ¶ 35). As an initial matter, EOIR's declarant relied on this factor with respect to only 2 of the 34 judges whose names remain at issue in this litigation, so this factor is irrelevant for the vast majority of judges at issue. *See Vaughn* Index, Doc. 54-3, at 43, 71.

     Moreover, EOIR's justification for those two judges is far too vague to meet its burden of demonstrating—in EOIR's own words—a "'substantial probability'" that disclosing judges' names will also disclose the names of third parties that have so far been withheld. Defs.' Opp'n at 19 (quoting *Nat'l Ass'n of Retired Federal Employees v. Horner*, 879 F.2d 873, 878 (D.C. Cir. 1989)); *see also*, *e.g.*, *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002) (recognizing that an agency must show a "likelihood" of a clearly unwarranted invasion of privacy). Specifically, EOIR attempts to justify its withholding of Judge GEP's name based on the circumstances of Complaint 456, which involved a dispute between two immigration judges. Although it contends that disclosure "may result in significant embarrassment to the other judge," *Vaughn* Index, Doc. 54-3, at 43, it does not provide any explanation why this third party, whose name was also omitted from the records, could be identified from the nature of the complaint or the disclosure of Judge GEP's name. EOIR's *Vaughn* index is similarly vague when discussing why the name of Judge KSI, who was subject to a complaint "by an EOIR employee

who alleged that it was extremely difficult to work with the judge," would reveal the identities of other EOIR employees. *Id.* at 71 (Complaint 534).

The more general discussion by EOIR's declarant of potential identification of third parties sheds no further light on the matter. Indeed, the declarant's assertion that "[b]ecause of the [three-letter identifier] key EOIR has provided, revealing the judge's identifying information will reveal all the complaints against the judge and by reference the identities of the complainants or other persons involved in the incidents at issue" cannot possibly be true. 2d Curry Decl. ¶ 35. As AILA has pointed out, other than the names of individuals involved in the resolution of complaints, EOIR redacted the names of third parties—such as complainants, DHS employees, individuals appearing before the immigration judges, and those individuals' attorneys—that appeared in the complaint files, and AILA has not challenged those redactions. Pl.'s Renewed Summ. J. Memo. 31.

EOIR's counsel comes up with another justification, claiming that "[i]n some smaller and more remote jurisdictions," disclosure of a judge's name "might . . . allow the public to deduce information about third parties . . . by process of elimination." Defs.' Opp'n 18. This post hoc rationale is not supported by any evidence, much less evidence specific to Judges GEP and KSI.

**6.** ***Complaint referrals to other government agencies.*** EOIR's declarant contended that, in instances where complaints were referred to DOJ's Office of Professional Responsibility or Office of Inspector General and referred back to EOIR, "the public interest is satisfied by the portions of the records that EOIR already disclosed, which articulate the nature of the complaint, identify the entities that were involved in receiving and investigating the complaint, and the disposition of the complaint." 2d Curry Decl. ¶ 36. EOIR thus appeared to take the position that there is *no* public interest in disclosure of these names. AILA does not object, as EOIR contends,

*see* Defs.' Opp'n 19, to considering in the Exemption 6 balancing process whether a complaint was referred to DOJ's Office of Professional Responsibility or Office of Inspector General and referred back to EOIR. Indeed, as AILA has explained, "[i]f anything, the public interest in [referred] complaints is even stronger in light of the roles that the Office of Professional Responsibility and Office of Inspector General play in policing federal employees' conduct." Pl.'s Renewed Summ. J. Memo. 32.

Rather, AILA objected in its cross-motion to the position apparently taken by EOIR's declarant that no additional public interest remained in revealing the names of judges subject to complaints that were referred to OIG or OPR. Although EOIR asserts that AILA has "misstate[d]" its position, it does not wrestle with the fact that its declarant stated that in cases of referrals, "the public interest *is satisfied* by the portions of the records that EOIR already disclosed." 2d Curry Decl. ¶ 36 (emphasis added). AILA thus rests on its earlier contentions regarding the agency's flawed analysis.

7.   *Age of complaints.* As AILA explained in its renewed motion for summary judgment, the age of complaints (and behavior discussed therein) played a significant role in EOIR's judge-specific *Vaughn* index, although this factor was not expressly discussed in the Second Curry Declaration. *See generally Vaughn* Index, Doc. 54-3 (frequently describing how many "years ago" complaints were dismissed). Out of caution, AILA objected to consideration of this factor, but EOIR has now confirmed that it "agree[s] that the age of the complaints do[es] not appear to have an appreciable impact on either side of the Exemption 6 scale." Defs.' Opp'n 19. The Court, therefore, should not consider age in resolving this case.

20

## CONCLUSION

For the reasons described herein, AILA's renewed motion for summary judgment should be granted and the defendants' renewed cross-motion for summary judgment denied.

Respectfully submitted,

/s/ Julie A. Murray
Julie A. Murray
D.C. Bar No. 1003807
Allison M. Zieve
D.C. Bar No. 424786
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
jmurray@citizen.org

Melissa Crow
D.C. Bar No. 453487
AMERICAN IMMIGRATION COUNCIL
1331 G Street NW
Washington, DC 20005
(202) 507-7523

Dated: August 7, 2017                     *Counsel for Plaintiff*