**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **AMERICAN IMMIGRATION LAWYERS ASSOCIATION**,<br><br>Plaintiff,<br><br>v.<br><br>**EXECUTIVE OFFICE FOR IMMIGRATION REFVIEW, U.S. DEPARTMENT OF JUSTICE**, *et al.*,<br><br>Defendants. | Case No. 13-cv-00840 (CRC) |

## MEMORANDUM OPINION

Since this case has been here before, the Court will only briefly recount the relevant

factual background.  In November 2012, the American Immigration Lawyers Association

("AILA") filed a request under the Freedom of Information Act ("FOIA") with the Department

of Justice's Executive Office for Immigration Review ("EOIR") seeking all complaints filed

against immigration judges employed by EOIR and records reflecting the resolution of those

complaints for 2009 through November 2012.  Compl. ¶ 18.  When EOIR did not timely disclose

the requested documents, AILA brought suit.  Id. ¶ 26.  EOIR eventually disclosed some 16,000

pages of records to AILA but, as relevant here, it redacted the names of the individual judges,

replacing each judge's name with a unique three-letter code.  See Am. Immigration Lawyers

Ass'n v. Exec. Office of Immigration Review, 830 F.3d 667, 672 (D.C. Cir. 2016) ("AILA II").

EOIR argued that Exemption 6 of FOIA—which protects personnel records from disclosure—

permitted these redactions.  See id.

The parties briefed summary judgment and, in December 2014, the Court granted

summary judgment to EOIR, upholding EOIR's redaction of the names under Exemption 6.  See

Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review, 76 F. Supp. 3d 184, 192 (D.D.C. 2014). The Court held that EOIR's blanket withholding was justified because the incremental public interest in knowing the judges' identities did not outweigh the privacy interests of the judges given their status as non-supervisory civil servants. Id. at 187.

AILA appealed, and the D.C. Circuit reversed. See AILA II, 830 F.3d at 676. The panel reasoned that EOIR could not defend its withholding with such sweeping categorization. Id. Since each judge had a different privacy interest given the varying facts about that judge and the complaints filed against her, the panel concluded that EOIR needed to provide a "particularized showing" for individual judges or categories of judges to justify withholding under Exemption 6. Id. The D.C. Circuit thus remanded for this Court to assess the balance of public and privacy interests for each judge or category of judges in the first instance. Id. The parties have now once more filed briefs for summary judgment on whether that balance should tip towards the disclosure of the names of a subset of the judges whose records were released. The Court will grant each motion in part and deny each motion in part: after considering the balance of privacy interests versus public interests, some of the judges' names must be disclosed while others may remain withheld.

## I.   Legal Background

Summary judgment is appropriately granted if a party shows that there are no genuine issues of material fact and that the party is entitled to judgement as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden of proving it is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Additionally, the Court examines the facts and draws all reasonable inferences in favor of the nonmoving party. Robinson v. Pezzat, 818 F.3d 1, 8 (D.C. Cir. 2016). "FOIA cases typically and appropriately are decided on motions for

summary judgment." <u>Defs. of Wildlife  v. U.S. Border Patrol</u>, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).

FOIA "seeks 'to establish a general philosophy  of full agency disclosure  unless information  is exempted under clearly delineated statutory language.'" <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 136 (1975) (citation omitted).  Thus, exemptions  to FOIA are to be narrowly construed.  <u>See, e.g.</u>, <u>DiBacco v. U.S. Army</u>, 795 F.3d 178, 183 (D.C. Cir. 2015).  As relevant here, Exemption  6 of FOIA withholds  from disclosure  "personnel and medical files and similar  files the disclosure  of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).

Courts apply a two-step analysis to determine if records fall within  the scope of Exemption  6.  <u>See, e.g.</u>, <u>AILA II</u>, 830 F.3d at 673.  At the initial  step, the Court must determine whether the records at issue are the type of records covered by Exemption  6.  <u>Id.</u>  If so, the Court then determines whether "disclosure  would constitute a clearly unwarranted invasion  of personal privacy."  <u>Id.</u> (citation  omitted).  The Court uses a two-part test to perform the second step in the analysis, determining  whether disclosure  would involve  an unwarranted invasion  of personal privacy.  First, the Court determines if disclosure  of the records "would  compromise a substantial,  as opposed to a <i>de minimis</i>, privacy  interest."  <u>Id.</u> at 674 (citation  omitted).  If so, the Court then weighs the privacy interest at stake compared to the public  interest in disclosure.  <u>Id.</u> If the public  interest outweighs the privacy interest, then disclosure  is warranted; otherwise, withholding  is permissible.  <u>Id.</u>

It is undisputed  here that the records at issue fall within  the scope of Exemption  6.  <u>See</u> <u>AILA II</u>, 830 F.3d at 673.  Nor does AILA dispute that disclosure  would compromise a

substantial, not *de minimis*, privacy interest.  See id.  Consequently, the sole issue that remains

for the Court to address is the balancing of interests.  See id. at 674.

## II.   Analysis

AILA has narrowed the scope of this case to 34 of the original 201 immigration judges

who had disciplinary records responsive to its FOIA request.  Pl.'s Mem. Supp. Mot. Summ. J.

("Pl.'s MSJ") at 1.[1]  It argues that Exemption 6 does not provide for the withholding of any of

the judges' names.  Id. at 18.  In turn, EOIR has again contended that the withholding of *all* of

the judges' names is appropriate under Exemption 6.  Defs.' Mem. Supp. Renewed Mot. Summ.

J. ("Defs.' MSJ") at 13.  This time, however, EOIR has provided an explanation for withholding

each individual judge's name rather than a blanket justification.  Id. at 15–16.  Since AILA does

not argue that EOIR has failed to perform the particularized analysis required by the D.C. Circuit

in AILA II, see Pl.'s Reply Supp. Mot. Summ. J. ("Pl.'s Reply") at 1, all that remains for the

Court to determine is whether the withholding of each judge's name is justified under Exemption

6.

To resolve this question, the Court must weigh the public interest in disclosure against

each judge's privacy interest.  See AILA II, 830 F.3d at 674.  As the D.C. Circuit recognized, the

"only relevant public interest here" is "the extent to which disclosure would serve the core

purpose of the FOIA, which is contributing significantly to public understanding of the

operations or activities of the government."  Id. (quoting Dep't of Defense v. FLRA, 510 U.S.

487, 495 (1994)).  Knowledge of the identity of a particular judge "would enable the public to

examine her official actions (including decisions), both past and future, and to assess any

---

[1] AILA has not conceded that the withholding of the judges' names that it no longer seeks
disclosed was proper.  See Pl.'s MSJ at 14.

possible implications of those complaints for the conduct of her official responsibilities." Id. at 675–76. On the other side of the scale, the judges clearly have a privacy interest in their personnel records and any allegations of impropriety or disciplinary actions taken against them. Cf. Dep't of Air Force v. Rose, 425 U.S. 352, 377 (1976) ("[I]dentification of disciplined cadets . . . could expose the formerly accused men to lifelong embarrassment, perhaps disgrace, as well as practical disabilities, such as loss of employment or friends." (citation omitted)). The ultimate question is "whether, given the information already disclosed by EOIR, the 'incremental value' served by disclosing an immigration judge's name outweighs that person's privacy interest." AILA II, 830 F.3d at 674. Here, EOIR has already disclosed a large quantity of information, including details on the nature of every complaint filed against each judge and the resolution of each complaint. See generally Defs.' MSJ Ex. A, Ex. 1 (revised Vaughn index).

In performing its balancing analysis, the Court is guided by the factors identified by the D.C. Circuit in its decision in AILA II: (1) "whether [the complaint] is substantiated or unsubstantiated"; (2) "whether [the complaint is] related to serious issues or comparatively trivial ones"; (3) "whether [the complaint is] about immigration judges' conduct on the bench or their conduct outside the workplace"; (4) "whether [the judge is] a sitting immigration judge or someone no longer on the bench"; (5) "whether a judge . . . has faced only one complaint or a judge has repeatedly been the target of complaints"; and (6) "whether the judge has been subject to some type of discipline or has avoided disciplinary action (and the reasons why)." 830 F.3d at 675. The Court will also consider the number of complaints relative to the number of hearings a judge conducted during the relevant time period, specifically whether the judge presided over a

particularly large or small number of hearings as compared to other immigration judges.[2] Finally, the Court has taken into account any additional factors that might be relevant, such as whether a complaint raises particularly embarrassing or sensitive allegations.

The Court has reviewed EOIR's revised *Vaughn* index and generally weighed the key factors as follows:

- The public has a comparatively higher interest when there is a greater proportion of substantiated complaints versus unsubstantiated complaints;[3]

- The public has a comparatively higher interest when the complaints contain serious allegations as compared to less-serious ones, and one indication of the gravity of the complaint is the level of discipline applied (e.g., oral counseling as compared to suspension);[4]

- The public has a comparatively higher interest when the allegations concern in-court behavior, whereas the judge has a comparatively higher privacy interest when the allegations concern out-of-court behavior such as a judge's interactions with his staff;

---

[2] The Court believes that it is appropriate to consider the number of complaints with respect to the number of hearings a judge has presided over, which serves as a proxy for how many cases the judge has presided over or how much time the judge spends on the bench. While AILA argues it is more appropriate to consider the number of complaints in the abstract, the Court disagrees. Clearly, there is a difference between a judge receiving 10 complaints while presiding over 40,000 hearings and a judge receiving 10 complaints while presiding over 4,000 hearings. The latter scenario suggests a more serious pattern of potential misconduct given the frequency of complaints compared to a smaller-than-average number of hearings, whereas in the former scenario the large number of complaints may simply reflect the higher-than-average number of hearings as opposed to any pattern of misconduct on the part of the judge that might indicate a higher public interest warranting disclosure.

[3] When the Office of the Chief Immigration Judge receives an allegation that an immigration judge engaged in inappropriate conduct, it is entered into the Immigration Judge Complaint System as a "complaint" and then investigated. See Defs.' First Mot. Summ. J. Ex. 2 ("Keller Decl."), ¶¶ 19, 27 (Declaration of Assistant Chief Immigration Judge Mary Beth Keller).

[4] In response to a complaint, the supervising Assistant Chief Immigration Judge ("ACIJ") can impose progressive levels of discipline, ranging from non-disciplinary corrective actions such as counseling, training, or a performance improvement plan to formal discipline such as reprimands or suspensions. Keller Decl. ¶ 28.

- The public has a comparatively higher interest in disclosure of the name of a sitting judge, whereas a retired judge has a comparatively higher privacy interest, see AILA II, 830 F.3d at 675;

- The public has a comparatively higher interest in disclosure when the judge has been subject to numerous complaints as opposed to a judge subject to few complaints, particularly when the judge has presided over a lower-than-average number of hearings, see id.[5]

On the whole, the Court believes that the balancing of public interests and privacy interests typically weighs towards disclosure in "the case of a sitting judge with a substantial number of serious and substantiated complaints," AILA II, 830 F.3d at 675, and against disclosure in the case of a retired judge with a small number of substantiated complaints. After reviewing the revised *Vaughn* index and the declarations filed by both parties, the Court holds that the withholding of 20 judges' names is proper under Exemption 6, but that the withholding of the other 14 judges' names is not and thus those names must be disclosed.

A. Withholding Proper Under Exemption 6

The Court concludes that EOIR properly withheld the following judges' names (as identified by the three-letter designation assigned by EOIR):

**1. ATQ:** ATQ is an active judge who received eight complaints and held 23,000 hearings during the relevant time period. All eight complaints were substantiated: two resulted in oral counseling, five in written counseling, and one in a suspension. However, three of these— including the complaint that resulted in a suspension—related to out-of-court conduct rather than in-court conduct, which implicates a higher privacy interest. While the judge is active, there are

---

[5] Based on the information in EOIR's revised *Vaughn* index, the Court generally considered a hearing load of <10,000 to be lower-than-average, 10,000-20,000 to be average, and >20,000 to be higher-than-average. See generally Defs.' MSJ Ex. A, Ex 1 (revised *Vaughn* index).

a small number of in-court-related complaints compared to a higher-than average number of hearings. Given these factors, as well as the amount of information already disclosed, the incremental interest in disclosure of the name does not outweigh the judge's privacy interest.

**2. CGP**: CGP is an active judge who received five total complaints and held 9,000 hearings during the relevant time period. All five of these complaints resulted solely in oral counseling and involved allegations regarding the judge's demeanor in court. The Court concludes that withholding was proper. While the judge is active, the judge received a smaller number of complaints and they were resolved with oral counseling, indicating less-serious allegations. In light of these factors and the information already released concerning the nature of the complaints, the incremental interest in disclosure of the name does not outweigh the judge's privacy interest.

**3. DPY**: DPY is an active judge who received a total of seven complaints and held 15,000 hearings during the relevant time period. Six of the seven complaints were unsubstantiated, dismissed for failure to state a claim, or dismissed as merits-based. The one substantiated complaint was investigated and EOIR found no issues with the judge's tone, but issued an oral counseling with suggestions for improvement. The Court concludes that withholding was proper. While the judge is active, only one of the seven complaints was substantiated, representing a small number of substantiated complaints compared to an average number of hearings. Additionally, the ACIJ did not find any errors in the one non-dismissed complaint and resolved the complaint with oral counseling, indicating less serious allegations. These factors, combined with the amount of information already released, indicate that the incremental interest in disclosure of the name does not outweigh the judge's privacy interests.

**4. DWL:** DWL is an active judge who received a total of three complaints.[6]   One complaint was dismissed as unsubstantiated.   Another was resolved with a written reprimand. The third the ACIJ reviewed and found no evidence of bias or inappropriate assumptions, but still issued a counseling to the judge.   Both non-dismissed complaints concerned in-court behavior.   The Court concludes withholding was proper.   While the judge is active, few complaints were filed and only two were substantiated—one of which ACIJ found no evidence of the more serious allegations contained therein.   Given these factors, and the amount of information already released, the incremental interest in disclosure of the name does not outweigh the judge's privacy interests.

**5. GNE:** GNE is a retired judge who received a total of six complaints and held 43,000 hearings during the relevant time period.   Two complaints were dismissed as unsubstantiated or merits-related.   One complaint, which alleged out-of-court behavior, resulted in a suspension. Three complaints—two of which were also related to out-of-court behavior—resulted in written counseling.   The Court concludes that withholding was proper.   The judge is retired. Additionally, most of the substantiated complaints—including the most serious one—related to private, out-of-court behavior, which touches upon a higher privacy interest.   Finally, this is a smaller number of substantiated complaints compared to a much higher-than-average workload. In light of these factors, and the amount of information already released, the incremental interest in disclosure of the name does not outweigh the judge's privacy interests.

**6. GUC:** GUC is an active judge who received a total of nine complaints and held 30,000 hearings during the relevant time period.   Six of these complaints were dismissed as

---

[6] The *Vaughn* index does not specify how many hearings DWL heard.

unsubstantiated or merits-related.  The three substantiated complaints resulted in oral counseling; two concerned out-of-court behavior.  The Court concludes withholding was proper.  While the judge is active, most of the complaints were not substantiated and the three substantiated complaints constitute a small number compared to a higher-than-average number of hearings. Additionally, most of the substantiated complaints involved out-of-court rather than in-court behavior, which implicates a higher privacy interest. Given these factors, and the amount of information already released, the incremental interest in disclosure of the name does not outweigh the judge's privacy interest.

   **7. JIT:**  JIT is a retired judge who received a total of eight complaints and held 14,000 hearings during the relevant time period.  Two complaints were dismissed as unsubstantiated. Two complaints, both concerning in-court behavior, were resolved with oral counseling.  One complaint was resolved with written counseling and training, another with a suspension, one with a written reprimand, and one with leave restrictions.  The Court concludes that withholding was proper.  Of these complaints, three—the ones resolved with leave restrictions, a written reprimand, and written counseling and training—relate to out-of-court behavior, which implicates a higher privacy interest.  Additionally, the judge is retired, and the substantiated complaints involving in-court behavior (three) are few compared to an average number of hearings.  As such, and in light of the amount of information already released, the incremental interest in disclosure of the name does not outweigh the judge's privacy interest.

   **8. LLN:** LLN is a retired judge who received a total of eight complaints and held 14,000 hearings during the relevant time period. Three of these complaints were dismissed as unsubstantiated, as merits-related, or for failure to state a claim.  The remaining five complaints concerned in-court behavior and were resolved with oral counseling.  The Court concludes that

withholding was proper. For one, the judge is retired. Additionally, there were only five substantiated complaints and all resulted in oral counseling, indicating less-serious allegations. Combining these factors with the amount of information already released, the incremental interest in disclosure of the name does not outweigh the judge's privacy interest.

**9. OPP:** OPP is an active judge who received a total of five complaints and held 3,000 hearings during the relevant time period. All five complaints were resolved with oral counseling. The Court concludes that withholding was proper. While the judge is active, there were only a handful of complaints and all were resolved with oral counseling, suggesting less serious allegations. Given these factors and the amount of information already released, the incremental interest in disclosure of the name does not outweigh the judge's privacy interest.

**10. PSI:** PSI is an active judge who received a total of thirteen complaints and held 11,000 hearings during the relevant time period. Seven of these complaints were dismissed as unsubstantiated, merits-related, or resolved. The remaining six complaints, all of which involved in-court behavior, were resolved with an oral counseling. The Court concludes that withholding was proper. While the judge is active, less than half of the filed complaints were determined to be substantiated. The substantiated complaints involved less-serious allegations, as indicated by the fact they were resolved with oral counseling. Given the small proportion of substantiated complaints, the nature of those complaints, and the information already released, the incremental interest in disclosure of the name does not outweigh the judge's privacy interest.

**11. QVI:** QVI is an active judge who received a total of eight complaints and held 7,000 hearings during the relevant time period. Two of these complaints were dismissed as merits-related. The remaining were resolved with written or oral counseling. The Court concludes that withholding was proper. The total number of substantiated complaints is smaller, even though

the judge held a lower-than-average number of hearings.  Additionally, the complaints did not merit more than written counseling, suggesting the allegations are not as grave.  As such, the incremental interest in disclosure of the name does not outweigh the judge's privacy interest.

**12. RCW:** RCW is a retired judge who received a total of eight complaints and held 7,000 hearings during the relevant time period.  Four of these complaints were dismissed as unsubstantiated or for unspecified reasons.  Three were dismissed as corrective action already taken, namely the case's remand from the Board of Immigration Appeals.  The final case was dismissed with no action necessary due to retirement, and involved out-of-court conduct.  The Court concludes that withholding was proper.  Half of the complaints were dismissed, and the remaining involved no discipline, suggesting the allegations were less serious.  Additionally, the judge is retired.  Considering the low proportion of substantiated complaints, the nature of the complaints, the retired status of the judge, and the information already released, the incremental interest in disclosure of the name does not outweigh the judge's privacy interest.

**13. SQX:** SQX is an active judge who received a total of eight complaints and held 19,000 hearings during the relevant time period. Two complaints were dismissed as unsubstantiated or merits-related.  Five were resolved with oral counseling and the final one was resolved with written counseling.  All of the substantiated complaints involved in-court behavior.  The Court concludes that withholding was proper.  While the judge is active, the number of substantiated complaints is smaller compared to an average number of hearings.  Further, most of the complaints resulted in oral counseling, indicating less-serious allegations.  Given these factors and the amount of information already released, the incremental interest in disclosure of the name does not outweigh the judge's privacy interest.

**14. TAD:** TAD is an active judge who received a total of five complaints and held 18,000 hearings during the relevant time period. Of these complaints, two were dismissed as unsubstantiated. One was resolved with oral counseling and the remaining two were resolved with written reprimands. The Court concludes that withholding was proper. Almost half of the complaints were unsubstantiated. The three substantiated complaints are a small number compared to a greater number of hearings. While the judge is active, in light of the small number and nature of the complaints and the amount of information already released, the incremental interest in disclosure of the name does not outweigh the judge's privacy interest.

**15. VED:** VED is an active judge who received a total of six complaints and held 15,000 hearings during the relevant time period. Three of these complaints were dismissed as unsubstantiated or merits-related. Two of the remaining complaints alleged in-court behavior, and one was resolved with oral counseling and the other with written counseling. The final complaint was resolved with a letter of reprimand, but concerned out-of-court behavior. The Court concludes that withholding was proper. Only half of the complaints were substantiated, and only two of those involved in-court behavior. The most serious of the allegations—that which resulted in a letter of reprimand—involved out-of-court behavior, which involves a higher privacy interest. Considering the smaller number of in-court-related substantiated complaints, as well as the other factors and the information already released, the incremental interest in disclosure of the name does not outweigh the judge's privacy interest.

**16. VJL:** VJL is an active judge who received a total of eight complaints and held 21,000 hearings during the relevant time period. Of these, four were dismissed as merits-related or unsubstantiated. Three were resolved with oral counseling and the fourth with written counseling; all four were related to in-court behavior. The Court concludes that withholding was

proper.  Half of the complaints  were not substantiated.  The four substantiated  complaints  are a

smaller  number of complaints  compared to a higher-than-average  number of hearings.

Additionally,  most were resolved with oral counseling,  indicating  less-serious allegations.  While

the judge is active, given the other factors and the amount of information  already released, the

incremental  interest in disclosure  of the name does not outweigh  the judge's privacy interest.

**17. YEL:**  YEL is an active judge  who received a total of seven complaints  and held

20,000 hearings  during the relevant time period.  Of these, four were dismissed as

unsubstantiated  or merits-related  (in one, the ACIJ did issue oral counseling  nonetheless).  The

remaining  three were resolved with written counseling.  The Court concludes that withholding

was proper.  Less than half of the complaints  were substantiated,  and the three substantiated

complaints  are a smaller  amount compared to an above-average  number of hearings.  Despite the

fact that the judge is active, the other factors and the amount of information  already released

indicates  that the incremental  interest in disclosure  of the name does not outweigh  the judge's

privacy  interest.

**18. YKB:**  YKB is an active judge  who received a total of eight complaints  and held

17,000 hearings  during the relevant time period.  Three of these complaints  were dismissed  as

merits-based  or disproven.  The remaining  five were resolved with oral counseling  and related to

in-court  complaints.  The Court concludes that withholding  was proper.  Almost half of the

complaints  were not substantiated,  and the remaining  involved  less-serious allegations  as

indicated  by their resolution  with oral counseling.  While the judge is active, the judge received a

smaller  number of substantiated  complaints  but held an average to above-average  number of

hearings.  Given these factors and the amount of information  already released, the incremental

interest in disclosure  of the name does not outweigh  the judge's privacy interest.

**19. YWK:** YWK is a retired judge who received a total of seven complaints and held 6,000 hearings during the relevant time period. One of these complaints was dismissed for an unspecified reason; the other six involved in-court behavior and were resolved with oral counseling. The Court concludes that withholding was proper. For one, the judge is retired. Additionally, all of the complaints were resolved with oral counseling, indicating the allegations are less serious. Given these factors, and the amount of information already disclosed, the incremental interest in disclosure of the name does not outweigh the judge's privacy interest.

**20. ZMO:** ZMO is a retired judge who received a total of ten complaints and held 16,000 hearings during the relevant time period. Of these, four were dismissed as substantiated or already resolved. Five related to in-court behavior and were resolved with oral counseling. The remaining complaint was resolved with written counseling, but involved out-of-court behavior. The Court concludes withholding was proper. This judge is retired, and almost half of the complaints were not substantiated. Additionally, the most serious complaint involved out-of-court behavior, which implicates a higher privacy interest. All of the complaints that involved in-court allegations were resolved on oral counseling, indicating they involved less serious allegations. In light of these factors and the amount of information already released, the incremental interest in disclosure of the name does not outweigh the judge's privacy interest.

    B.  <u>Withholding Not Proper Under Exemption 6</u>

The Court concludes that EOIR must disclose the following judges' names because withholding was not proper under Exemption 6 based on the factors identified by the D.C. Circuit in <u>AILA II</u>:

**1. FRW:** FRW is a judge who was terminated during the judge's trial period and who received a total of eighteen complaints with an unspecified number of hearings during the

relevant time period.  All of the complaints involved in-court conduct and were closed with no action necessary due to the judge's termination.  The Court concludes that withholding was improper.  While the judge is not an active judge, this is a large number of complaints in a trial period.  Furthermore, the judge's termination suggests the complaints were not frivolous.  In light of these factors, the incremental interest in disclosure does outweigh the judge's privacy interest.

**2. GEP:** GEP is a retired judge who received a total of twenty-one complaints and held 13,000 hearings during the relevant time period.  One complaint was dismissed as unsubstantiated.  Two were dismissed as "resolved by complaint."  Eighteen complaints were substantiated:  seventeen, all related to in-court behavior, resulted in oral counseling.  One, related to out-of-court behavior, resulted in a five-day suspension.  The Court concludes that withholding was improper.  While the judge is retired, a high proportion of complaints were substantiated and related to in-court behavior.  Though the level of discipline imposed was only oral counseling, the number of substantiated complaints is high compared to an average number of hearings.  In light of this large number of substantiated complaints regarding in-court conduct, the incremental interest in disclosure does outweigh the judge's privacy interest.

**3. GOE:** GOE is no longer an active judge but is still employed at the Department of Justice, and received a total of thirteen complaints and held 16,000 hearings during the relevant time period.  Of these, three were dismissed as unproven or unsubstantiated.  One was dismissed as corrective action already taken.  One complaint resulted in a six-day suspension and another in a fourteen-day suspension.  Four other complaints were resolved with the six-day suspension, and another resulted in oral counseling.  The final complaint resulted in the judge's transfer to another position within the Department of Justice.  The Court concludes that withholding was

improper.  Four of the complaints, including the one that resulted in a six-day suspension, do involve out-of-court behavior and thus implicate higher privacy interests.  However, the remaining complaints—including the one that resulted in a fourteen-day suspension, and two of the four resolved with the six-day suspension—related to in-court behavior and thus involve higher public interest in disclosure.  Additionally, the judge continues to be employed by the government.  Finally, the high level of discipline involved, namely multiple suspensions, indicate the substantiated allegations are more serious.  Given these factors, the incremental interest in disclosure does outweigh the judge's privacy interest.

 **4. HKX:**  HKX is a retired judge who received a total of thirty complaints and held 8,000 hearings during the relevant time period.  Three of these complaints were dismissed as merits-based or unsubstantiated.  The remaining twenty-seven complaints were closed with no action necessary due to the judge's retirement; all involved in-court complaints.  The Court concludes that withholding was improper.  While the judge is retired and most of the complaints were never substantiated, there are a large number of complaints compared to a lower-than-average number of hearings.  These complaints also all involved in-court behavior.  As such, the incremental interest in disclosure does outweigh the judge's privacy interest.

 **5. IQV:**  IQV is a retired judge who received a total of twenty-five complaints and held 23,000 hearings during the relevant time period.  Five complaints were dismissed as merits-related.  Six were resolved on oral counseling and another six on written counseling.  One resulted in performance counseling and the remaining seven were resolved with a fourteen-day suspension.  The Court concludes that withholding was improper.  While the judge is retired, most of the complaints were substantiated and involved in-court behavior.  Additionally, the allegations are likely more serious given the level of discipline—written counseling and a

suspension—ultimately imposed.  There are also a large number of complaints, even considering the higher-than-average number of hearings.  Given these factors, the incremental interest in disclosure does outweigh the judge's privacy interest.

**6. KMJ:**  KMJ is an active judge who received a total of twenty-six complaints and held 14,000 complaints during the relevant time period.  Six were dismissed for failure to state a claim or as unsubstantiated or disproven.  The remaining twenty were resolved with a combination of oral counseling, written counseling, and written reprimands.  The Court concludes that withholding was improper.  This is an active judge with numerous complaints, over three-quarters of which were substantiated.  Additionally, the complaints all relate to in-court behavior and involve escalating levels of discipline, suggesting more serious allegations or a pattern of improper behavior.  As such, the incremental interest in disclosure does outweigh the judge's privacy interest.

**7. KSI:**  KSI is an active judge who received thirteen total complaints and held 14,000 hearings during the relevant time period.  Of those, four were dismissed as unsubstantiated, as merits-related or for failure to state a claim.  Three were resolved with oral counseling, one with training, and five with written counseling.  All related to in-court behavior.  The Court concludes that withholding was improper.  The judge is active and received numerous complaints despite having only an average number of hearings.  Three-quarters of the complaints were substantiated and resulted in escalating levels of discipline, indicating more serious complaints or a worrisome pattern of conduct.  In light of these factors, the incremental interest in disclosure does outweigh the judge's privacy interest.

**8. KSV:**  KSV is a retired judge who received a total of five complaints and held 18,000 hearings during the relevant time period.  One complaint was dismissed as merits-related.  Two

were resolved with oral counseling and two were resolved with separate suspensions. The Court concludes that withholding was improper. While the judge is retired and the number of substantiated complaints is small, the allegations are more serious as evidenced by the two separate suspensions that the judge received. Furthermore, all of the allegations related to in-court conduct. Given these factors, the incremental interest in disclosure does outweigh the judge's privacy interest.

**9. NHQ:** NHQ is an active judge who received a total of seven complaints and held 14,000 hearings during the relevant time period. One complaint was dismissed as merits-related. Five were resolved with written counseling, and the remaining complaint resulted in a three-day suspension. The Court concludes that withholding was improper. The judge is active and received a large number of complaints compared to an average number of hearings, and most of the complaints were substantiated. Additionally, most of the complaints—including the complaint that resulted in a suspension—involved in-court behavior. Given the level of discipline involved, the allegations are likely more serious. Together, these factors indicate that the incremental interest in disclosure does outweigh the judge's privacy interest.

**10. OPU:** OPU is an active judge who received a total of twenty-eight complaints[7] and held 17,000 hearings during the relevant time period. Three of these complaints were dismissed as unsubstantiated. Two resulted in training, and the remaining twenty-three were resolved with oral counseling. The Court concludes that withholding was improper. This is an active judge who has received a large number of complaints while holding an average number of hearings.

---

[7] EOIR's *Vaughn* index states that there were twenty-nine complaints, but the Court has counted only twenty-eight separately numbered complaints listed therein.

Furthermore, most of those complaints were substantiated and concerned in-court behavior, even if they were resolved with lower levels of discipline for the most part. Given these factors, the incremental interest in disclosure does outweigh the judge's privacy interest.

**11. PBZ:** PBZ is an active judge who received a total of thirty-one complaints[8] and held 21,000 hearings during the relevant time period. Ten of these were dismissed as either unsubstantiated or merits-related. Twelve of the remaining complaints were resolved with oral counseling and eight with written counseling. The Court concludes that withholding was improper. The judge is active and received a large number of complaints. Roughly two-thirds of the complaints were substantiated, and this constitutes a larger number of substantiated complaints than most judges and only a slightly higher-than-average number of hearings. Additionally, many of these complaints were resolved with written counseling, indicating more serious allegations. In light of these factors, the incremental interest in disclosure does outweigh the judge's privacy interest.

**12. QJC:** QJC is an active judge who received a total of eleven complaints and held 29,000 hearings during the relevant time period. Six of these complaints were dismissed for failure to state a claim or as unsubstantiated or merits-related. Three were resolved with oral counseling and the remaining two were resolved with written counseling. The Court concludes that withholding was improper. For one, the judge is active. While the judge had a smaller number of complaints compared to a higher-than-average number of hearings, the allegations primarily concern in-court behavior. Additionally, some of the allegations involving in-court behavior are particularly disconcerting, such as the allegation that the judge appeared at the back

---

[8] EOIR's *Vaughn* index states that there were thirty-two complaints, but the Court has counted only thirty-one separately numbered complaints listed therein.

of the courtroom during another judge's hearing, wearing a robe, and made a suggestion about how the presiding judge should handle the pending case. Such concerning allegations are of heightened public concern. Given the nature of the allegations and the judge's active status, the incremental interest in disclosure does outweigh the judge's privacy interest.

**13. TXY:**  TXY is a retired judge who received a total of twenty-three complaints and held 14,000 hearings during the relevant time period. Two complaints were dismissed as unsubstantiated and one with corrective action (the case's remand from the Board of Immigration Appeals) already taken. Seven complaints were resolved with oral counseling, five with written counseling, and eighteen with mandatory training; all related to in-court conduct. The Court concludes that withholding was improper. While the judge is retired, the judge received a large number of complaints—most of which were substantiated—compared to an average number of hearings. Additionally, the complaints all concern in-court behavior. As such, the incremental interest in disclosure does outweigh the judge's privacy interest.

**14. WTW:**  WTW is a retired judge who received a total of thirteen complaints and held 6,000 hearings during the relevant time period. Five complaints were resolved with oral counseling, five with written counseling, and three with written reprimands; all concerned in-court conduct. The Court concludes that withholding was improper. While the judge is retired, there are a larger number of complaints filed compared to a lower-than-average number of hearings. Furthermore, all of the complaints were substantiated and, given the level of discipline that resulted, involved more serious allegations. In light of these factors, the incremental interest in disclosure does outweigh the judge's privacy interest.

### III.   Conclusion

For the foregoing reasons, the Court grants in part and denies in part both EOIR's motion for summary judgment and AILA's cross-motion for summary judgment.   A separate Order will accompany this Memorandum Opinion.

 

 

 

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:   November 17, 2017